# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| A.M.C., by her next friend, C.D.C., et al., | |
| Plaintiffs, | Civil Action No. 3:20-cv-00240 |
| v. | Class Action |
| STEPHEN SMITH, in his official capacity as Deputy Commissioner of Finance and Administration and Director of the Division of TennCare, | Judge Crenshaw<br>Magistrate Newbern |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

November 12, 2021

Michele Johnson TN BPR 16756
Gordon Bonnyman, Jr. TN BPR 2419
Catherine Millas Kaiman, FL Bar 117779
Vanessa Zapata, TN BPR 37873
TENNESSEE JUSTICE CENTER
211 7th Avenue North, Suite 100
Nashville, Tennessee 37219
Phone: (615) 255-0331
FAX: (615) 255-0354
gbonnyman@tnjustice.org
ckaiman@tnjustice.org

Jane Perkins
Elizabeth Edwards
Sarah Grusin
National Health Law Program
1512 E. Franklin St. Ste. 110
Chapel Hill, NC 27514
Phone: (919) 968-6308
perkins@healthlaw.org
edwards@healthlaw.org
grusin@healthlaw.org

Gregory Lee Bass (*pro hac vice*)
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
Phone: (212) 633-6967
bass@nclej.org

Faith Gay (*pro hac vice*)
Jennifer M. Selendy (*pro hac vice*)
Andrew R. Dunlap (*pro hac vice*)
Amy Nemetz (*pro hac vice*)
Babak Ghafarzade (*pro hac vice*)
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Phone: (212) 390-9000
fgay@selendygay.com
jselendy@selendygay.com
adunlap@selendygay.com
anemetz@selendygay.com

*Attorneys for Plaintiffs*

## Table of Contents

IN THE UNITED STATES DISTRICT COURT ................................................................. i

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND.....................................................................................2

I.      TennCare's Notice and Hearing Process Deprive Plaintiffs and Class Members of
        Adequate Due Process. ...........................................................................3

        A.      TennCare's Notices...................................................................3

        B.      TennCare's Fair Hearings ...........................................................7

II.     TennCare's Ongoing Practices Do Not Adequately Protect Against Erroneous
        Decisions.................................................................................8

LEGAL STANDARD...........................................................................................11

ARGUMENT ...................................................................................................12

I.      The Proposed Class and Subclass. ..................................................................12

II.     The Proposed Plaintiff Class and Disability Subclass Satisfy Rule 23(a). .......................12

        A.      Numerosity...........................................................................12

        B.      Commonality.........................................................................14

        C.      Typicality ...........................................................................19

        D.      Adequacy of Representation ........................................................21

III.    Certification of the Proposed Plaintiff Class and Disability Subclass under Rule
        23(b)(2) Is Appropriate. .............................................................................23

CONCLUSION..................................................................................................25

# Table of Authorities

## Cases

*Akins v. Parker*, 472 U.S. 115 (1985) ............................................................................. 10

*Atkins v. Rivera*,
477 U.S. 154 (1986) ............................................................................................................ 2

*Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565 (6th Cir. 2004) ................................. 14

*Barry v. Corrigan*,
79 F. Supp. 3d 712 (E.D. Mich. 2015) .......................................... 14, 17, 19, 24

*Barry v. Corrigan*, 79 F. Supp. 3d 712 (E.D. Mich. 2015) .......................................... 14

*Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016) ......................................................... 14, 22

*Beattie v. CenturyTel, Inc.*,
511 F.3d 554 (6th Cir. 2007) ................................................................ 11, 19, 21

*Blankenship v. Secretary of HEW*, 587 F.2d 329 (6th Cir. 1978) ................................. 23

*Bliek v. Palmer*, 102 F.3d 1472 (8th Cir. 1997) ........................................................... 15

*Brooklyn Center for Independence of the Disabled v. Bloomberg*,
290 F.R.D. 409 (S.D.N.Y. 2012) ............................................................................. 19

*Carr v. Wilson-Coker*,
203 F.R.D. 66 (D. Conn. 2001) ............................................................................... 19

*Castillo v. Envoy Corp.*,
206 F.R.D. 464 (M.D. Tenn. 2002) ........................................................................ 11

*Cole v. City of Memphis*, 839 F.3d 530 (6th Cir. 2016) ................................................ 11

*Crawley v. Ahmed*, No. 08-14040, 2009 WL 1384147  (E.D. Mich. May 14, 2009). 16, 18, 19, 24

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006) ............................................... 12

*Dozier v. Haveman*,
No. 2:14-CV-12455, 2014 WL 5483008 (E.D. Mich. 2014).................................... *passim*

*First Nat'l Bank v. Bellotti*, 435 U.S. 765 (1978) ........................................................ 23

*Goldberg v. Kelly*, 397 U.S. 254 (1970) ...................................................................... 15

*Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012) ............................. 11

iii

*Hamby v. Neel*,
  368 F.3d 549 (6th Cir. 2004) ............................................................... 7, 15, 16

*Henrietta D. v. Giuliani*,
  No. 95 CV 0641 (SJ), 1996 WL 633382 (E.D. N.Y. Oct. 25, 1996)............................... 25

*Honig v. Doe*, 484 U.S. 305 (1988) ......................................................................... 23

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ............................................................. 11, 19, 21

*J.M. by & through Lewis v. Crittenden*, 337 F.R.D. 434 (N.D. Ga. 2019)............................ *passim*

*Mays v. Tenn. Valley Auth.*, 274 F.R.D. 614 (E.D. Tenn. May 10, 2011) ................................... 13

*Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1 (1978) ................................... 10

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012)......................................................................................... 2

*Olden v. LaFarge Corp.,* 203 F.R.D. 254 (E.D. Mich. 2001)...................................... 13

*Powers v. Hamilton Cty Pub. Def. Com'n,* 501 F.3d 592 (6th Cir. 2007)................................... 14

*Price v. Medicaid Director*,
  310 F.R.D. 345 (S.D. Ohio 2015) ...................................................................... 16

*Raymond v. Rowland*,
  220 F.R.D. 173 (D. Conn. 2004)........................................................................ 25

*Reeb v. Ohio Dept. of Rehab. and Correction*, 435 F.3d 639 (6th Cir. 2006) ............................. 24

*Reynolds v. Giuliani*,
  118 F. Supp. 2d 352 (S.D.N.Y. 2000)................................................................. 17

*Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015) ........................................ 14

*Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976).................................... 12, 24

*Turner v. Rogers*, 564 U.S. 431 (2011) ............................................................. 23

*Unan v. Lyon*, 853 F.3d 279 (6th Cir. 2017)........................................................... 23

*Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)................................................ 24

*Weathers v. Peters Realty Corp.*,
  499 F.2d 1197 (6th Cir. 1974) ......................................................................... 11

*Wilson v. Gordon*, 2014 WL 4347585 (M.D. Tenn. Sept. 2, 2014) .......................... 14, 15, 20, 22

iv

*Wilson v. Gordon*, 822 F.3d 934 (6th Cir. 2016) ........................................................................ 22

*Youngblood v. Linebarger Googan Blair & Sampson, LLP,*
 No. 10-2304, 2012 U.S. Dist. LEXIS 142792 (W.D. Tenn. Sept. 20, 2012)................... 13

## Statutes

42 U.S.C. § 12131 ............................................................................................................. 12

42 U.S.C. § 1396 ......................................................................................................... 3, 7, 16

Tenn. Pub. Acts of 1968, Chapter 551 ................................................................................. 2

U.S. Const. amend. XIV .......................................................................................................... 3

## Regulations

42 C.F.R. § 431.205 ............................................................................................................ 7

42 C.F.R. § 431.210 ...................................................................................................... 4, 15

42 C.F.R. § 431.220 ............................................................................................................ 7

42 C.F.R. § 431.230 ............................................................................................................ 4

42 C.F.R. § 431.231 ............................................................................................................ 4

42 C.F.R. § 431.244 ...................................................................................................... 7, 16

42 C.F.R. § 431.916 ............................................................................................................ 3

42 C.F.R. § 435.916 .................................................................................................... *passim*

42 C.F.R. § 435.930 ...................................................................................................... 3, 12

TennCare Rule 1200-13-19-.02(20)..................................................................................... 8

TennCare Rule 1200-13-20-.09 ........................................................................................... 4

TennCare Rules 1200-13-13-.11 .......................................................................................... 7

TennCare Rules 1200-13-19-.05........................................................................................... 7

## Treatises

*Newberg on Class Actions* (3d ed. 1992) ................................................................... 14, 19

## Other Authorities

TennCare, Fiscal Year 2022-2023 Budget Hearing,
https://www.tn.gov/content/dam/tn/tenncare/documents/FY23RecommendedBudg
et.pdf ................................................................................................................... 10

Tricia Brooks, "Loss of Medicaid After the PHE Will Likely Exceed 15 Million," (Sept.
20, 2021), https://ccf.georgetown.edu/2021/09/20/loss-of-medicaid-after-the-phe-
will-likely-exceed-15-million-estimated-by-urban/ ......................................................... 10

# PRELIMINARY STATEMENT

This lawsuit challenges Tennessee's systemic practices that deprive poor children and adults of due process in violation of the Medicaid Act and the Fourteenth Amendment, and that screen out beneficiaries with disabilities in violation of the Americans with Disabilities Act (ADA). Plaintiffs separately move for preliminary injunctive relief to remedy the State's illegal deprivation of TennCare coverage due to flawed form notices and barriers to hearings. Plaintiffs submit this memorandum in support of their motion for certification under Rule 23(b)(2) of a plaintiff class comprised of all individuals who meet the eligibility criteria for TennCare coverage and who, since March 19, 2019, have been or will be disenrolled from TennCare.[1] Plaintiffs also request certification of a subclass of those class members who have a disability within the meaning of the ADA.

Class certification is highly appropriate in cases seeking relief for due process violations in the context of public benefits programs. TennCare enrollees have identical statutory and constitutional rights to adequate notice and opportunity for a hearing. Every TennCare enrollee is subject to the same flawed TennCare notices and procedures for terminating their benefits at redetermination. The standardized notices advise individuals of TennCare's decision to end their Medicaid coverage suffer from shared flaws: they include misleading statements, do not provide sufficient factual detail to explain TennCare's decision, and inadequately explain how to appeal or reinstate benefits. Moreover, every appeal must overcome an unlawful procedural hurdle of screening for a "valid factual dispute" before the agency will hold a hearing. These uniform failures to provide

---

[1] The class excludes individuals, and the parents and legal guardians of individuals, whose termination is due to a requested withdrawal from the TennCare program.

1

due process establish a common set of facts and legal questions for all members of the proposed class that easily satisfies the requirements for class certification under Rule 23(b).

Plaintiffs, like more than 100,000 other Tennessee residents, lost their TennCare coverage from termination without adequate advance notice or a meaningful opportunity for a fair hearing before their Medicaid ended. Like more than 1 million children and adults current TennCare enrollees, the Plaintiffs face the certain prospect that TennCare will redetermine their eligibility in the future, subjecting them to the same procedurally defective notices and policies they faced in the past. Worse, the TennCare redetermination process visits greater harm upon individuals with disabilities by screening them out and not providing the assistance necessary to have equal access to the program. These failures violate the Medicaid Act, the Due Process Clause of the Fourteenth Amendment, and the Americans with Disabilities Act. Because the relief sought in this case will equally benefit all TennCare enrollees who face loss of coverage, and the sub-class of TennCare enrollees with disabilities, class certification is appropriate and should be granted.

## FACTUAL BACKGROUND

The federal Medicaid program is "designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services." *Atkins v. Rivera*, 477 U.S. 154, 156 (1986). Though Medicaid participation is voluntary, states who elect to accept federal Medicaid funds must comply with requirements imposed by federal law. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 542 (2012); *Atkins*, 477 U.S. at 157. Tennessee has participated in Medicaid continuously since 1968, *see* Tenn. Pub. Acts of 1968, Chapter 551, and presently does so through a Medicaid demonstration program called TennCare. Every State plan for medical assistance must establish or designate "a single State agency to administer or to supervise the administration of the plan . . . ." 42 U.S.C. § 1396a(a)(5).

2

To enroll in Medicaid, individuals must meet specific eligibility criteria.[2] An individual must be screened by TennCare for eligibility under any of 25 categories. *See* Kaiman (2nd) Decl. (Nov. 12, 2021) ¶ 16. Federal regulations require that Medicaid eligibility for all beneficiaries be reevaluated, or "redetermined" annually. 42 C.F.R. § 435.916. States must also re-evaluate an individual's eligibility if they receive information regarding a change in the individual's circumstances that may affect eligibility. 42 C.F.R. § 435.916(d). Before a state terminates Medicaid eligibility, they must provide advance notice and an opportunity for a hearing. 42 U.S.C. § 1396a(a)(3); U.S. Const. amend. XIV.

I. **TennCare's Notice and Hearing Process Deprive Plaintiffs and Class Members of Adequate Due Process.**

A. **TennCare's Notices**

Regardless of when a state concludes an individual is no longer eligible in their current category, before Medicaid coverage is terminated the state must determine the beneficiary to be ineligible under all Medicaid eligibility categories. 42 C.F.R. §§ 435.930(b), 431.916(f)(1). If the State determines that the person is not eligible in any category, it must maintain coverage until it has provided the person advance notice and an opportunity to contest the determination at a hearing. 42 C.F.R. Part 432, Subpart E; 42 C.F.R. § 435.916(a)(3)(i)(C). The notice must be provided in plain language and in a way that is accessible to individuals with disabilities. 42 C.F.R. §§ 435.905(b), 435.916(a)(3)(i)(C), 435.916(g). Moreover, the notice must include "[a] clear statement of the specific reasons supporting the intended action." 42 C.F.R. § 431.210(b).

---

[2] First, they must meet "categorical eligibility" requirements by showing that they are aged, blind, disabled, or pregnant, or that they are children or parents of dependent children. 42 U.S.C. §§ 1396a(a)(10)(A). They must also show that their income is below certain limits, which vary depending on the categorical eligibility group to which they belong. *Id.*; *see also* 42 U.S.C. § 1396a(e)(14) (describing income eligibility based on modified adjusted gross income). A few categorical eligibility groups must meet additional limits on the amount of resources, or assets an individual may own. *See, e.g.*, 42 U.S.C. §§ 1396a(a)(10)(A)(ii)(XV), (XVI); 1396a(r).

3

The notice must inform the person of how to maintain or regain their coverage. If the state terminates coverage as a result of the individual's failure to submit the renewal form or other information, the state must timely reconsider eligibility based on any information submitted within 90 days of the termination, without requiring a new application. 42 C.F.R. § 435.916(a)(3)(iii); TennCare Rule 1200-13-20-.09(1)(d)(11); *see also* Ex. 2 ¶ 57. Notices must also describe "[t]he individual's right to request a local evidentiary hearing if one is available, or a State agency hearing" and the right to continued benefits pending that hearing decision. 42 C.F.R. §§ 431.210(d)(1); 431.230. Finally, if the State terminates coverage without providing the requisite advance notice, it must reinstate and maintain the individual's coverage until it complies with Medicaid's codified due process requirements. 42 C.F.R. § 431.231(c).

TennCare uses templates to communicate with enrollees and these notices are used by TennCare's eligibility determination system, TEDS. The notices in question in this case originate from the template notices and TennCare continues to generate notices from templates in TEDS. TennCare's notice of decision ("NOD") is based on such a template. Ex. 5, 6. The template NOD has four significant due process failures:

*First,* the NOD template nowhere describes the individual facts used by TennCare or explains how they contributed to the determination. Ex. 5, 6. Even though categorical eligibility for Medicaid is dependent on strict income requirements, it is official TennCare policy "not to include specific income information in notices." Decl. of Kimberley Hagan, Ex. 2, ¶ 146. Without individualized explanations it is nearly impossible for the beneficiary to tell if TennCare made a mistake. For example:

- Plaintiff Caudill's September 10, 2019 NOD states that "[y]ou're not in a group covered by TennCare or CoverKids. You must be in a group we cover and be under the income limit for that group." Ex. 21. The notice does not describe what household composition, medical conditions, income sources, assets, or other factors TennCare used to evaluate

Ms. Caudill's eligibility. Moreover, the notice does not explain whether TennCare believes she doesn't fit into one of the categorical eligibility groups at all, or whether she falls into a group but is over income for that group. *See also, e.g.*, Exs. 22-23 (AMC); Ex. 24 (Barnes); Ex. 25 (Cleveland); Ex. 29 (SLC).

- Plaintiff SFA's NOD states "We received a change in your facts so we checked to make sure you still qualify. We reviewed your facts and decided that you don't qualify anymore." Ex. 26. The notice does not state what facts TennCare thinks changed or which facts make SFA ineligible. The notice also states "We sent you a letter asking for more facts but you didn't send us what we needed. So we did not have enough information to decide if you qualify." *Id*. The notice does not state what additional information was needed, or even when the earlier letter was sent.

- Plaintiff Barnes's June 11, 2019 NOD states that her coverage was denied because "[y]ou're already getting TennCare or CoverKids in another case." Ex. 27. It does not provide any information regarding the other case, such as when TennCare thinks the other case started, what evidence TennCare is relying on to conclude she has coverage in another case, or whether there are any differences in the services covered in the other case and the coverage that it is denying.

*Second,* TennCare's NOD template does not inform enrollees of what they should do to maintain their TennCare coverage. *See generally* Ex. 7; *see also* Ex. 2, ¶ 71(c). Enrollees are entitled to a hearing to show that they had "good cause" for, e.g., failing to submit information requested by TennCare or for "why the appeal or request for a hearing could not be filed within the required time limits." TennCare Rule 1200-13-19-.06(3). None of the NODs sent to Plaintiffs included information on the possibility of showing good cause to obtain a hearing. *See generally* Exs. 21-29. To compound the problem of not having information about good cause, as discussed below, the notices warn that individuals cannot appeal unless TennCare has made a mistake of fact, thus deterring an enrollee from appealing terminations where TennCare had correctly determined the facts but nonetheless had good cause to reverse the termination (e.g., the enrollee never received the request because it was mailed to the wrong address).

*Third,* TennCare's NOD template does not explain that, if an enrollee loses coverage for a

purported failure to provide information, they may reinstate their coverage by providing that information within 90 days. 42 C.F.R. § 435.916(a)(3)(iii); TennCare Rule 1200-13-20-.09(1)(d)(11); *see* Ex. 5-6. None of the NODs received by Plaintiffs included information regarding reinstatement. *See generally,* Exs. 21-29; *see also* Ex. 2 ¶ 57 (TennCare withholds this information). Thus, individuals, like Plaintiffs Rebeaud and Walker, were not made aware that their coverage should have been reinstated, without requiring a new application, when they provide this information within the 90-day window. *Cf. id.* at ¶ 178 (noting that although Ms. Rebeaud submitted information within the 90-day window, at that time "TEDS did not have a process to automatically reinstate cases if verifications were returned during" that window," requiring Ms. Rebeaud to file an appeal several months later to fill the gap in coverage), ¶¶ 203-04 (TennCare received information from Plaintiff Walker within 90 days of termination, but "since Mr. Walker's coverage had already been terminated no action was taken in response to this returned questionnaire," and an appeal filed days later was closed as untimely, forcing Mr. Walker to file a new application.). In fact, even after enrollees had missed the deadline and were being notified of their termination, TennCare continued to withhold the information. *See, e.g.,* Ex. 28 (Walker), Ex. 26 (SFA).

*Fourth and finally*, although TennCare is required to provide an opportunity for a hearing "to *any* individual whose claim for medical assistance . . . is denied," 42 U.S.C. § 1396a(a)(3) (emphasis added), TennCare's NODs state that appeals are limited to challenging mistakes of fact, stating "If you still think we made a mistake about a fact, you can have a fair hearing. If you don't think we made a mistake about a fact, you can't have a fair hearing. You don't have a right to a fair hearing just because you don't like this decision or think it will cause problems for you." *See* Ex. 5-6. Plaintiffs have each received NODs that described the requirement that appeals are only available to challenge a dispute of fact. *See* Ex. 21-29. This language in the notices misrep-

resents the scope of enrollees' hearing rights under federal regulations and dissuades individuals from requesting a hearing when they have a right to one. *See* 42 C.F.R. § 431.220(a), (b).

## B. TennCare's Fair Hearings

The Medicaid statute also requires that the State "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3). The state must provide a hearing to "any individual who requests it" unless "the sole issue is a Federal or State law requiring an automatic change adversely affecting some or all beneficiaries." 42 C.F.R. § 431.220(a), (b). This hearing and appeal process must satisfy the requirements of federal regulations and the Due Process Clause of the Constitution. 42 C.F.R. § 431.205; *Hamby v. Neel*, 368 F.3d 549, 559-60 (6th Cir. 2004). Within 90 days of an individual timely requesting an appeal, the state must provide the fair hearing and render a new decision. 42 C.F.R. § 431.244.

TennCare's policies and practices for fair hearings are systemically flawed. Individuals whose TennCare benefits are terminated because they are found ineligible are entitled to appeal that decision to the agency, and to have their appeal decided within 90 days. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. §§ 431.205; 431.244. However, as noted above, TennCare reviews all request for appeal to determine whether they raise a "valid factual dispute," and closes without a hearing when TennCare determines there is no such dispute. Ex. 2, ¶ 71(f); TennCare Rules 1200-13-13-.11 and 1200-13-19-.05. Under this policy TennCare has closed at least 776 appeal requests without a hearing. Ex. 2, ¶ 71(f) – (i), 193. Some of these closed appeals belong to Plaintiffs, including Plaintiff Caudill, who, pursuant to this policy, received a letter requesting that she identify the mistake of fact she thought TennCare made. *Id.* at ¶ 125. When Plaintiff did not respond, her appeal was closed, and her continuing benefits ended. *Id.*

The TennCare appeals procedures deny an opportunity for a hearing to demonstrate "good cause." The TennCare rules define good cause as "a reason based on circumstances outside the party's control and despite the party's reasonable efforts." TennCare Rule 1200-13-19-.02(20). TennCare's practice is to dismiss enrollees' claims that they never received a crucial notice, without allowing the enrollee an opportunity to prove good cause at a hearing. Ex. 2 ¶ 71(c) ("Mere allegations of non-receipt without more, however, do not automatically qualify an appellant for a good cause exception.), (d). Plaintiff EIL had their appeal closed despite explaining she previously changed her address, but TennCare used her mother's address, and she did not get the notice.

The appeals that make it through TennCare's barriers are routinely not completed within the required 90-day period. 42 C.F.R. § 431.244(f)(1), (4) (decisions must issue within 90 days). According to TennCare, delays are so commonplace that it resorts to triage, prioritizing those appeals in which coverage had already ended, ahead of appeals for enrollees receiving continuing benefits pending termination. Ex. 2 ¶¶ 70, 157, 200. Named plaintiffs' appeal hearings were significantly delayed due to TennCare's policies. TennCare admits, for instance, that Plaintiff Hill's appeal pended for well beyond the 90-day limit. *See id.* ¶¶ 156-57. Likewise, Ms. Vaughn filed a request for an appeal on May 16, 2019, but the eligibility issue she identified was not addressed until April 17, 2020, eleven months later. *See id.* ¶ 200.

## II.    TennCare's Ongoing Practices Do Not Adequately Protect Against Erroneous Decisions.

Since TEDS launched on March 19, 2019, TennCare's redetermination process has been plagued with errors. TennCare acknowledged these flaws resulted in many erroneous terminations. TennCare's records reveal that nearly 200,000 individuals lost coverage in connection with the redetermination process between March 19, 2019 and March 18, 2020, when the maintenance of efforts took effect. Ex. 2 ¶ 74. As of June 8, 2021, 108, 233 remain without coverage. Ex. 3.

8

For instance, TennCare admits that it has failed to accurately determine eligibility for seven of 25 eligibility categories, most of which are disability related. Ex. 2, ¶¶ 14, 25, 35(a), (f), (i), 59(f)-(h), 109, 119-20, 122, 126, 128, 130, 133 152, 206. This failure screened out people with disabilities, including Plaintiffs Barnes, Caudill, Fultz, and Walker, causing them to lose coverage to which they were entitled. Compl., Doc. 1. ¶¶ 87-91, 200-219, 220-233, 286-304, 420-432. TennCare also admits it failed to accurately "merge" related cases in TEDS, leading to notices being sent to incorrect addresses and erroneous terminations for 15 named plaintiffs and untold numbers of other enrollees. Ex. 2, ¶¶ 15, n.9, 19-20, 25, 90-91, 101, 137, 159-61, 163-64; *see also* Kaiman (2nd) Decl. ¶¶ 5-13 (discussing years-long issues with TennCare erroneously mailing notices and insurance cards to TJC rather than to the enrollees for whom they are intended). Merge errors also alter TennCare's accounting of enrollees' household composition and income, which causes more erroneous eligibility terminations.

Contrary to Director Hagan's assurances, these were not "one-time issues." *Id.* ¶ 26; *see also, e.g.,* Noe Decl. (Nov. 8, 2021) (Plaintiff Michael Hill was erroneously terminated from the TennCare Buy-In program in October 2021); Pelletier Decl., Sensac Decl., RLB Decl., Lesnik Decl., D.T. Decl., M.D. Decl., Sullivan Decl. (Declarants who are not named plaintiffs, but have experienced the same notice and termination issues as alleged in complaint). Even after this lawsuit was filed, more than 2,900 enrollees lost coverage while federal law imposed a moratorium on any TennCare terminations.[3] TennCare's flawed notices and hearing processes have limited enrollees in challenging those errors. Enrollees with disabilities are particularly disadvantaged in retaining

---

[3] *See* Ex. 15, Def.'s Revised Resp. Pls.' Interrog. No. 3 (Oct. 12, 2021). In response to Plaintiffs' Interrogatory No. 3, Defendant produced a "spreadsheet list[ing] every erroneous termination of coverage that TennCare has identified to date." *Id.* Defendant stated that for each of the "merger cases, . . . the termination of coverage was never intended in the first instance." *Id.* The spreadsheet (Bates number TC-AMC-0000170932) identifies 2,907 terminations with "case merge" or "individual merge" among the termination reasons.

9

the coverage they are entitled to under TennCare's processes. Ex. 2, ¶¶ 122-29; *see also* Compl., Doc. 1 ¶¶ 294, 380; 42 C.F.R. §§ 435.908(a), 435.916.

TennCare concedes that it "is inevitable that some mistakes will be made in processing the enormous volume of cases that TennCare handles each year," due to both "worker error" and "system errors in the design and implementation of TEDS." Ex. 2, ¶ 83. The number of enrollees whose health, benefits, and due process rights are at risk is expected to skyrocket after the public health emergency ends and redeterminations restart. TennCare estimates that at least 300,000 Tennesseans will lose coverage after redetermination following the end of the public health emergency.[4] Researchers have explained that "states will be faced with processing an unprecedented volume of Medicaid redeterminations and changes in circumstances," which could "overwhelm the capacity of eligibility workers to process paperwork and of call centers . . . to help individuals remain enrolled," ultimately resulting in loss of coverage for individuals who, in fact, remain eligible.[5]

Plaintiffs are not asking TennCare to operate a faultless program. Rather, the prevalence of eligibility errors in TennCare's redetermination process underscores the importance of providing adequate due process to all Class members. Mistakes are inevitable, but robust due process provides "adequate protection against any deprivation based on unintended mistake." *Akins v. Parker*, 472 U.S. 115, 128 (1985); *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 20 (1978). Thus, it is critical that TennCare's notice and hearing processes comply with due process requirements to mitigate the harmful effects of inevitable eligibility errors for all Class members.

---

[4] *See* TennCare, Fiscal Year 2022-2023 Budget Hearing at 7, https://www.tn.gov/content/dam/tn/tenncare/documents/FY23RecommendedBudget.pdf (projecting enrollment to decline from 1,700,000 individuals to 1,400,00).

[5] *See* Tricia Brooks, "Loss of Medicaid After the PHE Will Likely Exceed 15 Million," (Sept. 20, 2021), https://ccf.georgetown.edu/2021/09/20/loss-of-medicaid-after-the-phe-will-likely-exceed-15-million-estimated-by-urban/.

10

## LEGAL STANDARD

A district court has broad discretion to determine whether to certify a class. *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996). Rule 23(a) provides any member of a class may sue on behalf of all members if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Certification under Rule 23(b)(2) is appropriate where a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Such a class may be certified "if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012). In contrast to classes seeking damages under Rule 23(b)(3), classes seeking injunctive relief under Rule 23(b)(2) do not need to demonstrate that the proposed class is "administratively feasible" or "ascertainable." *Cole v. City of Memphis*, 839 F.3d 530, 541–42 (6th Cir. 2016).

Class certification is a procedural question, distinct from the merits of the case. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1201 (6th Cir. 1974). The Sixth Circuit has cautioned that class certification is not "a dress rehearsal for the trial on the merits." *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013); *Castillo v. Envoy Corp.*, 206 F.R.D. 464, 468 (M.D. Tenn. 2002) ("[C]ourts cannot make a preliminary inquiry into the merits of the proposed class action."). Moreover, "[i]n ruling

11

on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976)).

## ARGUMENT

### I.     The Proposed Class and Subclass.

Plaintiffs seek certification of one class and one subclass: The Plaintiff Class and the Disability Subclass. The Plaintiff Class asserts claims under the Medicaid Act and Due Process Clause of the Fourteenth Amendment. The Plaintiff Class will be represented by all of the named plaintiffs. The proposed definition of the Plaintiff Class is:

> All individuals who meet the eligibility criteria for TennCare coverage and who, since March 19, 2019, have been or will be disenrolled from TennCare. The class excludes individuals, and the parents and legal guardians of individuals, whose termination is due to a requested withdrawal from the TennCare program.

For purposes of the class definition, individuals are eligible by federal law "until they are found to be ineligible," after consideration of "all bases of eligibility." 42 C.F.R. §§ 435.916(f)(1) and 435.930(b). In other words, the class is made up of all individuals who have lost (or will lose) TennCare coverage since March 19, 2019. In addition, some members of the Plaintiff Class assert claims under the Americans with Disabilities Act. Plaintiffs S.L.C., Michael S. Hill, William C. Monroe, Linda Rebeaud, and Johnny Walker seek to represent this Disability Subclass. The proposed definition of the Disability Subclass is:

> Plaintiff Class members who are "qualified individuals with a disability" as defined in 42 U.S.C. § 12131(2).

### II.    The Proposed Plaintiff Class and Disability Subclass Satisfy Rule 23(a).

#### A.     Numerosity

There is "no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006); *see also Senter,* 532

12

F.2d at 522-23 (finding that although plaintiffs only identified 16 people, it would be reasonable to infer that a substantial number of the large proposed class would be eligible for relief). A class of 40 members is entitled to a "presumption that joinder is impracticable." *City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 529 (M.D. Tenn. 2010) (citation omitted). The numerosity requirement is still met even "[w]hen the exact size of the class is unknown, but 'general knowledge and common sense indicate that it is large.'" *Youngblood v. Linebarger Googan Blair & Sampson, LLP*, No. 10-2304, 2012 WL 4597990, at *14 (W.D. Tenn. Sept. 20, 2012) (quoting *Olden v. LaFarge Corp.,* 203 F.R.D. 254, 269 (E.D. Mich. 2001)). Courts also consider "judicial economy, the geographical dispersion of class members, the ease of identifying putative class members, and the practicality with which class members could sue on their own." *Mays v. Tenn. Valley Auth.*, 274 F.R.D. 614, 631 (E.D. Tenn. May 10, 2011).

Both the Plaintiff Class and Disability Subclass are sufficiently numerous to make individual joinder impracticable. Over 1 million individuals are enrolled in TennCare and face the redetermination of their eligibility at least annually, subject to the notice and hearing policies and processes at issue in this case. Ex. 2, ¶¶ 3, 9, 40, 41, 42, 55. Regarding the Plaintiff Class, Defendant's own disclosures indicate that over 100,000 individuals who were eligible for TennCare have lost coverage since March 19, 2019. Ex. 3. All these individuals would have received notices derived from the same flawed templates, and all would have been subject to TennCare's improper policy for screening appeals. Regarding the Disability Subclass, Defendant's same spreadsheet reveals that many of the individuals who lost coverage were previously receiving coverage in a group whose eligibility is based on disability. For instance, there were at least 3, 255 individuals in the SSI-Cash Receipt eligibility group, which is based on a disability, who had been terminated and

13

remained without coverage. Although the Disability Subclass includes any individual with a disability, regardless of their category of eligibility, these numbers demonstrate that the Disability Subclass easily satisfies the numerosity requirement.

In addition, joinder for the Plaintiff Class and Disability Subclass is not practicable because the class spans the geographic scope of Tennessee. In addition, it would be both impractical and a burden on the courts for members of the putative class to "sue on their own" for the agency-wide relief sought here as the class members have low incomes, making individual suits cost-prohibitive. *Wilson v. Gordon*, 2014 WL 4347585 at *2 (M.D. Tenn. Sept. 2, 2014) (finding numerosity satisfied in similar Medicaid litigation); *Barry v. Corrigan*, 79 F. Supp. 3d 712, 731, *aff'd sub nom.*, 834 F.3d 706, 718-20 (6th Cir. 2016) (finding numerosity in part based on Medicaid-program plaintiffs' difficulties "bringing suit on their own [] given their likely low-income status").

### B.  Commonality

"The commonality test 'is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class.'" *In re Am. Med. Sys., Inc.*, 75 F.3d at 1080 (quoting *Newberg on Class Actions*, § 3.10, at 3–50 (3d ed. 1992)). The "named plaintiffs must show that there is a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that that common answer relates to the actual theory of liability in the case." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015)."Variations in the circumstances of class members are acceptable, as long as they have at least one issue in common." *Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565, 570 (6th Cir. 2004). Commonality "is satisfied if there is a single factual or legal question common to the entire class." *Powers v. Hamilton Cty Pub. Def. Com'n,* 501 F.3d 592, 619 (6th Cir. 2007).

Commonality is easily met in cases challenging the legal sufficiency of notices sent by a Medicaid program, especially where, as here, the notices are based on a template. In *Dozier*, for

14

example, the court concluded that all members of the proposed class received the same notice that "did not provide any explanation for why the recipient did not qualify for [Medicaid]," and if plaintiffs' claims that "the Medicaid Act or the Constitution required defendants to provide that information, that legal determination would have significantly advanced the litigation." *Dozier v. Haveman,* No. 2:14-CV-12455, 2014 WL 5483008, at *22 (E.D. Mich. Oct. 29, 2014). Similarly, courts have routinely found commonality on questions related to whether a Medicaid program's notice and hearing policies comport with due process. *Wilson*, 2014 WL 4347585 at *2-3.

Members of the Plaintiff Class assert claims that share many common questions of fact and law, which include:

- Whether TennCare's template notices provide sufficiently detailed and clear statements of the reasoning supporting the agency's termination decisions.[6]

- Whether TennCare's template notices fail to adequately inform enrollees of their right to a hearing to demonstrate that they have good cause for having failed to satisfy a TennCare requirement affecting their eligibility or right to appeal.[7]

- Whether TennCare's template notices fail to adequately inform enrollees of their right under 42 C.F.R. § 435.916(a)(3)(iii) and TennCare Rule 1200-13-20.09(1)(d)(11) to have coverage timely reconsidered, without a new application, by submitting any purportedly missing information within 90 days. And if so, whether that omission violates 42 U.S.C. § 1396a(a)(3) and constitutional due process.[8]

- Whether TennCare's template notices discourage individuals who have a right to a fair hearing from submitting a request for a hearing by stating that a hearing is only available when there is a "mistake about a fact" and that "[i]f you don't think we made a mistake

---

[6] *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (due process requires "that a recipient have timely and adequate notice *detailing the reasons* for a proposed termination") (emphasis added); *Hamby*, 368 F.3d at 560 (notices that "failed to inform Plaintiffs that. . . their applications were denied because they were not considered uninsurable persons," did "not adequately advise [ them] of the reasons for denial of their applications."); 42 C.F.R. § 431.210(b) (requiring notices to include "[a] clear statement of the specific reasons supporting the intended action.").

[7] TennCare Rules 1200-13-19-.02(20) and 1200-13-19-.06(3). *See, e.g.*, *Hamby*, 368 F.3d at 561 (6th Cir. 2004); *Bliek v. Palmer*, 102 F.3d 1472, 1476 (8th Cir. 1997) (finding notices inadequate where they failed to inform food stamp enrollees of state's settlement authority).

[8] *See, e.g.*, *Hamby*, 368 F.3d at 561 (6th Cir. 2004); *Bliek v. Palmer*, 102 F.3d at 1476.

about a fact, you can't have a fair hearing." And if so, whether that discouragement violates 42 U.S.C. § 1396(a)(3) and constitutional due process.

- Whether TennCare's failure to provide "good cause" hearings when enrollees claim not to have received a crucial notice from TennCare violates 42 U.S.C. § 1396a(a)(3) and constitutional due process.[9]

- Whether TennCare fails to provide fair hearings within 90 days as required by 42 C.F.R. § 431.244 and whether such failure violates 42 U.S.C. § 1396a(a)(3) and constitutional due process.[10]

- Whether TennCare systematically fails to provide fair hearings at any time, resulting in a *de facto* denial of a meaningful opportunity for a fair hearing. 42 U.S.C. § 1396a(a)(3).

Resolving the factual questions regarding what TennCare's notice and hearing policies are and whether those policies and practices comply with federal statutory and constitutional requirements will have an identical impact on all the class members' claims. Courts have routinely certified classes concerning similar issues. *See, e.g., J.M. by & through Lewis v. Crittenden*, 337 F.R.D. 434, 449 (N.D. Ga. 2019) (finding commonality where plaintiffs alleged that "Defendants did not consider Plaintiffs for all classes of [Medicaid] assistance when Defendants made the ex parte determination of ineligibility."); *Crawley v. Ahmed*, No. 08-14040, 2009 WL 1384147 at *12 (E.D. Mich. May 14, 2009) (finding "factual variations between the class members will not affect the Court's resolution of the proposed legal question"). The legal sufficiency of standard termination notices used by a Medicaid program is another common question uniting the class, especially where, as here, the notices are based on the same template and include the same language. *Dozier*, 2014 WL 5483008, at *22; *see also Price v. Medicaid Dir.*, 310 F.R.D. 345, 377-78 (S.D. Ohio 2015) (finding commonality satisfied by common question of whether the Medicaid Act and the

---

[9] *See Hamby*, 368 F.3d at 561.
[10] *See Friedrich v. Sec'y Health & Human Servs.*, 894 F.2d 829, 837-38 (6th Cir. 1990) (finding that the touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard in a meaningful manner).

16

Due Process Clause required notices "to specify eligibility for retroactive assisted living waiver benefits"), *vacated on other grounds*, 838 F.3d 739, 750 (6th Cir. 2016); *Barry*, 79 F. Supp. 3d at 731 (holding the "alleged inadequacy of the disqualification notices" under the Due Process Clause and the Food and Nutrition Act was as a common question). *Dozier* is particularly instructive for this case given a similar focus on the template notices. There, plaintiffs challenged termination notices for failing to provide details regarding alternative Medicaid eligibility categories. *Dozier*, 2014 WL 5483008, at *1. The court held that commonality was satisfied because the legal question of whether the standard termination notices should have provided information on other eligibility categories would affect the claims of the entire class and thus "substantially advance[ ] the litigation." *Id.* at *22. Whether TennCare has particular policies related to fair hearings, and whether those practices comport with the federal Medicaid statute and constitutional due process, are likewise sufficient to satisfy commonality. *See Wilson v. Gordon*, 2014 WL 4347585 at *2-3.

Factual variations in the precise reasons for or propriety of TennCare's terminations of class members' coverage do not defeat a showing of commonality because the injury at issue here is a procedural one. *See J.M.*, 337 F.R.D. at 449. The Court should not accept any attempt by defendant to redefine the harm alleged by plaintiffs: inadequate notice and opportunity to be heard regarding termination of their TennCare coverage. The court in *Barry* "reject[ed] defendant's redefinition of plaintiffs' injury," which defendant manufactured to be so narrow that it could argue "separate adjudications will [] be necessary to determine whether each proposed class member" was harmed by a broader policy. *Barry*, 75 F. Supp. 3d at 730-31.

In this case, all class members received template notices and all class members were subject to the same screening procedures governing any attempt to appeal TennCare's termination of their coverage. Whether the notices and appeal procedures are legally sufficient under the Medicaid Act

17

and the Constitution are common questions resolvable by common solutions—correcting the standard language in TennCare's notices and revising TennCare's fair hearing policies. "If Plaintiffs are able to prove that these policies and practices exist and are in violation of the law, then each class member will have suffered at least some measure of the same harm," and commonality is therefore satisfied. *J.M.*, 337 F.R.D. at 449.

The Disability Subclass also shares common issues of law and fact. Members of the Disability Subclass share the common injury of losing their TennCare coverage as a result of TennCare's redetermination process that, they contend, screen out qualified persons with disabilities or has the effect of defeating or substantially impairing accomplishment of the objectives of the TennCare program. (Compl. Doc. 1 ¶¶ 253 (S.L.C.); 288–304 (Fultz); 311–21 (Hill); 354–62 (Monroe); 363–68 (Rebeaud); 420–30 (Walker). The Complaint alleges that the redetermination process fails to screen for eligibility based on disability, sends incomprehensible notices, fails to provide in-person assistance, and issues unduly burdensome requests for information that is irrelevant or already available to the state. Courts have found similar allegations sufficient to satisfy commonality. *See Crawley v. Ahmed,* 2009 WL 1384147; *J.M.*, 337 F.R.D. at 449.

Furthermore, answering the common factual question of whether Defendant's notices are unnecessarily complex or difficult to understand, and whether this disparately impedes the ability of persons with disabilities to effectively and timely respond will significantly advance the claims of the Disability Subclass. The same is true of a finding regarding whether the State's refusal to provide any in-person assistance prevents the successful completion of the eligibility redetermination process by persons who, because of their disabilities, need in-person help. Regardless of whether each disability is unique, the harm allegedly arises from a systemic lack of procedures to

accommodate the members of the Disability Subclass. *See In re Whirlpool*, 722 F.3d at 853 (finding commonality satisfied where questions produced "one stroke answers"); *Brooklyn Center for Independence of the Disabled v. Bloomberg*, 290 F.R.D. 409 (S.D.N.Y. 2012) (certifying class with diverse disabilities class because systemic failures impacted all class members).

### C. Typicality

Typicality requires that a "'sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 561 (6th Cir. 2007) (*quoting Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). "In government benefit class actions, the typicality requirement is generally satisfied when the representative plaintiff is subject to the same statute, regulation, or policy as class members." *Carr v. Wilson-Coker*, 203 F.R.D. 66, 75 (D. Conn. 2001) (quoting 5 *Newberg on Class Actions*, § 23.04 (3d ed. 1992) (citations omitted)). "The Sixth Circuit has concluded a proposed class representative's claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Barry*, 79 F. Supp. 3d at 732 (*quoting In re Am. Med. Sys.*, 75 F.3d at 1082).

Just as with the commonality inquiry, factual differences in the reasons for and duration of TennCare's terminations of class members' benefits do not defeat a showing of typicality here. *See, e.g.*, *J.M.*, 337 F.R.D. at 450 (rejecting defendants' argument "that typicality is not met because the named Plaintiffs all have different circumstances" where defendant treated class members similarly and their claims were brought under the same legal theories); *Crawley*, 2009 WL 1384147 at *13 (finding typicality where plaintiffs sued over termination of Medicaid benefits when the State had failed to determine their eligibility under a disability-based category). Individual differences only matter to the extent that they misalign the interests of the representative against

19

the interests of the absent class. *See In re Am Med Sys.*, 75 F.3d at 1082. Typicality focuses on whether "the *defendant's conduct* that gave rise to the representative's claims also gave rise to the class members' claims, and if the representative and class members seek to establish the defendant's liability based on the same legal theory." *Dozier*, 2014 WL 5483008 at *21.

Typicality is satisfied here for both the Plaintiff Class and the Disability Subclass because they arise from TennCare's standard template notices and universal policies governing appeals and fair hearings. All named plaintiffs are members of the Plaintiff Class: if they establish that the standardized notices they received do not satisfy the requirements of the Medicaid Act and Due Process Clause, then those common faults apply to all those absent class members who received NODs based on those templates. The same is true for named plaintiffs who were denied fair hearings within 90 days or whose appeal requests were denied under TennCare's "valid factual dispute" policy: TennCare's conduct is identical as to both the named plaintiffs and absent class members. *E.g.*, *Wilson*, 2014 WL 4347585 at *3 ("Plaintiffs' claims arise from the same practice and course of conduct that gave rise to the claims of other potential class members and are, therefore, typical of the other purported class members as to that policy or practice."); *Dozier*, 2014 WL 5483008, at *22-23 (finding typicality where representatives and class members all had been disenrolled from Medicaid with the same, challenged notice). The named plaintiffs' claims and the claims of the class members are also based on the same legal theories that Defendant's standard notices and appeals-screening processes violate the Medicaid Act and Due Process Clause. *See id.*

The named plaintiffs representing the Disability Subclass also easily meet the typicality requirement. Here, named plaintiffs' and class members' ADA claims all stem from omissions common to the Preterm Notices or renewal packets that they received, TennCare's failure to evaluate disability-related eligibility categories, and failure to provide accommodations making the

20

redetermination process navigable for people like them with disabilities. The Disability Subclass thus meets the typicality requirement.

### D. Adequacy of Representation

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Beattie*, 511 F.3d at 562 (citations omitted). Adequacy of representation includes inquiries into the competency of proposed class counsel. *In re Whirlpool,* 722 F.3d at 853. The named Plaintiffs will also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). They have vigorously prosecuted the interests of the class and possess the same interest as other class members. Here, the interests of Plaintiffs and the Plaintiff Class and Disability Subclass they seek to represent are completely aligned because they all suffer the same injury: the termination of their TennCare coverage without adequate notice or opportunity to be heard.

Moreover, those members of the class that have successfully regained coverage—whether through submitting new applications or arduously navigating TennCare's flawed appeals process—face the prospect of annual redeterminations following the end of the moratorium currently in place due to the ongoing public health emergency. Plaintiffs will continue to receive allegedly inadequate, misleading notices and unnecessary hurdles to maintain or reinstate their coverage pending appeal without the relief requested.

There is no known conflict among the class members, nor is there any common fund or limitation on resources to rectify their injuries. Indeed, if the named plaintiffs' interests were limited to merely regaining their own Medicaid coverage, they would have voluntarily dismissed this lawsuit as soon as TennCare restored their benefits; instead, they have continued to fight to ensure that other TennCare enrollees receive relief as well, and that they and other enrollees receive due

21

process as they all face the TennCare redetermination process again. The proposed class representatives are therefore adequate to represent the interests of absent class members.

Defendant's choice to reinstate TennCare coverage for the named plaintiffs within days of this litigation being filed does not defeat adequacy of representation. Numerous courts—including the Sixth Circuit—have unequivocally held that attempts to "pick off" class actions by providing the relief only to the named plaintiffs do not moot those plaintiffs' claims or render them inadequate representatives. *Wilson v. Gordon*, 822 F.3d 934, 947 (6th Cir. 2016) (explaining that, once "the defendant is on notice that the named plaintiff wishes to proceed as a class, [] the concern that the defendant therefore might strategically seek to avoid that possibility exists"); *Barry*, 834 F.3d at 715 (upholding district court's conclusion that plaintiff "could reasonably expect to encounter additional difficulties with his benefits, based on the problems he had faced in the past" and therefore class claims were not moot by temporary reinstatement of plaintiff's benefits). Named plaintiffs whose claims have been picked off remain adequate representatives of the class. *Wilson v. Gordon*, 2014 WL 4347585, at *4 (M.D. Tenn. Sept. 2, 2014); *J.M.*, 337 F.R.D. at 451-53 (concluding that class representatives who currently had Medicaid coverage did not have moot claims and could adequately represent class members whose coverage had not been reinstated); *Dozier*, 2014 WL 5483008 at *19 (same).

Here, the named plaintiffs' claims are not moot because, *inter alia*, the "inherently transitory" and "capable of repetition, yet evading review" exceptions apply. Plaintiffs' claims are inherently transitory because the notice and hearing procedures at issue are attendant to the State's obligation to annually redetermine TennCare eligibility; the annual nature of the redetermination process is sufficiently short to be so transitory as to evade review before class certification can be fully adjudicated. *See Wilson*, 822 F.3d at 945 (applying exception where "Plaintiffs did not know

22

how long their claims for injunctive relief from delay would remain live…. The State could quickly

either hold a hearing on their delayed applications for Medicaid or enroll them in TennCare at any

point…, as actually occurred in this case, before the district court could reasonably be expected to

rule on the class certification motion"); *Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017) (applying

exception to plaintiffs whose coverage the State reinstated shortly after filing suit). The due process

violations in this litigation are also capable of repetition but likely to evade judicial review because

the annual redetermination process is too short to fully litigate any one plaintiff's claims,[11] and the

State's refusal to change policies that allegedly denied Plaintiffs due process makes it reasonably

likely that class members will be subjected to the same action in the future.[12]

Finally, Plaintiffs are represented by attorneys from the Tennessee Justice Center and the

National Health Law Program. Counsel has extensive experience in complex class action litigation

involving health care and civil rights and have been appointed class counsel in other cases. *See*

Bonnyman Decl.; Perkins Decl. Plaintiffs' counsel are advancing costs for the litigation and have

sufficient funds available. Thus, the adequacy of counsel requirement is met.

### III. Certification of the Proposed Plaintiff Class and Disability Subclass under Rule 23(b)(2) Is Appropriate.

Plaintiffs seek to certify both the Plaintiff Class and the Disability Subclass under Rule

23(b)(2). Such classes should be certified where "the party opposing the class has acted or refused

---

[11] One-year periods satisfy the first element of this exception to mootness. *E.g., Turner v. Rogers*, 564 U.S. 431, 440 (2011) (12 months was too short in duration to be fully litigated); *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 774 (1978) (18 months was too short to obtain complete judicial review of challenge to prohibition on campaign contributions regarding the proposal).

[12] *See, e.g., Honig v. Doe*, 484 U.S. 305, 318-22 (1988) (holding plaintiff established "reasonable likelihood" of future deprivation of his statutory rights based on state's statutory obligations to continue managing his education); *Blankenship v. Secretary of HEW*, 587 F.2d 329, 332–33 (6th Cir. 1978) (rejecting mootness argument on the ground that "the defendants may expedite processing for any plaintiffs named in a suit while continuing to allow long delays with respect to all other[s]…. [R]efusal to consider a class-wide remedy merely because individual class members no longer need relief would mean that no remedy could ever be provided for continuing abuses.").

to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Reeb v. Ohio Dept. of Rehab. and Correction*, 435 F.3d 639, 645-46 (6th Cir. 2006). A class may be certified "if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Gooch*, 672 F.3d at 428. The "key" to (b)(2) classes is "the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or none of them." *Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

Given the systemic nature of the violations alleged here—inadequate template notices and defective procedures for providing appeals—adequately protecting the rights of any single plaintiff will require broad-based relief. These processes are common and consistent across the entire Plaintiff Class and Disability Subclass. Because plaintiffs' injuries may thus be remedied by a single injunction, Rule 23(b)(2) is satisfied. In a similar case where "defendant has allegedly provided the same inadequate notice of disqualification to all proposed class members," the court concluded that certification was appropriate. *Barry*, 79 F. Supp. 3d at 733 ("Lawsuits alleging class-wide discrimination are particularly well suited for 23(b)(2) treatment since the common claim is susceptible to a single proof and subject to a single injunctive remedy.") (*quoting Senter*, 532 F.2d at 525); *see also Crawley*, 2009 WL 1384147 at *15 (finding "the proposed class is well-suited for certification under Rule 23(b)(2)" because plaintiffs' requested injunctive and declaratory relief ordering Defendants to cease alleged violations of the Medicaid Act and Due Process clause).

As for the Disability Subclass, specifically, courts have certified other 23(b)(2) classes defined as individuals with disabilities who were harmed by a state entity's systemic failures that

screened them out or otherwise failed to provide access to the program. *See, e.g. Raymond v. Rowland*, 220 F.R.D. 173, 180 (D. Conn. 2004) (certifying class of "all disabled individuals who are or will be eligible for subsistence benefits" and "who require reasonable accommodation" which was denied by state's "failure to implement appropriate system-wide procedures and regulations"); *Henrietta D. v. Giuliani*, 1996 WL 633382, at *16 (E.D. N.Y. Oct. 25, 1996) (certifying class of "all DAS-eligible persons"). Here, the named plaintiffs representing the Disability Subclass cannot adequately protect their own rights without obtaining broad relief ensuring that all disabled and TennCare eligible individuals will be able to effectively navigate the redetermination and fair hearing process. The Disability Subclass meets the requirements of Rule 23(b)(2) therefore because class members were denied TennCare coverage due to a systematic failure to provide accommodations for people with disabilities overall.

Plaintiffs do not seek an injunction that will require individualized eligibility determinations; rather, the class seeks to remedy the uniform due process violations with TennCare's flawed notices and hearing procedures. The preliminary relief requested by Plaintiffs—reinstating coverage for enrollees whose benefits were involuntarily terminated—would restore the *status quo* until the State complies with the final relief sought by the class: providing notice and the opportunity to be heard consistent with the State's obligations under federal law and the U.S. Constitution.

## CONCLUSION

For the foregoing reasons, the Court should certify the Plaintiff Class and the Disability Subclass under Federal Rule of Civil Procedure 23(a) and 23(b)(2).


Respectfully submitted,

Date: November 12, 2021      /s/ Catherine Millas Kaiman
                             *On Behalf of Counsel for Plaintiffs*

25

Michele Johnson TN BPR 16756
Gordon Bonnyman, Jr. TN BPR 2419
Catherine Millas Kaiman, TN BPR 38936
Vanessa Zapata, TN BPR 37873
TENNESSEEJUSTICE CENTER
211 7th Avenue North, Suite 100
Nashville, Tennessee 37219
Phone: (615) 255-0331
FAX: (615) 255-0354
gbonnyman@tnjustice.org
ckaiman@tnjustice.org
vzapata@tnjustice.org

Jane Perkins
Elizabeth Edwards
Sarah Grusin
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin St., Ste. 110
Chapel Hill, NC 27514
Telephone: (919) 968-6308
perkins@healthlaw.org
edwards@healthlaw.org
grusin@healthlaw.org

*Attorneys for Plaintiffs*

Gregory Lee Bass (*pro hac vice*)
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
Phone: (212) 633-6967
bass@nclej.org

Faith Gay (*pro hac vice*)
Jennifer M. Selendy (*pro hac vice*)
Andrew R. Dunlap (*pro hac vice*)
Amy Nemetz (*pro hac vice*)
Babak Ghafarzade (*pro hac vice*)
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Phone: (212) 390-9000
fgay@selendygay.com
jselendy@selendygay.com
adunlap@selendygay.com
anemetz@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Plaintiffs*

Case 3:20-cv-00240    Document 140-1    Filed 11/12/21    Page 32 of 33 PageID #: 4764

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the Court's electronic filing system on this 12th day of November 2021 on the following counsel for the Defendant:

Ms. Sue A. Sheldon, Senior Assistant Attorney General
Mr. Jeffrey L. Wilson, Assistant Attorney General
Meredith W. Bowen, Assistant Attorney General
Matthew P. Dykstra, Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202
Sue.Sheldon@ag.tn.gov
logan.wilson@ag.tn.gov
mbowen@ag.tn.gov
matthew.dykstra@ag.tn.gov

Mr. Michael Kirk
Ms. Nicole Moss
Mr. Harold S. Reeves
Mr. J. Joel Alicea
Mr. William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Avenue,
NW Washington, D.C. 20036
mkirk@cooperkirk.com
nmoss@cooperkirk.com
hreeves@cooperkirk.com
jalicea@cooperkirk.com
wbergstrom@cooperkirk.com

/s/  Catherine Millas Kaiman
Catherine Millas Kaiman, TN BR 38396

27