# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

A.M.C., by her next friend, C.D.C., et al.,

     Plaintiffs,

         v.

STEPHEN SMITH, in his official capacity as
Deputy Commissioner of Finance and Administra-
tion and Director of the Division of TennCare,

     Defendant.

Civil Action No. 3:20-cv-00240

Class Action

Chief Judge Crenshaw
Magistrate Newbern

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR A PRELIMINARY INJUNCTION

Date:  November 12, 2021

Michele Johnson TN BPR 16756
Gordon Bonnyman, Jr. TN BPR 2419
Catherine Millas Kaiman, TN BPR 38936
Vanessa Zapata, TN BPR 37873
TENNESSEE JUSTICE CENTER
211 7th Avenue North, Suite 100
Nashville, Tennessee 37219
Phone: (615) 255-0331
Fax: (615) 255-0354
gbonnyman@tnjustice.org
ckaiman@tnjustice.org
vzapata@tnjustice.org

Jane Perkins (*pro hac vice*)
Elizabeth Edwards (*pro hac vice*)
Sarah Grusin (*pro hac vice*)
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin St. Ste. 110
Chapel Hill, NC 27514
Phone: (919) 968-6308
perkins@healthlaw.org
edwards@healthlaw.org
grusin@healthlaw.org

Gregory Lee Bass (*pro hac vice*)
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
Phone: (212) 633-6967
bass@nclej.org

Faith Gay (*pro hac vice*)
Jennifer M. Selendy (*pro hac vice*)
Andrew R. Dunlap (*pro hac vice*)
Amy Nemetz (*pro hac vice*)
Babak Ghafarzade (*pro hac vice*)
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Phone: (212) 390-9000
fgay@selendygay.com
jselendy@selendygay.com
adunlap@selendygay.com
anemetz@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

    A.    The Medicaid Act and Its Implementing Regulations .............................................3

    B.    Defendant's Defective Notice and Hearing Processes for Terminations................4

    C.    Defendant's Conduct Following the Commencement of This Action....................6

    D.    Procedural History ................................................................................................7

ARGUMENT ..........................................................................................................................7

I.    Plaintiffs Are Likely to Succeed on Their Claims ...............................................................8

    A.    Defendant's Notices Failed to Give Members Adequate Information to
           Challenge TennCare's Termination Decisions .......................................................9

           1.    Notices Falsely Stated that TennCare Had Considered All Facts,
                 Program Rules, and Bases of Eligibility Before Terminating
                 Coverage ..................................................................................................10

           2.    Notices Omitted Income Information That Was Crucial to
                 Challenging TennCare's Erroneous Eligibility Determinations ...............15

           3.    Notices Misrepresented Members' Appeal Rights ...................................16

    B.    Defendant Deprived Members of Adequate Hearing Rights................................19

           1.    Defendant Failed to Grant Continuation of Benefits Pending
                 Appeal......................................................................................................19

           2.    Defendant Failed to Provide Required Hearings .......................................20

II.    Without an Injunction Restoring Their Coverage, Affected Members of the
    Proposed Class Will Face Grave Risks of Irreparable Harms to Their Health.................21

III.    The Balance of Equities and Public Interest Favor Granting Relief.................................23

IV.    The Proposed Injunction Is Appropriately Tailored under Rule 65(d)(1) ........................24

V.    The Court Should Not Require Plaintiffs to Post Security .................................................25

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ability Ctr. of Greater Toledo v. Lumpkin*,
    808 F. Supp. 2d 1003 (N.D. Ohio 2011)................................................................10

*Barry v. Lyon*,
    834 F.3d 706 (6th Cir. 2016) ...............................................................15, 16, 25

*Blum v. Caldwell*,
    446 U.S. 1311 (1980)................................................................................23

*Boatman v. Hammons*,
    164 F.3d 286 (6th Cir. 1998) ......................................................................10

*Brandeis Machinery & Supply Corp. v. Barber-Greene Co.*,
    503 F.2d 503 (6th Cir. 1974) ........................................................................9

*Crawley v. Ahmed*,
    2009 WL 1384147 (E.D. Mich. May 14, 2009)............................................ *passim*

*Daniels v. Wadley*,
    926 F. Supp. 1305 (M.D. Tenn. 1996), *vacated in part on other grounds*
    *sub nom. Daniels v. Menke*, 1998 WL 211763 (6th Cir. Apr. 22, 1998)..........................19, 20

*Dozier v. Haveman*,
    2014 WL 5480815 (E.D. Mich. Oct. 29, 2014) ......................................................22

*FemHealth USA, Inc. v. City of Mount Juliet*,
    458 F. Supp. 3d 777 (M.D. Tenn. 2020)........................................................21, 25

*Fowler v. Johnson*,
    2017 WL 6540926 (E.D. Mich. Dec. 21, 2017) .....................................................25

*Goldberg v. Kelly*,
    397 U.S. 254 (1970)..........................................................................3, 9, 24

*Hall v. Edgewood Partners Ins. Ctr., Inc.*,
    878 F.3d 524 (6th Cir. 2017) .......................................................................8

*Hamby v. Neel*,
    368 F.3d 549 (6th Cir. 2004) ................................................................9, 18, 19

*Hughes v. McCarthy*,
    734 F.3d 473 (6th Cir. 2013) .......................................................................3

iii

*Libertarian Party of Ohio v. Husted*,
    751 F.3d 403 (6th Cir. 2014) ...............................................................................................23

*Manlove v. Volkswagen Aktiengesellschaft*,
    2019 WL 2291894 (E.D. Tenn. May 17, 2019)..................................................................8

*Markva v. Haveman*,
    168 F. Supp. 2d 695 (E.D. Mich. 2001)...........................................................................22

*McNeil v. Cmty. Prob. Servs., LLC*,
    No. 18-CV-00033, 2019 WL 633012 (M.D. Tenn. Feb. 14, 2019),
    *aff'd*, 945 F.3d 991 (6th Cir. 2019)....................................................................................7

*Moltan Co. v. Eagle-Picher Indus., Inc.*,
    55 F.3d 1171 (6th Cir. 1995) ...........................................................................................25

*Nashville Cmty. Bail Fund v. Gentry*,
    446 F. Supp. 3d 282 (M.D. Tenn. 2020)............................................................................8

*Ne. Ohio Coal. for Homeless v. Husted*,
    696 F.3d 580 (6th Cir. 2012) .............................................................................................8

*Nken v. Holder*,
    556 U.S. 418 (2009).............................................................................................................8

*Obama for America v. Husted*,
    697 F.3d 423 (6th Cir. 2012) .......................................................................................7, 21

*Overstreet v. Lexington-Fayette Urban Cty. Gov't*,
    305 F.3d 566 (6th Cir. 2002) ...........................................................................................21

*Price v. Medicaid Director*,
    838 F.3d 739 (6th Cir. 2016) .............................................................................................3

*Riverside Park Realty Co. v. F.D.I.C.*,
    465 F. Supp. 305 (M.D. Tenn. 1978).................................................................................9

*Robinson v. Purkey*,
    2017 WL 4418134 (M.D. Tenn. Oct. 5, 2017) ..................................................................8

*Rosen v. Goetz*,
    410 F.3d 919 (6th Cir. 2005) .................................................................................16, 17, 21

*Roth v. Commonwealth Bank*,
    583 F.2d 527 (6th Cir. 1978), *cert. denied*, 442 U.S. 925 (1979)...........................................8

*S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*,
    860 F.3d 844 (6th Cir. 2017) .............................................................................................8

*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*,
    119 F.3d 393 (6th Cir. 1997) .................................................................8

*Soave v. Milliken*,
    497 F. Supp. 254 (W.D. Mich. 1980) ...................................................23

*United Food & Comm'l Workers Union, Local 1099 v.*
    *Sw. Ohio Reg'l Transit Auth.*,
    163 F.3d 341 (6th Cir. 1998) .................................................................8

*Watkins v. Greene Metro. Hous. Auth.*,
    397 F. Supp. 3d 1103 (S.D. Ohio 2019) ...............................................23

*Wilson v. Gordon*,
    No. 14-CV-01492, 2014 WL 4347807 (M.D. Tenn. Sept. 2, 2014),
    *aff'd*, 822 F.3d 934 (6th Cir. 2016), *and vacated on other grounds*
    *sub nom. Wilson v. Long*, 2019 WL 8810351 (M.D. Tenn. Jan. 23, 2019) ...............21, 23, 25

*Windmill Corp. v. Kelly Foods Corp.*,
    76 F.3d 380, 1996 WL 33251 (6th Cir. 1996) .................................24, 25

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ..............................................................................7, 22

**Statutes**

42 U.S.C. 1396a(a)(3) .............................................................................9, 24

42 U.S.C. § 1396-1 ......................................................................................3

Pub. L. 94-566 § 503 .................................................................................11

**Rules & Regulations**

42 C.F.R. § 431.205(d) ................................................................................4

42 C.F.R. § 431.206(b)(1)-(2) ....................................................................18

42 C.F.R. § 431.210 ..........................................................................*passim*

42 C.F.R. § 431.220 ................................................................................4, 17

42 C.F.R. § 431.230 ................................................................................4, 19

42 C.F.R. § 431.231 ..............................................................................19, 24

42 C.F.R. § 431.244(f) ...........................................................................4, 20

42 C.F.R. § 431.250 ...................................................................................24

42 C.F.R. §§ 435.100–.172 ................................................................................3

42 C.F.R. § 435.911 ...........................................................................................3

42 C.F.R. § 435.916 ..................................................................................3, 10, 18

42 C.F.R. § 435.917 ......................................................................................4, 10

42 C.F.R. § 435.930(b) .....................................................................................24

42 C.F.R. § 435.952(d) .....................................................................................24

84 Fed. Reg. 66204 ..........................................................................................24

85 Fed. Reg. 76586 ..........................................................................................24

Fed. R. Civ. P. 12(b)(1) ......................................................................................7

Fed. R. Civ. P. 65 .........................................................................................1, 24

Tenn. Comp. R. & Regs. Ch. 1200-13-19 .....................................................5, 17

Tenn. Comp. R. & Regs. Ch. 1200-13-20 ................................................5, 17, 18

**Other Authorities**

*Report to the Financial Stimulus Accountability Group on the Federal and State
Fiscal Response to COVID-19* (updated Feb. 5, 2021), *available at*
https://bit.ly/3bSEGYs; .................................................................................24

TennCare, *Initial HCBS Spending Plan Projection and Narrative* (July 12, 2021),
*available at* https://bit.ly/3H0gIZZ ...............................................................24

Plaintiffs respectfully submit this memorandum of law in support of their motion pursuant to Federal Rule of Civil Procedure 65(a) for a preliminary injunction requiring Defendant to: (1) reinstate coverage for members of the proposed Plaintiff Class whose TennCare coverage was involuntarily terminated between March 19, 2019, and March 18, 2020, and who are not currently enrolled, and notify them of the reinstatement; and (2) refrain from involuntarily terminating any such individual's TennCare coverage until the person receives notice and an opportunity for a fair hearing that complies with due process.

## PRELIMINARY STATEMENT

In the year preceding this litigation, from March 19, 2019, to March 18, 2020, Defendant disenrolled Plaintiffs and tens of thousands of similarly situated Tennesseans—including children, the elderly, and the disabled—from Tennessee's Medicaid program, called TennCare, without adequate notice or a meaningful opportunity to be heard. Through this motion, Plaintiffs seek the reinstatement of these individuals and the protection of their rights under the Due Process Clause and the Medicaid Act.

Defendant does not dispute that the state disenrolled Plaintiffs and thousands of others from TennCare in error. The state erroneously terminated coverage for at least 2,900 individuals after Plaintiffs filed this suit, and even after the state's implemented a so-called "moratorium" on terminations during the ongoing pandemic. Defendant's inability to follow even simplified coverage requirements during the moratorium underscores Defendant's systematic failure to accurately determine members' eligibility for TennCare in the year preceding March 18, 2020. Defendant even confessed to its federal oversight agency, the Centers for Medicare & Medicaid Services ("CMS"), that the state lacks any metric for determining the accuracy of its eligibility decisions.

Defendant's notices failed to give TennCare members information sufficient to challenge the state's erroneous determinations of their entitlement to coverage. These notices falsely stated

that Defendant had considered all available facts, all program rules, and all coverage groups—when Defendant's defective processes prevented the state from collecting or considering all material facts available to Defendant. The notices deliberately omitted crucial details about members' income, making it harder to challenge Defendant's frequently mistaken applications of arcane income requirements for different categories of TennCare coverage. And Defendant's notices misstated all members' appellate rights, including their rights to a merits hearing, to a hearing to show good cause for a delay, and to reinstatement of coverage following the submission of requested information. These notice defects deprived Plaintiffs of a meaningful opportunity challenge Defendant's erroneous coverage decisions.

Defendant compounded these harms by depriving members of their hearing rights. Despite the general requirement to grant continuation of benefits ("COB") pending a hearing, Defendant frequently denied COB in error, including for Plaintiffs who Defendant admits were entitled receive them. Defendant further admits systematically delaying hearings for whole categories of appellants far beyond the ninety-day deadline required by federal law. Some Plaintiffs were forced to wait nearly a year for final agency action on their meritorious appeals. And Defendant's practice of denying hearings to members, including several Plaintiffs, for disputes over material facts or the state's applications of law constitutes a clear violation of the Medicaid Act.

Without an injunction, affected members of the proposed Plaintiff Class—all who remain without the TennCare coverage to which they are entitled—face irreparable harm in the form of risk to their health and well-being. The balance of equities and public interest favor protecting the health of these Tennesseans and the public health of the state. Any marginal costs to Defendant of complying with injunctive relief pale in comparison and are mitigated by the hundreds of millions of dollars in additional federal funding that Defendant has already received for the very purpose

2

of providing TennCare coverage during the national health emergency. Plaintiffs' requested injunction is sufficiently detailed, and no security is warranted. Relief should be granted.

## FACTUAL BACKGROUND

### A.    The Medicaid Act and Its Implementing Regulations

"Through Medicaid, the federal government gives money to the States for the purpose of paying the medical costs of people 'whose income and resources are insufficient to meet the costs of necessary medical services.'" *Price v. Medicaid Director*, 838 F.3d 739, 742 (6th Cir. 2016) (quoting 42 U.S.C. § 1396-1). The Medicaid Act is administered at the federal level by CMS, whose implementing regulations bind state Medicaid plans. *Hughes v. McCarthy*, 734 F.3d 473, 475 (6th Cir. 2013). Federal regulations require a state Medicaid agency to cover individuals who meet the specific scope and income standards for any one of more than twenty categories of eligibility, including children, caretaker relatives, pregnant women, the poor, the aged, and the disabled. 42 C.F.R. §§ 435.100–.172. The state must consider all categories for which an individual is potentially eligible. *Id.* § 435.911(c)-(d).

The state must redetermine each member's eligibility annually and upon a reported change in individual circumstances that may affect eligibility. *Id.* § 435.916(a)(1), (d). Before determining any member ineligible, the state must consider "all bases of eligibility." *Id.* § 435.916(f). If the state is unable to do so based on information available to it, the state may request from the beneficiary "only the information needed to renew eligibility," must give the beneficiary at least thirty days to respond and must verify any information provided. *Id.* § 435.916(a)(2)-(3), (e). If a state deems a member ineligible for failure to respond and the member subsequently does so within ninety days, the state must reconsider its decision. *Id.* § 435.916(a)(3)(iii).

The state must provide procedural safeguards that "meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970), and any additional standards specified in [the Medicaid

3

regulations].” *Id.* § 431.205(d). To that end, “the agency must provide all … beneficiaries with timely and adequate written notice of any decision affecting their eligibility.” *Id.* § 435.917(a). Such notice must contain “[a] clear statement of the specific reasons” and “[t]he specific regulations that support” termination, as well as explanations of the individual’s hearing rights and the circumstances under which benefits continue if a hearing is requested. *Id.* §§ 431.210, 435.917(b)(2). Benefits must continue whenever an individual timely requests and is entitled to a hearing. *Id.* § 431.230(a). An individual is entitled to a hearing if “he or she believes the agency has taken an action erroneously, denied his or her claim for eligibility or for covered benefits or services, … or has not acted upon the claim with reasonable promptness including … [a] subsequent decision regarding eligibility,” unless “the sole issue is a Federal or State law requiring an automatic change adversely affecting some or all beneficiaries.” *Id.* § 431.220(a)(1)(i), (b). The state must “take final administrative action” within ninety days of a hearing request unless it “cannot reach a decision because the appellant requests a delay or fails to take a required action” or there is an “emergency beyond the agency’s control.” *Id.* § 431.244(f). If an agency terminates coverage without providing adequate advance notice, it must reinstate the person and maintain their coverage pending notice and the disposition of any appeal. *Id.* § 431.231(c).

## B. Defendant’s Defective Notice and Hearing Processes for Terminations

Defendant administers Tennessee’s Medicaid plan, called TennCare. Ex.[1] 2 ¶ 1. Since March 19, 2019, Defendant disenrolled 116,187 members for reasons other than death, voluntary withdrawal, or moving out of state. Ex. 3. Of these former members who were still living, 108,233 had been enrolled in one of twenty-five categories of eligibility that do not automatically expire.

---

[1] Unless otherwise indicated, citations to “Ex.” refer to exhibits to the Declaration of Catherine M. Kaiman in Support of Plaintiffs’ Motions for Class Certification and a Preliminary Injunction.

4

*Id.* Yet Defendant disenrolled almost all of them—108,175—between March 19, 2019, and March 18, 2020. *Id.* These 108,175 former members are the subject of this motion.

Before disenrolling a member, Defendant issues one of two notices: (1) a "Renewal Packet" that is "pre-populated" with information in Defendant's possession; or (2) a pre-termination notice ("Pre-Term Notice") noting a purported change in circumstances disqualifying the member and including a questionnaire with "specific questions geared to elicit information necessary to review for *all* categories of eligibility." *Id.* ¶¶ 45, 47, 59 (emphasis added). If the member does not respond to a notice within the specified time—forty days for a Renewal Packet; twenty days for a Pre-Term Notice—with proof of eligibility, Defendant issues a "Notice of Decision" ("NOD") terminating coverage. *Id.* ¶¶ 51–59. All three notices are based on standard templates. *E.g.*, Exs. 5–6, 9–10. The member then has forty days to request a hearing unless there is "good cause" for delay, meaning "a reason based on circumstances outside the party's control and despite the party's reasonable efforts." Tenn. Comp. R. & Regs. §§ 1200-13-19-.02(20), -.06(3). Defendant must reconsider any decision to terminate eligibility for failure to respond where the member subsequently does so within ninety days. *See id.* § 1200-13-20-.09(1)(d)(11); Ex. 2 ¶ 57.

Defendant acknowledges various "problems," "issues," and "defect[s]" with its notice and appeal procedures for redeterminations since March 2019. Ex. 2 ¶¶ 25, 35. For example, Defendant misclassified eligibility information from some cases as belonging to others, sending inaccurate notices or no notices whatsoever to affected members where incorrect address information was mixed up. *Id.* ¶ 25(a)-(d). Defendant incorrectly told some members their coverage was terminated because they no longer received Supplemental Security Income ("SSI"), when other information available to Defendant confirmed they were receiving SSI and were entitled to coverage. *Id.* ¶ 35(a), (i), (g). Defendant miscategorized some members and incorrectly said their income was

too high for eligibility in their misstated categories, when the members satisfied the income requirements of their correct categories. *Id.* ¶ 25(e). All NODs omitted members' individual facts that were the basis of the decision, such as income, as well as their rights to reconsideration and good-cause hearings for delayed submissions. *Id.* ¶¶ 53, 57. And Defendant not only denied hearings to those entitled to them but also failed to take final action on appeals "before the ninety-day deadline" *Id.* ¶ 70. Additional defects are detailed in Part II, *infra*.

### C.    Defendant's Conduct Following the Commencement of This Action

Soon after Plaintiffs filed this action, Defendant revised the state's notices to address certain deficiencies identified in the complaint. *See, e.g.*, Compl. ¶¶ 88–90 (noting "the standard redetermination packets do not ask if an individual is currently receiving SSI or has received SSI in the past" or "whether an individual is currently receiving long-term services and supports," even though such benefits "can establish eligibility for several categories of Medicaid"); *id.* ¶ 107 (noting "inaccurate and misleading" statement "that the state has considered all of the enrollee's facts and each kind of coverage group Defendant"). Defendant admits that, "in response to Plaintiffs' concern that SSI-related categories can be overlooked," Defendant added a question to the Pre-Term Notice: "Do you get Social Security benefits now and also got SSI checks in the past?" Ex. 2 ¶ 59(f), (h). Defendant also revised the stock NOD language concerning termination of eligibility from "Remember, when we make our decision, we look at *all* of your facts, *all* of our program rules, and *each* kind of group we have," Ex. 5, at TC-AMC-0000235002 (emphases added), to "Remember, we look at *the facts we have for you* before we make our decision. And we use *those facts* to review you for our coverage groups," Ex. 6, at TC-AMC-0000025190 (emphases added). Despite these changes, Defendant failed to reinstate the 108,175 former members whose coverage Defendant had terminated using deficient notices.

6

### D.    Procedural History

Plaintiffs filed their complaint—whose allegations they verified, Ex. 1—on March 19, 2020, moved for class certification the next day, and sought a preliminary injunction three weeks later. *See* ECF Nos. 1, 5, 10. Defendant moved to dismiss pursuant to Rule 12(b)(1) solely on standing and mootness grounds on May 22, 2020. *See* ECF No. 59. All three motions were fully briefed by mid-June 2020, when the parties commenced discovery. After Defendant sought leave to supplement his responses to Plaintiffs' motions, this Court held a video status conference on February 19, 2021, and denied all pending motions without prejudice and instructed the parties to re-file their motions after completing further discovery. ECF No. 106. On September 20, 2021, Magistrate Judge Newbern certified the completion of that discovery and set a briefing schedule for the renewed motions. ECF Nos. 136, 138. Plaintiffs now move for a preliminary injunction and, separately, class certification.

## ARGUMENT

The Court has broad equitable power to grant class-wide preliminary injunctive relief before ruling on class certification. *See McNeil v. Cmty. Prob. Servs., LLC*, No. 18-CV-00033, 2019 WL 633012, at *16 (M.D. Tenn. Feb. 14, 2019) (collecting cases), *aff'd*, 945 F.3d 991 (6th Cir. 2019). Plaintiffs merit a preliminary injunction because (1) they are "likely to suffer irreparable harm in the absence of preliminary relief;" (2) they are "likely to succeed on the merits"; (3) "the balance of the equities tips in [their] favor"; and (4) an "injunction is in the public interest." *Obama for America v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The third and fourth factors . . . 'merge when the Government is the opposing party.'" *Nashville Cmty. Bail Fund v. Gentry*, 446 F. Supp. 3d 282, 304 (M.D. Tenn. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The same standard applies to both prohibitive and mandatory injunctions. *United Food & Comm'l Workers Union, Local 1099 v. Sw.*

7

*Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998); *Robinson v. Purkey*, 2017 WL 4418134, at *6 (M.D. Tenn. Oct. 5, 2017).

The Sixth Circuit has "often cautioned that these are factors to be balanced, not prerequisites to be met." *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017). "As long as there is some likelihood of success on the merits, these factors are to be balanced, rather than tallied." *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017). "In general, the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction." *Roth v. Commonwealth Bank*, 583 F.2d 527, 538 (6th Cir. 1978), *cert. denied*, 442 U.S. 925 (1979). "For example, the failure to establish a strong probability of success on the merits does not preclude relief if there are 'serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.'" *Manlove v. Volkswagen Aktiengesellschaft,* 2019 WL 2291894, at *9 (E.D. Tenn. May 17, 2019) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399–400 (6th Cir. 1997)).

## I.      Plaintiffs Are Likely to Succeed on Their Claims

"At the preliminary injunction stage, a plaintiff must show more than a mere possibility of success, but need not prove his case in full." *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quotation marks omitted). Preliminary injunctive relief is warranted where a court can "satisfy itself, not that the plaintiff certainly has a right, but that he has a fair question to raise as to the existence of such a right." *Brandeis Machinery & Supply Corp. v. Barber-Greene Co.*, 503 F.2d 503, 505 (6th Cir. 1974). Accordingly, "the standard that must be met in order to establish the requisite likelihood of success on the merits is not a particularly stringent one." *Riverside Park Realty Co. v. F.D.I.C.*, 465 F. Supp. 305, 310 (M.D. Tenn. 1978).

8

Plaintiffs easily meet this standard, because they have shown that Defendant did not provide adequate notice and an opportunity to be heard before terminating benefits. Tennesseans "have a legitimate claim of entitlement to TennCare coverage" if they meet the program's "eligibility requirements" and, when "challenging a discontinuance" of coverage, "up until the exhaustion of all appeals." *Hamby v. Neel*, 368 F.3d 549, 559 (6th Cir. 2004). TennCare beneficiaries are entitled under the Constitution to "due process, which would require adequate notice and a meaningful hearing prior to any attempt to deprive the interest holder of any rights," *id.* at 560, and Section 1396a(a)(3) of the Medicaid Act and its "attendant regulations require the state agency to notify applicants of the right to obtain a hearing and the method of obtaining one . . . when any action is taken which affects the applicant's claim." *Crawley v. Ahmed*, 2009 WL 1384147, at *26 (E.D. Mich. May 14, 2009). Plaintiffs are likely to succeed on the merits because Defendant violated these requirements.

A.     **Defendant's Notices Failed to Give Members Adequate Information to Challenge TennCare's Termination Decisions**

Constitutional due process requires that "that notice be reasonably calculated to inform the recipient of the action to be taken and an 'effective opportunity to be heard.'" *Hamby*, 368 F.3d at 560 (quoting *Goldberg*, 397 U.S. at 268). Notice under section 1396a(a)(3) "must include: (1) a statement of the actions being taken, (2) reasons for the intended actions, (3) specific regulations that support or require the intended action, and (4) an explanation of the right to a hearing, and under what circumstances Medicaid benefits will continue during the pendency of the requested hearing." *Crawley*, 2009 WL 1384147, at *26; *accord Boatman v. Hammons*, 164 F.3d 286, 288 (6th Cir. 1998); *Ability Ctr. of Greater Toledo v. Lumpkin*, 808 F. Supp. 2d 1003, 1027 (N.D. Ohio 2011); 42 C.F.R. §§ 431.210, 435.917(b)(2). Defendant's NODs unlawfully contained false or incomplete information about the basis for Defendant's termination decisions.

9

**1. Notices Falsely Stated that TennCare Had Considered All Facts, Program Rules, and Bases of Eligibility Before Terminating Coverage**

Defendant's NODs falsely stated, "Remember, when we make our decision, we look at *all* of your facts, *all* of our program rules, and *each* kind of group we have." Ex. 4, at TC-AMC-0000234998 (emphases added). Although this language tracks Defendant's duty to "consider all bases of eligibility" before "making a determination of ineligibility," 42 C.F.R. § 435.916(f)(1), Defendant's own evidence shows Defendant failed to consider all available facts and categories of eligibility before making a decision of ineligibility.

Defendant admits, for example, that the state misidentified members "as not currently receiving SSI (and thus no longer automatically eligible for Medicaid)" and terminated their coverage, "even though subsequent information received from other sources demonstrated they were in fact receiving SSI-cash payments and should not have had their SSI-Medicaid closed." Ex. 2 ¶ 35(a). This error resulted from Defendant's deliberate choice "not [to] ask about SSI income" in the Renewal Packet or Pre-Term Notice questionnaire, relying instead on SSI data from the Social Security Administration ("SSA").[2] *Id.* ¶¶ 52 n.15, 59. But Defendant's flawed process for using SSI data caused Defendant to misclassify members among three categories of SSI-related eligibility—Widow/Widower ("W/WW"), Disabled Adult Child ("DAC"), and Pickle.[3] Ex. 2 ¶ 35(i),

---

[2] Defendant's Renewal Packet instructions expressly directed members *not* to provide SSI information. Ex. 11, at TC-AMC-0000025583–84. Defendant also did not "evaluate for SSI-eligibility upon a new application." Ex. 2 ¶ 126.

[3] W/WW covers disabled, widowed persons between 50 and 65 years old who lost SSI but who would still be eligible for SSI if their widow/widower Social Security benefits were disregarded. 42 U.S.C. § 1383c(d). DAC covers those who become disabled before age 22, lose SSI because they receiver Social Security benefits for a parent's death or retirement, and meet the income requirement if their SSI is disregarded entirely. *Id.* § 1383c(c). Pickle covers former SSI recipients who would be eligible for SSI if the Social Security Cost of Living Adjustments received since their SSI termination were disregarded. Pub. L. 94-566 § 503.

10

(k)-(*l*). Through April 2020, Defendant deemed 6,628 members as no longer receiving SSI and disenrolled 2,773 of them. *Id.* ¶ 24. Defendant's misleading notices deprived all these members of an adequate opportunity to challenge eligibility decisions. *See Crawley*, 2009 WL 1384147, at *26 ("Such notice can hardly qualify as 'adequate' because it does not include a determination of eligibility on all relevant grounds, thereby undermining any opportunity for a fair hearing.").[4]

Defendant admits these SSI-related deficiencies harmed several named Plaintiffs. *See* Ex. 2 ¶¶ 25(e), 35(a). For example, Defendant sent Plaintiff Vivian Barnes a Pre-Term Notice in June 2019 misidentifying her as no longer receiving SSI and so ineligible. *Id.* ¶ 111. Although she responded with proof of her SSI, Defendant sent her an erroneous NOD terminating her eligibility for not receiving SSI. *Id.* ¶ 112. Ms. Barnes reapplied in November 2019 and expressly noted her current receipt of SSI, but Defendant sent her another erroneous NOD—in March 2020—finding her ineligible for lack of SSI. *Id.* ¶ 115. Defendant did not acknowledge these errors until after this litigation began. *Id.* ¶ 119–20. Similarly, though Plaintiff Clarissa Caudill timely responded to an erroneous May 2019 Pre-Term Notice that said she did not receive SSI, Defendant issued an erroneous NOD and denied her appeal and subsequent application on the mistaken ground that she no longer received SSI. *Id.* ¶¶ 122–26. It was not until after the Tennessee Justice Center ("TJC")

---

[4] Defendant's subsequent conduct underscores these undisputed failures. Defendant admits that "in response to Plaintiffs' concern that SSI-related categories can be overlooked," the state added a question to the Pre-Term Notice questionnaire: "Do you get Social Security benefits now and also got SSI checks in the past?" Ex. 2 ¶ 59(f), (h). Defendant subsequently added another question in May 2020 asking whether the member was hospitalized for at least 30 days. Ex.9, at TC-AMC-0000025412, -19. The prior questionnaire did not seek such information, Ex. 8, at TC-AMC-191607–08, even though it would have established eligibility, *see* Ex. 2 ¶ 6. Defendant also revised the NOD template in May 2020 to suggest a less fulsome review of available facts supporting eligibility: "Remember, we look at *the facts we have for you* before we make our decision. And we use *those facts* to review you for our coverage groups." Ex. 6, at TC-AMC-0000025187 (emphases added). All three changes highlight Defendant's prior deprivations of SSI-eligible members' rights.

intervened on her behalf that Defendant restored her coverage in November 2019. *Id.* ¶ 127. Defendant likewise misclassified Plaintiff Johnny Walker as not receiving SSI, sent him an erroneous NOD in July 2019 terminating eligibility on that basis, and did not reinstate him until October 2019, after TJC intervened. *Id.* ¶¶ 201–05. Plaintiff Rhonda Cleveland received a Pre-Term Notice and NOD mistakenly terminating her eligibility for not receiving SSI, was not granted continuing coverage pending appeal, and did not have her appeal resolved in her favor until March 2020. *Id.* ¶¶ 129–31. And Defendant misclassified Plaintiffs Michael Hill and Kerry Vaughn under the Pickle rather than DAC category and sent NODs erroneously finding them ineligible because the "Pickle and DAC income disregards are calculated differently." *Id.* ¶¶ 25(e), 150–53, 199.[5]

Defendant also failed to consider all available eligibility information for members whose case files Defendant mangled through the state's case-merger process. Because Defendant uses a "household or family case-based system" for redetermining eligibility, it is imperative that contact and eligibility data for connected individuals are accurately merged from disparate sources into the same household case when they should be. Ex. 2 ¶ 19. But Defendant admits the state failed to do so for every member. *Id.* ¶ 25. In some cases, Defendant created incorrect household case files by omitting some family members from the household case, *id.* ¶¶ 25(c), 35(b); identifying the wrong member as head of household, *id.* ¶ 25(a); or even transposing data between unconnected households, *id.* ¶ 25(b). In other instances, Defendant terminated coverage in an individual case

---

[5] Defendant also sent other defective notices to members in SSI-related categories. When TennCare identifies a member "as no longer being in an active SSI-cash pay status," it creates an "SSI-transitional placeholder case" to review the member's eligibility "for other categories of potential TennCare coverage." Ex. 2 ¶ 35(d). As a result, through at least August 2019, Defendant issued two contradictory and confusing notices to members like Plaintiff Barnes: (1) a Pre-Term Notice stating that their prior coverage was ending and (2) an NOD purportedly approving coverage for their placeholder case. *Id.* These members were "not actually being newly approved for coverage" in the placeholder cases, *id.*, but Defendant falsely told them they were.

without correctly merging the members continuing eligibility into her family's "consolidated case." *Id*. ¶¶ 15 & n.9. And when merging individual case files from the state's prior eligibility-determination system to the one it began using in 2019, Defendant transferred incorrect information about members' categories of eligibility. *Id.* ¶ 25(d)-(e).

These admitted failures harmed several Plaintiffs. For example, Defendant "incorrectly merged" the family case file for Plaintiffs D.D., T.E.W., S.D.W., Y.A.D., Z.M.D., X.M.D. with that of another family in April 2019, "sen[t] all notices to an incorrect address," then terminated their coverage "in error" in August 2019 for failure to respond to notices they never received. *Id.* ¶ 137. When D.D. called to inquire about her family's coverage, rather than correcting the error or even "escalat[ing] this case for further review," the state directed her to reapply from scratch, *id.* ¶ 138, which would have caused a gap in coverage. Defendant similarly failed to correctly merge the cases of Plaintiff D.R. and her four children into a single household case, issued unnecessary requests for additional income information from D.R. as a result, and terminated coverage in June 2019 for failure to respond. *Id.* ¶¶ 181–83. Defendant also misinformed some members of the family that they would not receive continuation of benefits pending appeal, which error was not corrected until after TJC intervened. *Id.* ¶ 185. For Plaintiff A.M.C., Defendant mailed two NODs in August and September 2019 that were wrongfully addressed to A.M.C.'s grandmother instead of her mother and erroneously stated that she was not in a covered group. *Id.* ¶¶ 90–91. It was not until after TJC intervened in February 2020 that Defendant corrected his erroneous deprivation of coverage. *Id.* ¶ 94. As a result of a similar processing failure, Defendant sent an NOD intended for Plaintiff E.I.L. and his family to the wrong address, despite having received their correct mailing address, and terminated coverage in September 2019 for failure to respond. *Id.* ¶ 163. It was not

until after TJC intervened on E.I.L.'s behalf in February 2020 that Defendant corrected his mistake. *Id.* ¶ 165. For Plaintiff K.A., Defendant terminated coverage in his individual case in December 2019 without correctly merging his eligibility into his family's consolidated case and did not fix his coverage gap until late February 2020. *Id.* ¶¶ 15, 101–02. And Defendant's failure to transfer accurate SSI-related eligibility information for Plaintiffs S.L.C., Michael Hill, and Kerry Vaughn caused Defendant to fail to consider the category in which they were eligible and to send them erroneous NODs misstating their eligibility categories. *Id.* ¶¶ 133–34, 150–53, 199.

Contrary to Defendant's false assurances, these were not "one-time issues." *Id.* ¶ 26. They affected at least the seventeen named Plaintiffs (out of thirty-five total) identified above. Defendant converted nearly one million cases from its prior system into its new one in early 2019. *Id.* ¶ 25. Given the need to merge these individual cases into combined household cases, *id.* ¶ 19, it is exceedingly likely that many other members suffered similar harms due to the wrongful mergers and resulting incorrect notices. Indeed, Defendant has admitted—in an interrogatory response—erroneously terminating coverage for more than 2,900 members just since this litigation began,[6] during the so-called "moratorium on disenrollments." *Id.* ¶ 41. Such a large number of admittedly erroneous merger-related terminations, is powerful circumstantial evidence of even more frequent merger errors before March 19, 2020. And Defendant's representation to CMS this year that it *still* lacks *any* way to "ensure that the state can make accurate eligibility determinations" warrants ju-

---

[6] Defendant produced a "spreadsheet list[ing] every erroneous termination of coverage that TennCare has identified to date" and stated that "termination of coverage was never intended in the first instance" for any of the "merger cases." Ex. 14, at 22–23. The spreadsheet identifies 2,907 terminations with "case merge" or "individual merge" among the termination reasons. Ex. 15, at 2.

14

dicial intervention. Ex. 4. In light of these admitted failures, Defendant's representation to all terminated members that the state had considered all available facts and eligibility categories was demonstrably false and deprived them of meaningful notice.

### 2. Notices Omitted Income Information That Was Crucial to Challenging TennCare's Erroneous Eligibility Determinations

Defendant's NODs failed to clearly state "the specific reasons supporting" ineligibility determinations, as required by 42 C.F.R. § 431.210(c). Defendant acknowledges that different eligibility categories are subject to different "income standard[s]," including not only overall limits but also "income disregards." Ex. 2 ¶¶ 5–7, 25(e).[7] All NODs state: "Things like age, income, and resources can be different between each group." Ex. 5, at TC-AMC-0000234998. But Defendant's stock text for over-income denials reads only: "The monthly income limit for the kind of <coverage> you could get is <$xxx.xx>. Our records show your monthly income is over this limit." Ex. 7.[8] In light of the arcane income formulas for different eligibility categories, failing to provide specific income information gives members "no basis for making an informed decision whether to contest the disqualification, nor what issues need to be addressed at a hearing." *Barry v. Lyon*, 834 F.3d 706, 719–20 (6th Cir. 2016) (finding notices of criminal disqualification for food stamps violated due process and SNAP Act by failing to detail misconduct).

Although "[d]ue process does not require 'reasonably calculated' notice to come in just one letter, as opposed to two," *Rosen v. Goetz*, 410 F.3d 919, 931 (6th Cir. 2005), TennCare failed

---

[7] *See also* Tenn. Comp. R&R 1200-13-20-.06(2)(d) (disregards for Medically Needy Children and Qualified Medically Needy Pregnant Women); *id.* -06(3)(e) (SSI, MSP, and Institutional Eligibility); *id.* -08(2)(c) (Disabled Adult Child); *id.* at -08(3)(c) (Pickle passalong); *id.* at -08(4)(c)(4) (Widow/Widower); *id.* at -08(5)(h)(1) (Qualified Long-Term Care Insurance Policies).

[8] The NOD template includes the field "<Denial Reason>," which pulls language from the Business Reference Table RT_EDREASON_CD. Ex. 5, at TC-AMC-0000234996, -23. This table, produced by Defendant as part of a compendium of reference tables, is attached as Exhibit 7.

to provide specific income information in any combination of notices. The NOD's bare reference to the categorical income limit and 95-page chapter of TennCare's eligibility rules does not suffice. *See Barry*, 834 F.3d at 719 (finding that "[e]ven if a notice recipient locates a copy of the [eligibility manual] and determines the type of disqualification, he or she still does not know anything about" the basis for the agency's decision). And Defendant's standard Case Change Notice that preceded the NOD did not disclose the specific change in income, either: "We've made a change to your income. To protect your privacy we are not printing this change in this letter. . . . To confirm the change we've made, log in to your <TEDS NAME> account online or by using your mobile app. Or you can call us at <TCC phone>." Ex. 12, at TC-AMC-0000024898–99. TennCare "cannot satisfy due process by requiring notice recipients to call elsewhere." *Barry*, 834 F.3d at 720. Defendant states that NODs deliberately omitted members' income information "for privacy reasons," Ex. 2 ¶ 59(b), but Defendant included specific income information on its "pre-populated" Renewal Packets, *id.* ¶¶ 47–48; *see also* Ex. 10, at TC-AMC-0000025545–46 (fields to pre-populate available monthly income).

Defendant's deliberate withholding of crucial income information on NODs caused harm to many enrollees. Defendant admits the state erroneously terminated coverage for Plaintiffs Hill and Vaughn, as well as for 426 members since March 19, 2020, based on a mistaken finding that their income exceeded a categorical coverage limit. *See* Ex. 2 ¶ 25(e); Ex. 15, at 3. The total number of erroneous terminations based on income miscalculations in the prior year is likely much higher, since terminations all but stopped during the pandemic. *See* Ex. 2 ¶ 41.

### 3. Notices Misrepresented Members' Appeal Rights

Federal regulations expressly require a state to issue a notice of decision explaining, among other things, the member's right to request a hearing, the circumstances under which a hearing will be granted, and the circumstances under which coverage is continued if a hearing is requested. 42

C.F.R. § 431.210(d)-(e). Defendant's NODs were misleading on their face by misstating the grounds for a merits hearing, failing to disclose the right to a hearing to show good cause for delay, and failing to disclose the right to reinstatement of coverage.

*First*, all NODs misstated the grounds for obtaining a merits hearing by stating: "If you don't think we made a mistake about a fact, you can't have a fair hearing." Ex. 5, at TC-AMC-0000235006. This language is misleading because it omits members' right to challenge not only "matters of fact" but also the state's "application of law." *Rosen v. Goetz*,[9] 410 F.3d 919, 926 (6th Cir. 2005); *see also* 42 C.F.R. § 431.220 (requiring hearing for "[a]ny individual who requests it because he or she believes the agency has taken an action erroneously" or "denied his or her claim for eligibility or for covered benefits or services," unless "the sole issue is a Federal or State law requiring an automatic change adversely affecting some or all beneficiaries"); Tenn. Comp. R. & Regs. §§ 1200-13-19-.02(33), -.05(3) (requiring hearing for any "dispute that, if resolved in favor of the appellant, would prevent the state from taking the action that is the subject of the appeal"). Defendant admits erroneously terminating Plaintiff Caudill's coverage and dismissing her appeal without a hearing despite Defendant's mistake of fact concerning her SSI. Ex. 2 ¶¶ 125–27.

*Second*, all NODs withheld information that members have a right to a hearing to demonstrate good cause for why their failure to act or to respond timely should not result in termination of coverage or denial of the right to appeal. Due process entitles TennCare members to, among other things, adequate notice of the consequences of different avenues of post-decision relief. *Hamby*, 368 F.3d at 560. Federal regulations likewise require TennCare to inform each member

---

[9] *Rosen* held that after TennCare eliminated three categories of eligibility altogether, it need not grant hearings to every affected member. 410 F.3d at 929. This case does not concern such a mass change in law but rather Defendant's erroneous eligibility determinations under existing law.

17

of his "right to a fair hearing" and "the method by which he may obtain a hearing." 42 C.F.R. §§ 431.206(b)(1)-(2), 431.210(d). State regulations permit each member forty days from the NOD to request a hearing, "unless good cause can be shown as to why the [request] could not be filed within the required time limit." Tenn. Comp. R. & Regs. § 1200-13-19-.06(3). Defendant admits the NODs purposely do not "tell members that they can request a good cause exception to the appeal filing deadlines." Ex. 2 ¶ 53. This failure echoes Defendant's failure in *Hamby* to disclose in its NODs either that "if an appeal of a denied application was not pursued, applicants would be barred from a claim of benefits originating from the date of their original applications" or that "if applicants did submit new applications with insurance denial letters, the second claim would cut off eligibility based on the first applications." 368 F.3d at 560. The Sixth Circuit found these omissions violated due process by failing to adequately "advise [unsuccessful] applicants of the consequences of not appealing and filing new applications." *Id.* at 562. Similarly here, Defendant's withholding of notice of the right to good-cause hearings denies members information essential to avoiding the consequences of a failure or delay for which they should not be held responsible.

*Third*, all NODs omitted any reference to members' right to reconsideration if they submitted requested information within ninety days pursuant to 42 C.F.R. § 435.916(a)(3)(iii) and section 1200-13-20-.09(1)(d)(11) of TennCare's rules. Defendant admits the state "does not include information in its notices about the 90-day reconsideration period." Ex. 2 ¶ 57. This omission tracks even more closely Defendant's failure in *Hamby*, given the substantive consequences of unknowingly giving up an appeal in favor of filing a new application. 368 F.3d at 562. Even when members timely submitted requested information within the ninety-day window, as Defendant admits Plaintiffs Linda Rebeaud and Johnny Walker did, Defendant nonetheless failed to reinstate their coverage as required by law. Ex. 2 ¶¶ 178, 203.

18

Defendant's patronizing rationale for not disclosing members' rights to good-cause hearings and reinstatement—"that including such information could be detrimental to [TennCare] members by deterring them from getting their renewal packets in on time" or "fail[ing] to file a timely appeal when they do not in fact have good cause," Ex. 2 ¶¶ 53, 57—is no excuse for keeping members in the dark about procedural rights vital for the protection of their coverage.

### B. Defendant Deprived Members of Adequate Hearing Rights

#### 1. Defendant Failed to Grant Continuation of Benefits Pending Appeal

"[U]nder the Medicaid Act benefits may rarely, if ever, be terminated prior to a hearing." *Daniels*, 926 F. Supp. at 1310 (citing 42 C.F.R. §§ 431.230, 431.231); *accord Hamby*, 368 F.3d at 559 ("The Medicaid Act does not subject its recipients to a limited duration of services so long as the eligibility requirements are met; and if challenging a discontinuance, up until the exhaustion of all appeals."); *Crawley*, 2009 WL 1384147, at *22 (requiring continuing Medicaid benefits pending a final eligibility determination). Defendant admits violating this right by erroneously depriving numerous members—including Plaintiffs Caudill, D.R., J.Z., and M.X.C., and "similarly situated appellants"—continuation of benefits ("COB") pending a hearing due to Defendant's programming "defect and related notice issue." Ex. 2 ¶ 35(e).

Although Defendant makes the bare assertion that the state "modified" its programming "to correct the issue on August 25, 2019," *id.*, the risk of erroneous deprivation, including related bills and costs incurred, continues. Defendant continued to deny numerous Plaintiffs COB after August 2019. *See id.* ¶ 131 (denying Plaintiff Cleveland COB in January 2020), ¶ 159 (noting that Defendant learned in October 2019 that Plaintiff Hill's COB had been "inadvertently terminated" in September 2019), ¶ 161 (denying COB to J.S.K., M.N.S. and D.C.S. in September 2019); *see also* ¶ 169 (improperly deducting monies from Plaintiff Monroe's COB in September 2019).

19

## 2. Defendant Failed to Provide Required Hearings

In addition to the notice defects set forth above, Defendant systematically failed to provide timely hearings—or any hearings at all—to members entitled to them. As relevant here, federal regulations require a state agency to "take final administrative action" within ninety days of "the date the agency receives a request for a fair hearing" unless it "cannot reach a decision because the appellant requests a delay or fails to take a required action" or "[t]here is an administrative or other emergency beyond the agency's control." 42 C.F.R. § 431.244(f). Defendant admits that, as a matter of policy, it does not even "schedule all of the appeals for hearing," let alone take final action, "before the ninety-day deadline." Ex. 2 ¶ 70. Defendant admits delaying the appeals of multiple Plaintiffs for nearly a year. *E.g.*, *id.* ¶¶ 153–57, 200 (noting eleven-month delays in taking final actions on Plaintiffs Hill's and Vaughn's appeals). Such delays clearly violate the Medicaid Act. *See Daniels v. Wadley*, 926 F. Supp. 1305, 1311 (M.D. Tenn. 1996) ("To the extent that a claim dispute remains unresolved for longer than ninety days from the time that the enrollee requests review of the dispute, the TennCare procedures violate the Medicaid Act."), *vacated in part on other grounds sub nom. Daniels v. Menke*, 1998 WL 211763, at *1–2 (6th Cir. Apr. 22, 1998) (vacating ruling that private managed care organizations were state actors).[10]

In addition, Defendant denied any hearings whatsoever to members disputing its application of the law to their facts. As discussed in Part II.A.3, *supra*, federal law requires a hearing for any dispute over "matters of fact or the application of law," *Rosen*, 410 F.3d at 926, yet Defendant

---

[10] Defendant attempts to justify the state's delays by saying it prioritizes appeals for applicants without continuation of benefits, Ex. 2 ¶ 70, but the law expressly provides a ninety-day deadline for all appeals except in the case of emergency or factors outside the agency's control, 42 C.F.R. § 431.244(f). In any event, Defendant admits, even prioritizing her appeal was insufficient to afford final action within ninety days on the appeal of the desperately ill infant, Plaintiff S.F.A., whose urgent condition was repeatedly brought to Defendant's attention. Ex. 2 ¶¶ 106–07.

20

admits denying appeal requests from at least three named Plaintiffs (J.L.T., A.L.T., and Caudill) based on their purported failure to raise a "valid factual dispute," Ex. 2 ¶ 71(i) (misspelling J.L.T.'s and A.L.T.'s initials as "J.S.T." and "A.S.T."), despite the Defendant's mistaken assessment of facts or applications of law, *see id.* ¶¶ 125–27 (Caudill); *id.* ¶¶ 193–97 (J.L.T. and A.L.T.). These failures cast doubt on all 776 appeals since March 19, 2019, that Defendant "closed because they failed to identify a factual mistake." *Id.* ¶ 71(i). And that number of wrongful closures does not account for the untold additional members who complied with the NOD's misleading instructions and did not dispute TennCare's erroneous applications of law.

## II.    Without an Injunction Restoring Their Coverage, Affected Members of the Proposed Class Will Face Grave Risks of Irreparable Harms to Their Health

The serious threat to the health of absent class members, who remain without coverage, weighs heavily in favor of granting them preliminary relief. Harm is irreparable where "it is not fully compensable by monetary damages," *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002), and where "constitutional rights are threatened or impaired," *Obama for America*, 697 F.3d at 436; *accord FemHealth USA, Inc. v. City of Mount Juliet*, 458 F. Supp. 3d 777, 804 (M.D. Tenn. 2020).

Courts in this district and across the circuit routinely find that denial of Medicaid benefits constitutes irreparable harm. *E.g.*, *Wilson v. Gordon*, No. 14-CV-01492, 2014 WL 4347807, at *4 (M.D. Tenn. Sept. 2, 2014) ("The Plaintiff class members are economically impoverished and, without TennCare benefits, have foregone or are foregoing vital medical treatments, services, and prescriptions. These injuries cannot be made whole by a retroactive award of money after the litigation process is complete."), *aff'd*, 822 F.3d 934, 958 (6th Cir. 2016) ("Courts routinely uphold preliminary injunctions where the alleged irreparable harm involves delay in or inability to obtain medical services and the party against whom the injunction is issued claims that the injunction

21

places significant costs on them."), *and vacated on other grounds sub nom. Wilson v. Long*, 2019 WL 8810351 (M.D. Tenn. Jan. 23, 2019); *Dozier v. Haveman*, 2014 WL 5480815, at *11 (E.D. Mich. Oct. 29, 2014) ("District courts in the Sixth Circuit examining preliminary injunctions in the Medicaid context 'have held that delay or denial of Medicaid benefits can amount to irreparable harm.'" (quoting *Markva v. Haveman*, 168 F. Supp. 2d 695, 717 (E.D. Mich. 2001))); *Crawley*, 2009 WL 1384147, at *27 (finding irreparable harm where plaintiffs would "receive medical benefits that [were] far below those provided under Medicaid, to which they [were] entitled").

Because uninsured individuals "live sicker and die sooner," those who "have lost Medicaid coverage are at heightened risk of harm, in the form of severe illness or death, while they remain without health coverage." 2d Decl. Brenda Butka, M.D., Supp. Pls.' Mot. Prelim. Inj. ("Butka Decl.") ¶¶ 3–4 (Nov. 12, 2021). "This is especially true of individuals whose Medicaid eligibility has been based on their having a disability," as those who "meet the Social Security Administration's disability standard are often seriously medically compromised." *Id.* ¶ 4. Plaintiffs' experiences illustrate that such harms are "not merely possible, but likely." *Winter*, 555 U.S. at 22. Plaintiff A.M.C., for example, required two emergency hospitalizations and was unable to obtain anti-seizure medications after losing coverage. *See* Compl. ¶¶ 135–36, 142–44. Without coverage, Plaintiff Rhonda Cleveland cannot afford needed medication for her severe pulmonary disease, arthritis, and depression. *Id.* ¶¶ 234, 241. For Plaintiff Carlissa Caudill, TennCare is the only means of obtaining the ongoing medical care she needs to treat the serious neurological and orthopedic injuries that she suffered during childhood. *Id*. ¶ 220. Although Defendant has restored the named Plaintiffs' coverage, tens of thousands of class members who suffered similar injuries remain disenrolled and exposed to grave risks to their health.

## III.  The Balance of Equities and Public Interest Favor Granting Relief

The equities and public interest favor enjoining Defendant. "It is always in the public interest to prevent the violation of a party's constitutional rights," *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014), and to guarantee "that those in financial need are not unreasonably terminated from public assistance benefits," *Watkins v. Greene Metro. Hous. Auth.*, 397 F. Supp. 3d 1103, 1110 (S.D. Ohio 2019).[11] "Courts routinely uphold preliminary injunctions where the alleged irreparable harm involves delay in or inability to obtain medical services and the party against whom the injunction is issued claims that the injunction places significant costs on them." *Wilson*, 822 F.3d at 958 (affirming injunction); *see also Blum v. Caldwell*, 446 U.S. 1311, 1315–16 (1980) (upholding injunction where state Medicaid agency's additional cost of complying with injunction were outweighed by "the life and health of the members of this class: persons who are aged, blind, or disabled and unable to provide for necessary medical care because of lack of resources"); *Crawley*, 2009 WL 1384147, at *29 (finding "the public interest is best served when the state agency endowed with the duty of dispensing Medicaid benefits to deserving individuals is in compliance with the federal Medicaid statutes and their attendant regulations").

Here, too, the public interests in protecting TennCare members' rights and public health exceed the marginal costs to Defendant of complying with an injunction. *See, e.g.*, Butka Decl. ¶¶ 17–18 (discussing the public-health implications of not covering Medicaid-eligible individuals). The injunction would do no more than mandate TennCare's belated implementation of a remedy that federal Medicaid law has required for more than a half century. Regulations implementing

---

[11] *See also Soave v. Milliken*, 497 F. Supp. 254, 262 (W.D. Mich. 1980) ("Maintaining the personal dignity and stability of persons on the edge of poverty serves not only their personal interests, but the interests of the society in which they live.")

42 U.S.C. § 1396a(a)(3) and *Goldberg* require Defendant to reinstate coverage to anyone Defendant disenrolls without providing adequate advance notice and an opportunity to appeal, as well as to maintain such coverage through the disposition of any appeal. 42 C.F.R. § 431.231(c) (requiring continuation of coverage if "[a]ction is taken without the advance notice required"); § 435.930(b) (requiring agency to "[c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible"); § 435.952(d) (prohibiting termination without "proper notice and hearing rights"). The regulations mitigate any financial impact by offering federal matching funds to underwrite the cost of coverage pending appeal or pursuant to a court order. *Id.* § 431.250. Additional mitigation comes from the hundreds of millions of dollars in additional federal funding Defendant will receive through the spring of 2022.[12]

## IV. The Proposed Injunction Is Appropriately Tailored under Rule 65(d)(1)

Plaintiffs' proposed injunction satisfies Rule 65(d)(1)'s requirements to state the reasons why it was issued, state its terms specifically, and describe the enjoined acts "in reasonable detail." Some generality in the terms of an injunction is appropriate to avoid potential "loopholes." *Windmill Corp. v. Kelly Foods Corp.*, 76 F.3d 380 (Table), 1996 WL 33251, at *6 (6th Cir. 1996). It is sufficient that the injunctive opinion and order together clarify what conduct is enjoined. *E.g.*, *id.* at *6–7; *Barry*, 834 F.3d at 721; *Fowler v. Johnson*, 2017 WL 6540926, at *1 (E.D. Mich. Dec. 21, 2017). In *Wilson*, for example, the district court enjoined TennCare "from continuing to refuse

---

[12] Defendant accepted more than $360 million in additional federal funding during the pandemic, which increased Tennessee's federal medical assistance percentage from 66% to 76% from October 2020 through September 2022. *See* 85 Fed. Reg. 76586, -88 (Nov. 30, 2020); 84 Fed. Reg. 66204, -06 (Dec. 3, 2019). Defendant expects to receive an additional $145 million in federal stimulus funding through March 2022. *See* Tenn. Gov.'s Office & Dep't Fin. & Admin., *Report to the Financial Stimulus Accountability Group on the Federal and State Fiscal Response to COVID-19*, at 3–6 (updated Feb. 5, 2021), *available at* https://bit.ly/3bSEGYs; TennCare, *Initial HCBS Spending Plan Projection and Narrative*, at 1 (July 12, 2021), *available at* https://bit.ly/3H0gIZZ.

24

to provide 'fair hearings' on delayed adjudications" and "ordered [it] to provide the Plaintiff Class with an opportunity for a fair hearing on any delayed adjudication." 2014 WL 4347807, at *5 (footnote omitted), *aff'd* 822 F.3d 934. *Crawley* ordered the state Medicaid agency to reenroll class members (by enjoining it from "failing to continue Medicaid") and refrain from terminating their coverage "without first providing them with a meaningful pre-termination notice and opportunity to be heard." 2009 WL 1384147, at *30. Plaintiffs' requested relief here is comparably tailored, enforcing a regulatory obligation Defendant already owes class members. *See* 42 C.F.R. § 431.231(c) ("The agency must reinstate and continue services until a decision is rendered after a hearing if [a]ction is taken without the advance notice required[.]").

## V.     The Court Should Not Require Plaintiffs to Post Security

District courts have "discretion over whether to require the posting of security," *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995), and courts routinely waive security for plaintiffs with limited financial means, *e.g.*, *Wilson*, 2014 WL 4347807, at *5; *Fowler v. Johnson*, 2017 WL 6540926, at *2 (E.D. Mich. Dec. 21, 2017) (waiving bond because the plaintiffs "suffered injuries because of their lack of financial resources"), or because "a strong public interest is present," *FemHealth USA, Inc. v. City of Mount Juliet*, 458 F. Supp. 3d 777, 805 n.27 (M.D. Tenn. 2020). These factors support waiving a security requirement in this case.

## CONCLUSION

For the foregoing reasons, the Court should grant the requested preliminary injunction.

Dated: November 12, 2021

By:     /s/  *Catherine Millas Kaiman*

Michele Johnson TN BPR 16756
Gordon Bonnyman, Jr. TN BPR 2419
Catherine Millas Kaiman, TN BPR 38936
Vanessa Zapata, TN BPR 37873
TENNESSEE JUSTICE CENTER
211 7th Avenue North, Suite 100
Nashville, Tennessee 37219
Phone: (615) 255-0331
Fax: (615) 255-0354
gbonnyman@tnjustice.org
ckaiman@tnjustice.org
vzapata@tnjustice.org
lrevolinski@tnjustice.org

Jane Perkins (*pro hac vice*)
Elizabeth Edwards (*pro hac vice*)
Sarah Grusin (*pro hac vice*)
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin St. Ste. 110
Chapel Hill, NC 27514
Phone: (919) 968-6308
perkins@healthlaw.org
edwards@healthlaw.org
grusin@healthlaw.org

Gregory Lee Bass (*pro hac vice*)
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
Phone: (212) 633-6967
bass@nclej.org

Faith Gay (*pro hac vice*)
Jennifer M. Selendy (*pro hac vice*)
Andrew R. Dunlap (*pro hac vice*)
Amy Nemetz (*pro hac vice*)
Babak Ghafarzade (*pro hac vice*)
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Phone: (212) 390-9000
fgay@selendygay.com
jselendy@selendygay.com
adunlap@selendygay.com
anemetz@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document is being served via

the Court's electronic filing system on this 12th day of November, 2021 on the following counsel

for Defendant:

Ms. Sue A. Sheldon, Senior Assistant Attorney General
Mr. Jeffrey L. Wilson, Assistant Attorney General
Meredith W. Bowen, Assistant Attorney General
Matthew P. Dykstra, Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202
Sue.Sheldon@ag.tn.gov
logan.wilson@ag.tn.gov
mbowen@ag.tn.gov
matthew.dykstra@ag.tn.gov

Mr. Michael Kirk
Ms. Nicole Moss
Mr. Harold S. Reeves
Mr. J. Joel Alicea
Mr. William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Avenue,
NW Washington, D.C. 20036
mkirk@cooperkirk.com
nmoss@cooperkirk.com
hreeves@cooperkirk.com
jalicea@cooperkirk.com
wbergstrom@cooperkirk.com

*/s/ Catherine Millas Kaiman*
*On Behalf of Counsel for Plaintiffs*