# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |
|---|---|
| A.M.C., by her next friend, C.D.C., *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 3:20-cv-00240<br>Chief District Judge Crenshaw<br>Magistrate Judge Newbern |
| STEPHEN SMITH, in his official capacity as Deputy Commissioner of Finance and Administration and Director of the Division of TennCare, | |
| Defendant. | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

January 4, 2022

Herbert H. Slatery III
Attorney General and Reporter

Sue A. Sheldon TN BPR #15295
Senior Assistant Attorney General
Meredith Bowen TN BPR #34044
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN  37202
(615) 770-1903
Meredith.bowen@ag.tn.gov

Michael W. Kirk*
Nicole J. Moss*
Harold S. Reeves*
William V. Bergstrom*

COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
(202) 220-9600
mkirk@cooperkirk.com
nmoss@cooperkirk.com

*Appearing *pro hac vice*

*Counsel for the Defendant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...............................................................................................................1

STATEMENT ....................................................................................................................2

ARGUMENT .....................................................................................................................7

I.  THE CLASS DEFINITION IS UNWORKABLE...................................................7

II.  PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN OF PROVING
    EACH OF THE DEMANDING PREREQUISITES OF Fed. R. Civ. P. 23(a)................11

    A.  Plaintiffs Have Not Established Commonality. ....................................................11

    B.  Plaintiffs Have Not Established Typicality...........................................................14

    C.  Plaintiffs Have Not Proven That They Will Be Adequate Representatives
        of The Class. ....................................................................................................17

III.  PLAINTIFFS' PROPOSED CLASS DOES NOT SATISFY RULE 23(b)(2)'S
     REQUIREMENTS..............................................................................................19

    A.  Plaintiffs Have Not Demonstrated That Defendant Acted Or Refused To
        Act On Grounds That Apply Generally To The Class...........................................20

    B.  Certification of a Rule 23(b)(2) Class Is Improper Because Plaintiffs Are
        Seeking Individualized and Divisible Injunctive Relief. ......................................20

    C.  It Is Not Administratively Feasible for the Court to Adjudicate the
        Eligibility Status of Each Putative Class Member.................................................22

    D.  The Class Is Not Cohesive.................................................................................24

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page**

*A.R. v. Conn. State Bd. of Educ.*, 2020 WL 2092650 (D. Conn. May 1, 2020)............................23

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) ...............................................15

*Bostick v. St. Jude Med., Inc.*, 2004 WL 3313614 (W.D. Tenn. 2004) ......................................8, 9

*Cole v. ASARCO Inc.*, 256 F.R.D. 690 (N.D. Okla. 2009) .................................................11

*Cole v. City of Memphis*, 839 F.3d 530 (6th Cir. 2016)..................................................22

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .........................................................19

*Crosby v. Soc. Sec. Admin.*, 796 F.2d 576 (1st Cir 1986).................................................8

*Dozier v. Haveman*, 2014 WL 5483008 (E.D. Mich. Oct. 29, 2014) ................................8, 13, 14

*Easterling v. Conn. Dept. of Corr.*, 278 F.R.D. 41 (D. Conn. 2011)..........................................23

*Eversole v. EMC Mortg. Corp.*, 2007 WL 1558512 (E.D. Ky. May 29, 2007)............................ 9

*Freeman v. Delta Airlines, Inc.*, 2019 WL 2495471 (E.D. Ky. June 14, 2019) ...........................22

*Friedman v. Berger*, 547 F.2d 724 (2nd Cir. 1976).....................................................23

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)................................................17

*In re Refrigerant Compressors Antitrust Litig.*, 2011 WL 2623317 (E.D. Mich. June 13, 2011).16

*In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555 (E.D. Tenn. 2014) ....................16

*Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010)..........................................10

*Lujan v. Def. of Wildlife*, 504 U.S. 555 (1992) .........................................................18

*Lumpkin v. Farmers Grp., Inc.*, 2009 WL 10698662 (W.D. Tenn. Mar. 24, 2009) ......................8

*Lynch v. Baxley*, 744 F.2d 1452 (11th Cir. 1984)......................................................19

*Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341 (11th Cir. 2001) .........................................17

*Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011).................................. 1, 8, 10

*Reeb v. Ohio Dep't of Rehabilitation and Corr.*, 435 F.3d 639 (6th Cir. 2006)..........................24

*Romberio v. UnumProvident Corp.*, 385 F. App'x 423 (6th Cir. 2009)....................8, 16, 19, 24

*Schilling v. Kenton Cnty. Ky.*, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011)...........................8, 10

*Schweiker v. Gray Panthers*, 453 U.S. 34 (1981)......................................................23

*Singletery v. Equifax Info. Servs., LLC*, 2011 WL 9133115 (N.D. Ala. Sept. 22, 2011) ........11, 12

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)..................................14, 15

*Teamsters v. United States*, 431 U.S. 324, 361 (1977) ................................................21

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) .........................................15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................... *passim*

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012).................................. *passim*

## Statutes, and Rules

42 C.F.R. § 435.916(a)(2)...............................................................................15

FED. R. CIV. P. 23(a)(2)......................................................................... 1, 11

FED. R. CIV. P. 23(a)(3).........................................................................1, 14

FED. R. CIV. P. 23(a)(4).........................................................................1, 17

FED. R. CIV. P. 23(b)(2)....................................................................1, 11, 19

FED. R. CIV. P. 23(c)(1)(B)........................................................................8

## Other Authorities

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*,
   84 N.Y.U. L. REV. 98 (2009) ............................................................21

# INTRODUCTION

Plaintiffs have asked the Court to certify a class consisting of:

> All individuals who meet the eligibility criteria for TennCare coverage and who, since March 19, 2019, have been or will be disenrolled from TennCare. The class excludes individuals, and the parents and legal guardians of individuals, whose termination is due to a requested withdrawal from the TennCare program.

Mem. of Law in Support of Pls.' Mot. for Class Certification, ("Class Cert. Br"), Doc. 140-1 at 12

(Nov. 12, 2021). Plaintiffs have further asked the Court to certify a subclass consisting of:

> Plaintiff Class members who are "qualified individuals with a disability" as defined in 42 U.S.C. § 12131(2).

*Id*. The motion must be denied because Plaintiffs have failed to define a proper class and have not satisfied the prerequisites of Rule 23(a)(2), (a)(3), (a)(4), and of Rule 23(b)(2).

First, Plaintiffs have proposed a class definition that would require an individualized merits determination of each putative class member's eligibility for TennCare. But "[b]efore a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012). Plaintiffs have not suggested any means for the Court to determine which, if any, of the 108,175 individuals they say were disenrolled since March 2019 and remain off the program currently "meet the eligibility criteria for TennCare coverage." Instead, they seek to circumvent the need for individualized determinations of eligibility by asking the Court to decide the entire case at the outset by assuming that TennCare terminated no one lawfully and that everyone who was terminated is actually eligible for TennCare. This "solution" makes class membership turn on a merits determination, and it creates an impermissible fail-safe class. *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011).

1

Second, the proposed class does not satisfy the commonality, typicality, and adequacy of representation requirements of Rule 23(a). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-53 (2011). Specifically, Plaintiffs have not established that putative class members suffered a common injury, either legally or in fact, that was the result of a systemic policy or practice of the Defendant. Instead, the Plaintiffs' allegations and the Defendant's evidence both establish that the named Plaintiffs were primarily affected by a random hodgepodge of start-up errors during the first year of operations of the new Tennessee Eligibility Determination System ("TEDS") along with some instances of human error, none of which affected the proposed class as a whole. The class thus fails.

Finally, Plaintiffs' proposed class cannot be certified pursuant to Rule 23(b)(2) because Plaintiffs have not established that Defendant acted on grounds that apply generally to the proposed class. They do not seek indivisible injunctive relief; they seek relief that would be administratively infeasible to provide; and they have defined a class that lacks cohesion. Plaintiffs seek reinstatement of TennCare coverage for all disenrolled putative class members. This is divisible injunctive relief and is particularly fatal to Plaintiffs' motion for certification under Rule 23(b)(2); the Supreme Court has squarely held that reinstatement is individualized relief that cannot be provided to the members of a class certified under Rule 23(b)(2). *Id*. at 360–62.

## STATEMENT

All the named Plaintiffs in this action are current TennCare enrollees who allege that TennCare made an error in determining their eligibility at some point during the class period. The errors alleged vary in their causes—some involve technical defects with TEDS that have since been corrected, while others are the result of human error. The errors alleged also vary in their effects—some Plaintiffs experienced delays in processing appeals, some allege they failed to

receive necessary notices, and some (but not all) lost coverage for a period of time. More specifically:

- 7 of the 34 named Plaintiffs allege they had to provide information that was duplicative of information that TennCare should have had on file or been able to obtain from another government agency. Compl., Doc. 1 at ¶ 83 (Mar. 19, 2020).
- 6 of 34 allege they lost coverage when they became ineligible in one Medicaid category even though they remained eligible in a different eligibility category. *Id.* ¶ 92.
- 7 of 34 allege they were denied their appeal rights although they timely submitted requests. *Id.* ¶ 113.
- 10 of 34 allege they did not receive their redetermination packets in the mail or, in a subset of these cases, their termination notices. *Id.* ¶ 97.
- 4 of 34 allege they were terminated for failing to provide requested information, even though they had provided that information. *Id.* ¶ 101.

Despite the disparate errors alleged and the lack of uniformity among even the named Plaintiffs in this case, the Plaintiffs seek to cast their alleged injuries in a unified light for purposes of their motion for class certification. One way they try to do this is by suggesting that all the errors stem from the implementation of TEDS in March 2019.

In 2017, the State began the extensive process of obtaining CMS certification of TEDS. Over the next several years, with CMS oversight and approval, TennCare designed, tested, and implemented a largely automated system, which allows TennCare to conduct eligibility evaluations for all eligibility categories, conduct automated eligibility renewals and real-time eligibility decisions, process appeals, and issue notices. Doc. 139-2 ¶¶ 6–13. On November 2, 2020, CMS found that TEDS met the certification criteria and certified TEDS retroactive to its implementation on June 3, 2019. *Id.* at ¶ 13.

During the first year that TEDS was fully operational, TennCare converted eligibility data for over 1.9 million individuals in over 970,000 cases from existing databases into TEDS. Decl.

of Kimberly Hagan in Opp'n to Pls.' Mots. for Class Cert. & for a Prelim. Inj., filed herewith at ¶ 25 ("Hagan Decl."). In this same period, TennCare has used TEDS to process over 2 million eligibility reverifications—either through annual eligibility renewals or reverifications of eligibility prompted by a reported change in information that could impact a TennCare member's eligibility—without requiring the member to submit any information in order to keep their TennCare coverage. *Id.* ¶ 16. TEDS has also processed over 85,000 appeals related to a termination of benefits. *Id.* ¶ 5. The vast majority of members who went through eligibility reverification kept their benefits. *Id.* ¶ 18.

Given the volume of cases converted into TEDS, the volume of eligibility redeterminations and reverifications, and the volume of appeals, particularly during the first year of operation of a brand-new, operationally complex, eligibility-determination system, it is not surprising that some errors were made and some gaps in design discovered. And the named Plaintiffs have alleged precisely the type of random and varied defects, gaps, and isolated human errors that one would expect in these circumstances.

However, none of the errors alleged were the product of any one policy or practice. Instead, they arose primarily from isolated and idiosyncratic issues related to the one-time conversion of millions of cases into TEDS, varied inadvertent defects or unforeseen gaps in TEDS's complex design and programming that only impacted small groups of individuals in different Medicaid categories of eligibility, and random human errors. *See id.* ¶¶ 19–27, 35, 82–83. For example:

- A.M.C., D.D., T.E.W., S.D.W., Y.A.D., Z.M.D., X.M.D., Michael Hill, D.R., J.Z., M.X.C., J.C., S.L.C., Linda Rebeaud, and Kerry Vaughn all experienced problems that can be traced back to the one-time process of converting eligibility data into TEDS. *Id.* ¶¶ 25(a)–(e).
- Vivian Barnes, Carlissa Caudill, and Johnny Walker's problems arose from misinformation that TennCare received from the Social Security Administration ("SSA") indicating they were not actively receiving Supplemental Security Income ("SSI") payments. *Id.* ¶¶ 24(a), 83(a).

4

- K.A. and E.I.L. were affected by a gap in the programming logic of TEDS that produced erroneous effective dates of coverage for some newborns. *Id.* ¶ 83(b).

- S.F.A. J.L.T., and A.L.T. were affected by a TEDS programming defect that blocked transitional Medicaid coverage for some children. *Id.* ¶ 83(g).

- Rhonda Cleveland was affected by a TEDS defect that failed to load the most recent Social Security income information from the SSA. *Id.* ¶ 83(i).

There is no evidence that any of these errors affected more than a handful of other class members—indeed, most only *could* happen to a small fraction of TennCare enrollees. For example, TennCare fully investigated the error that occurred in the Barnes, Caudill, and Walker cases and found that of the 213,488 SSI cases converted into TEDS, 6,628 individuals were found not to be automatically eligible for TennCare based on SSA documentation of SSI. *Id.* ¶¶ 24(a)–(c). Following a careful review of those 6,628 individuals' cases, just 2,773 individuals were found to be ineligible and disenrolled. *Id.* ¶ 24(c). After an SSA data error was identified as a cause of inaccurate disenrollments, all 2,773 of those cases were sent to SSA for confirmation of those individuals' SSI status and SSA confirmed that just 45 individuals should not have been disenrolled because they were still receiving SSI. TennCare and SSA also determined that an additional 431 individuals eligible for TennCare through another avenue should be recategorized as SSI-eligible. All of these individuals had their SSI-eligibility reinstated. *Id.* So while 213,488 active SSI cases transitioned to TennCare, *at most* Plaintiffs' class allegations could relate to 2,773 of them (less those who were reinstated) and even then it is *extremely* unlikely, given the careful review, that *any* individual exists who was actually injured by this issue. *Id.* ¶ 24(d) (for comparison, only 0.22 percent of individuals in this categorical review were incorrectly terminated).

Recognizing that the individualized nature of the allegations in the Complaint are incompatible with a class-action suit, Plaintiffs attempt to recast most of their injuries to center on

the notices they received. As an initial matter, Plaintiffs' argument must fail because these types of notices have been reviewed and approved by CMS as part of its certification of TEDS. *Id.* ¶ 14. Furthermore, Plaintiffs' allegations concerning these notices are not uniform. Plaintiffs cannot even demonstrate that they all suffered from the same notice problems, let alone that every person disenrolled from TennCare since the beginning of the class period lost coverage because of inadequate notices. For example, six of the 34 named Plaintiffs never received a termination notice and never lost coverage, and five additional Plaintiffs received a termination notice but never lost coverage. *See Id.* ¶ 77. And even those Plaintiffs who did receive termination notices did not receive the same notice.[1] In fact, 12 of the complaints made by Plaintiffs and their Declarants do not even involve the eligibility redetermination processes and corresponding notices that Plaintiffs claim led to the wrongful disenrollment of the 108,175 individuals whose coverage they seek to have reinstated. *Id.*

Plaintiffs also attempt to relate their individual allegations to a broader claim that TennCare's appeals and hearings processes are fundamentally flawed in a way that warrants class-wide relief. But yet again, Plaintiffs cannot overcome the differences between their own cases, let alone show some common failing in TennCare's appeals and hearings processes that extends to the entire putative class. To the extent their claims are based on TennCare's "valid factual dispute requirement," that requirement affected only three of the named Plaintiffs' cases. Hagan Decl. ¶ 72(i). Indeed, the valid factual dispute requirement has only impacted 4 percent of appeals related to termination of benefits filed since March 19, 2019, and thus, could not impact a significant number of putative class members either. *Id.* Plaintiffs' claims about the timeliness of TennCare's

---

[1] Plaintiffs place particular emphasis on notices of determination based on income-related terminations, but even those only could impact at most the 13,246 who were terminated during the class period for being over income. Hagan Decl. ¶ 56.

appeals processing are similarly too rare to support the class-wide relief they seek: since December 1, 2020 only 28 termination appeals experienced delays causing them to go beyond the 90 day deadline and all of those appellants had continuation of benefits removing any possible harm caused by the delay. *Id.* ¶ 71.

TennCare does not pretend that its processes or its determinations are infallible. But there is no overarching policy to which all Plaintiffs' alleged injuries may be traced. At bottom, Plaintiffs are a group of individuals only some of whom lost coverage for a series of idiosyncratic reasons, from technical errors in TEDS programming that have since been corrected, or due to simple human error. They attempt to relate these mistakes back to broader policies with which they disagree—the valid factual dispute requirement, or the content of TennCare's income-based determination notices, for example. But in so doing, they untether their claims not just from their proposed class, which is far too large and diverse to have been uniformly impacted by any of these policies, but from the cases of the other named Plaintiffs themselves.

## ARGUMENT

To warrant certification, Plaintiffs must "satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b)." *Young*, 693 F.3d at 537. Plaintiffs bear the burden of proving that class certification is proper. *Id*. They have not proposed a tenable class definition, they have not established commonality, typicality, and adequacy, nor have they met the requirements of Rule 23(b)(2).

## I. THE CLASS DEFINITION IS UNWORKABLE.

As a general rule, "[b]efore a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at

7

537–38 (quotation marks omitted); *see also* FED. R. CIV. P. 23(c)(1)(B); *Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009). A class may not be defined by reference to "terms that depend on a merits adjudication," *Schilling v. Kenton Cnty. Ky.*, 2011 WL 293759, at \*6 (E.D. Ky. Jan. 27, 2011); *see also Bostick v. St. Jude Med., Inc.*, 2004 WL 3313614, at \*16 (W.D. Tenn. 2004), or by reference to whether an individual is ultimately determined to be legally entitled to relief, *Young*, 693 F.3d at 538; *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011), or in a way that requires the court to engage in "extensive individualized fact-finding," *Lumpkin v. Farmers Grp., Inc.*, 2009 WL 10698662, at \*4 (W.D. Tenn. Mar. 24, 2009).

Both the proposed class, which would include "[a]ll individuals who meet the eligibility criteria for TennCare coverage," and the proposed subclass of "Plaintiff Class Members who are 'qualified individuals with a disability' as defined in 42 U.S.C. § 12131(2)," Class Cert. Br. at 12, make membership turn on whether an individual meets the eligibility criteria for TennCare. Accordingly, the Court must resolve whether an individual is, in fact, "eligible" in order to determine whether that individual is a class or subclass member. The Sixth Circuit has held such a class definition runs afoul of "the requirement that a class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Young*, 693 F.3d at 538 (*citing Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 580 (1st Cir 1986); *see also Dozier v. Haveman*, 2014 WL 5483008, \*15 (E.D. Mich. Oct. 29, 2014) (rejecting proposed Rule 23(b)(2) class defined to include individuals "who are eligible for Medicaid under other eligibility categories" because "whether an individual is eligible for a

particular Medicaid category turns on the category's criteria and the individual's personal circumstances").[2]

Plaintiffs attempt to sidestep the need for individual determinations of Medicaid eligibility by arguing that their proposed class is *de facto* "made up of all individuals who have lost (or will lose) TennCare coverage since March 19, 2019," Class Cert. Br. at 12, because every individual is eligible for TennCare until that individual has been determined to be ineligible after "all bases of eligibility" have been considered. But this theory would require the Court to determine, for purposes of class certification whether the class has already prevailed on the merits of its claim that TennCare failed—indeed, failed without a single exception—to consider all bases of eligibility before concluding that each of these 108,175 individuals were ineligible. "An inquiry into the merits of the case should not be required of the court in its determination of whether a person is a member of [the] class." *Bostic*, 2004 WL 3313614, at *16; *Romberio*, 385 F. App'x at 431 ("the need for such individualized fact-finding makes the . . . class definition unsatisfactory"); *Eversole v. EMC Mortg. Corp*., 2007 WL 1558512, at *5 (E.D. Ky. May 29, 2007) (denying certification where "[o]nly after completing individual decisions on the merits could any class be identified."). It is no remedy that Plaintiffs' proposed class definition would require the Court not merely to make "a merits-based inquiry of each individual's claim," but to resolve the merits of the claims asserted by the proposed class itself.

---

[2] The Sixth Circuit cited a class "definition requiring legal determinations of whether each class member was disabled under the Americans with Disabilities Act" as a paradigmatic example of such an administratively unworkable class. *Young*, 693 F.3d at 538. This is, of course, one of the very criteria that Plaintiffs use to define their proposed subclass here. *See* Class Cert. Br. at 12 (defining subclass as "Plaintiff Class Members who are 'qualified individuals with a disability' as defined in 42 U.S.C. § 12131(2)").

The Sixth Circuit rejected a similar ploy in *Romberio*. There, the plaintiffs sought, on behalf of a putative Rule 23(b)(2) class comprising those who had been denied a full and fair review of their eligibility, an injunction requiring defendant "to provide a full and fair review . . . of all claims for benefits under the plan that have been denied." *Id*. at 433 (alteration in original). The Sixth Circuit held that where the defendant must "provide the very relief requested (i.e., re-review) in order to determine whether any individual was, in the first instance, a class member, and, in the second instance, entitled to relief for an improper denial or termination of benefits[,] [c]lass certification . . . was an abuse of discretion." *Id*. (emphasis in original).

Indeed, by making the class definition depend on whether TennCare systematically failed to comply with the Medicaid statute, the proposed class definition would also create a prohibited fail-safe class. "A fail-safe class is inherently deficient in that it 'precludes membership unless the liability of the defendant is established.' " *Schilling*, 2011 WL 293759, at *6 (*quoting Kamar v. RadioShack Corp.*, 375 F. App'x 734, 735 (9th Cir. 2010)). That is what Plaintiffs' proposed class would do. If TennCare is determined to have acted unlawfully, then the 108,175 individuals who Plaintiffs say have been terminated since March 19, 2019, and have not re-enrolled in TennCare, would be confirmed as members of the class and would benefit from the judgment. But if TennCare is found not to have acted unlawfully, then none of those 108,175 individuals would be a member of the class bound by that judgment; each would then be free to file an individual claim asserting that TennCare failed to make a lawful eligibility redetermination in his or her case. "Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). Such a class is "palpably unfair," and is not permitted under any provision of Rule 23. *Schilling*, 2011 WL 293759, at *6.

These defects in the proposed class definition, standing alone, require denial of Plaintiffs' motion. *Cole v. ASARCO Inc.*, 256 F.R.D. 690, 696–97 (N.D. Okla. 2009) ("Absent a cognizable class, determining whether plaintiffs or the putative class satisfy the other Rule 23(a) and (b) requirements is unnecessary."). But when a class definition fails to meet the threshold requirements of Rule 23, it often follows that the requirements of commonality, typicality, and adequacy also cannot be satisfied, and that the class is not cohesive under Rule 23(b)(2). And, as we will see below, that is precisely what occurs here.

## II. PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN OF PROVING EACH OF THE DEMANDING PREREQUISITES OF FED. R. CIV. P. 23(a).

### A. Plaintiffs Have Not Established Commonality.

Plaintiffs bear the burden of proving that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' " *Wal-Mart*, 564 U.S. at 350 (citation omitted). This "does not mean merely that [class members] have all suffered a violation of the same provision of law." *Id*. Instead, "commonality requires a showing that the particular injury suffered by each member of the putative class was caused by a policy or practice common to all of them." *Singletery v. Equifax Info. Servs., LLC*, 2011 WL 9133115, at *19 (N.D. Ala. Sept. 22, 2011).

Plaintiffs' complaint alleges a collection of varied, random, and often contradictory injuries that are not—and, indeed, could not be—the result of systemic policies, but must, by virtue of their random and contradictory nature, reflect random and isolated mistakes. Indeed, the specific claims and injuries that the individual named Plaintiffs allege are not common even among themselves. These mistakes are no less regrettable by virtue of being random. But the question for certification is whether each plaintiff's claim is common to the class. Here, they are not.

Nor have Plaintiffs established that these uncommon claims and injuries are traceable to systemic failings or common "policies and practices that unlawfully deprive eligible children and adults of vitally necessary medical care under the Medicaid program …." Compl., ¶ 1. If there ever were such policies or practices—and there most certainly were not—there is no evidence that they were ever applied to the proposed class. Indeed, no common policy or practice *could* explain the varied experiences of plaintiffs who did not receive their information packets at the start of the process, of those whose timely-filed appeals were not heard at the end of the process, and of those who experienced one or another of the errors that flowed from human fallibility in the midst of that process. As one court has explained, commonality is lacking where, as here, plaintiffs allege having experienced different difficulties during different segments of a single bureaucratic process:

> Some consumers went online and requested their disclosures through a website, while others wrote letters to Equifax and Central Source, and yet others made a telephone request. Some of those who used the internet experienced computer problems ranging from being "timed out" to printer conflicts to lost connection with the server. Telephone and letter requesters misdirected their calls and correspondence, or failed to provide sufficient identification information. The only common issue among these class members is the fact that they did not receive the requested disclosure on some occasions. They made requests in different ways and experienced different difficulties, which may or may not have been the product of any recklessness on the part of Equifax.

*Singletary*, 2011 WL 9133115, at *19. While each of the named Plaintiffs may identify an error that occurred in their case, they have not asserted the sort of common claims arising from a common policy or practice that are required under Rule 23(a)(2).

In their motion for class certification, Plaintiffs attempt to establish commonality on a narrower basis than in their Complaint, asserting that members of the proposed class received inadequate notices "based on a template." Class Cert. Br. at 14–15. This argument for commonality fails for multiple reasons. First, Plaintiffs have not established that every Plaintiff, much less every

member of the proposed class, received one of the allegedly inadequate notices they challenge. Second, Plaintiffs only challenge certain forms of TennCare's "template" notices, which again were not received by all Plaintiffs, much less all members of the proposed class. This is apparent when one examines the notices that were actually received by some of the named Plaintiffs and Declarants. For example, where Plaintiff Caudill's notice allegedly did not specify whether she had been disenrolled on account of her income level, *see id*. at 4, the notice received by Declarant Sullivan does specify that she was denied because her income was over the $2,320 limit for TennCare Medicaid, Doc. 150-1, at 5; the notice received by Plaintiff M.R.R. showed that her monthly income was over the $258 limit for TennCare Spend Down coverage, Doc. 148-6, at 7; and the notice received by Declarant Pelletier notified her that she was denied because her monthly income was over the limit of $783. Doc. 146-10, at 6. The very evidence that named Plaintiffs have offered in support of their pending motions establishes that their claims are not common.

Plaintiffs' argument confuses a class whose members have received the same form letter notice and a class whose members have received individualized notices generated using a template. In *Dozier*—the case upon which Plaintiffs rely—the class members had each received the same letter on the same day announcing the termination of their coverage for the same reason, and plaintiffs claimed that the notice provided by this single form letter was legally inadequate. 2014 WL 5483008, at *22. Commonality was established in *Dozier* because, unlike here, the resolution of the claim that this single form letter provided inadequate notice would "resolve an issue that is central to the validity of [the class members'] claims in one stroke." *Id*. (*quoting Wal-Mart*, 564 U.S. at 350).[3] Where every class member has received the same exact letter, every class member

---

[3] *Dozier* illustrates the importance of properly defining the class for purposes of commonality and typicality. Plaintiffs in *Dozier* had first sought to certify a Rule 23(b)(2) class that would have included eligible individuals who had been terminated without being provided

has been exposed to the alleged defects in that letter—though every class member has not necessarily suffered the same injury as a result those defects.

But this is not a case in which the putative class members have received an identical form letter with the same boilerplate language announcing that their coverage has been terminated. There are numerous potential variations of the notice of decision that could issue. Hagan Decl. ¶ 51. For example, Plaintiff Caudill's claim that the notices sent out by TennCare are uniformly inadequate because they do not include income threshold information is actually refuted by the evidence presented by Plaintiff M.R.R. and Declarants Sullivan and Pelletier. The resolution of Plaintiff Caudill's claim, moreover, does nothing to resolve the issues raised concerning the notices that Plaintiffs Barnes and SFA have raised. These alleged problems regarding the individual notices of decision are diverse and are not rendered common because a common template was used to generate those notices. To establish commonality, the alleged injuries must actually be traceable to a common practice or policy.

**B.     Plaintiffs Have Not Established Typicality.**

Plaintiffs' proposed class also cannot be certified because none of the named Plaintiffs assert claims that are "typical of the claims . . . of the class." FED. R. CIV. P. 23(a)(3). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc). Typicality is closely related to commonality, but where commonality refers to a characteristic of

---

adequate notice and an opportunity for a hearing. Because this definition turned on an "individualized determination of Medicaid eligibility" and "on a legal or merits determination," the Court redefined the class to include those individuals who had been sent the same challenged notice. 2014 WL 5483008, at *15–*16. Because each class member had received the exact same letter, by pursuing their own claims, "Plaintiffs necessarily 'advance[d] the interests of the class members,' each of whom, by definition, received a comparable June 7 Notice." *Id.* at *22. (quoting *Young,* 693 F.3d at 542 (alteration in original)).

the class as a whole, typicality refers to the characteristics of each of the named plaintiffs in relation to the class. *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1275 (11th Cir. 2009). It thus ensures that "a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Sprague*, 133 F.3d at 399).

The lack of typicality here flows naturally from the absence of any common core of factual allegations or common claims. The claims that each individual Plaintiff asserts in the Complaint do not stand or fall together even with those of the other named Plaintiffs, much less with the claims of the proposed class as a whole. For example, evidence establishing that TennCare did not mail redetermination packets to some Plaintiffs would not tend to prove the claim of the other Plaintiffs that TennCare required them, in violation of 42 C.F.R. § 435.916(a)(2), to provide information that it could have obtained from another available source. Conversely, were it proven that TennCare had mailed those redetermination packets, that would not tend to prove that the content of TennCare's notices meets regulatory standards. And with respect to some claims, the allegations of some Plaintiffs actually tend to disprove the claims of others; while 10 named Plaintiffs challenge a systemic practice of not mailing redetermination materials, the fact that others admit receiving those packets, *see e.g.,* Complaint at ¶ 138, establishes that the alleged "practice" of not mailing them is not systemic at all, but isolated and random. While a class divided against itself to this degree cannot be litigated for lack of commonality, it cannot be represented for want of typicality.

Establishing typicality is further complicated by the defective and overbroad class definition—a *de facto* redefinition—Plaintiffs are now defending, a class that includes every individual enrolled in TennCare at any time since March 2019. This proposed class encompasses

individuals who do not meet the substantive eligibility criteria for TennCare, and as a result, the "class definition creates an insurmountable problem as to typicality." *In re Refrigerant Compressors Antitrust Litig.*, 2011 WL 2623317, at *2, n.1 (E.D. Mich. June 13, 2011) (citing *Romberio*, 385 Fed. Appx. at 431). "Where," as here, "a class definition encompasses many individuals who have no claim at all to the relief requested," the "typicality premise is lacking, for—under those circumstances—it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members." *Romberio*, 385 F. App'x at 431. Given that the injunctive relief plaintiffs seek can lawfully be provided only to those who are eligible for TennCare, the fact that the class definition includes both the eligible and the ineligible thus defeats typicality. *In re Refrigerant Compressors Antitrust Litig.*, 2011 WL 2623317, at *2 (typicality not met where, as "currently defined, … class includes persons or entities who do not have standing to assert a federal antitrust claim"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 576 (E.D. Tenn. 2014).

Under the theory Plaintiffs now advance in their brief, everyone who was terminated by TennCare is a member of the class, regardless of the merits of their underlying claim for eligibility, simply because TennCare allegedly did not consider all bases of eligibility before finding them ineligible. To cite a few examples, this proposed class would include individuals who were found ineligible because they failed to participate in the redetermination process and return requested information, making it impossible for TennCare to make a substantive eligibility determination, individuals denied continued eligibility because TennCare could not verify they were U.S. citizens or eligible immigrants (making them ineligible for any category of TennCare), individuals who lost their Medicare Savings Program coverage because they no longer receive Medicare, and individuals denied because they have other health insurance. Further, those individuals who were

found ineligible on the merits will have a very different set of incentives than those who were eligible on the merits when it comes to fixing any of the alleged procedural defects in the system. Indeed, the interests of these groups will be in conflict, which defeats both adequacy of representation and typicality.

Plaintiffs have also not proven typicality because they lack standing—indeed, it is undisputed that the named Plaintiffs will not benefit *at all* from the relief sought in the preliminary injunction motion. "Typicality also encompasses the question of the named plaintiff's standing, for without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). For the reasons set forth in Defendant's motion to dismiss, Plaintiffs' proposed class action thus cannot be certified because the class representatives have failed to allege the individual, concrete, and particularized injury that is essential to establishing one's standing to bring suit and seek injunctive relief under Article III of the Constitution.

### C. Plaintiffs Have Not Proven That They Will Be Adequate Representatives of The Class.

Finally, Rule 23(a)(4) provides that a class may be certified only if "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This "requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). Adequate representation "is essential to due process, because a final judgment in a class action is binding on all class members." *Id*.

In light of their failure to satisfy the requirements of commonality and typicality, Plaintiffs necessarily cannot establish that they will be adequate class representatives. Plaintiffs who allegedly failed to receive a redetermination packet cannot adequately represent the interests of an

individual who received and returned his redetermination packet. Plaintiffs who allegedly did not have an opportunity to provide TennCare with additional information cannot adequately represent individuals who did have such an opportunity. Plaintiffs who filed an appeal and received a timely resolution cannot adequately represent individuals who did not appeal. Plaintiffs who were allegedly disenrolled from TennCare in error then reinstated cannot adequately represent individuals who were properly determined to be ineligible for TennCare. In sum, for every alleged experience Plaintiffs had, there are legions of absent putative class members who had a mirror opposite experience, and these current and former TennCare enrollees with different facts, circumstances, and interests do not have a "concrete private interest in the outcome of a suit" challenging TennCare's allegedly systemic failure to mail redetermination packets, or to consider additional information submitted in response to a request, that is sufficient to meet even the threshold standing requirements of Article III, much less the adequacy of representation requirements imposed by Rule 23(a)(4) and by the requirements of Due Process. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 573 (1992).

Once again, the untenable class definition proposed by Plaintiffs raises a significant obstacle to establishing adequacy. Those members of the class who meet the categorical eligibility criteria will have different motivations, interests, and incentives in this litigation than do those class "members" who do not. The problem is particularly acute where, as here, all of the named Plaintiffs fall within the former category, but tens of thousands, if not all of the disenrolled putative class members fall in the latter. Hagan Decl. ¶¶ 82(b)–(c). The interests of these absent class members who do not satisfy the categorical eligibility criteria for TennCare are simply not adequately represented by those members of the class who do.

The lack of adequate representation becomes all the more pronounced given that, at the time this action was filed, 32 of 34 of the named plaintiffs lacked standing to assert their own claims, *see* Doc. 139-1at 4–12, and the claims of the remaining two became moot shortly thereafter. "Individual standing requirements must be met by anyone attempting to represent his own interest or those of a class. If the named plaintiff seeking to represent a class fails to establish the requisite case or controversy, he may not seek relief on his behalf or on that of the class." *Lynch v. Baxley*, 744 F.2d 1452, 1456 (11th Cir. 1984). There is no question that all 34 plaintiffs lack standing to seek an injunction requiring reinstatement of 108,175 disenrolled beneficiaries because they are all already enrolled. Yet that is the only relief sought in the preliminary injunction motion. Because the named Plaintiffs cannot benefit from the relief sought, they cannot adequately represent the interests of absent class members who would benefit from that relief.

## III.   PLAINTIFFS' PROPOSED CLASS DOES NOT SATISFY RULE 23(b)(2)'S REQUIREMENTS.

Plaintiffs have also failed to "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Here, Plaintiffs have invoked Rule 23(b)(2), so they must prove that Defendant "acted or refused to act on grounds that apply generally to the class, so that . . . injunctive . . . or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). The injunctive relief sought on behalf of a Rule 23(b)(2) class must be neither individualized nor divisible, but classwide and indivisible, *Wal-Mart*, 564 U.S. at 360–63, and the Rule 23(b)(2) class must also be homogenous and cohesive, *Romberio,* 385 F. App'x at 433. Plaintiffs' class cannot be certified under Rule 23(b)(2) because Plaintiffs have not established that Defendant acted on grounds that apply generally to the class; they do not seek indivisible injunctive relief; they seek relief that it would be administratively infeasible to provide; and they have defined a class that lacks cohesion.

19

**A. Plaintiffs Have Not Demonstrated That Defendant Acted Or Refused To Act On Grounds That Apply Generally To The Class.**

Plaintiffs argue that their proposed class satisfies Rule 23(b)(2) because TennCare's systemic failings "are common and consistent across the entire Plaintiff Class and Disability Subclass" and because the systemic nature of the violations "will require broad based relief." Doc. 140-1 at 24. The evidence says otherwise. As is clear from the discussion of commonality, *see supra* at 11–14, the alleged violations are neither common nor consistent, even as to the named Plaintiffs themselves. The aggregate data confirm, moreover, that the errors plaintiffs experienced were random and isolated. Since March 19, 2019, TennCare has conducted over 2,000,000 eligibility reverifications that resulted in members keeping their coverage. Hagan Decl. ¶ 16. Indeed, Plaintiffs have not identified anyone who was erroneously terminated and is not currently on the program. Only one conclusion can be drawn: there is no systemic violation of TennCare members' rights that would support Plaintiffs' contention that they challenge practices "that apply generally to the class." The errors Plaintiffs have identified are the exceptions, not the rule.

**B. Certification of a Rule 23(b)(2) Class Is Improper Because Plaintiffs Are Seeking Individualized and Divisible Injunctive Relief.**

Plaintiffs' motion for certification must also be denied because they do not seek "a single, indivisible remedy ...." *Wal-Mart*, 564 U.S. at 341. Plaintiffs have, in conjunction with this motion, moved for a preliminary injunction to "requir[e] Defendant to prospectively reinstate TennCare coverage for members of the proposed Plaintiff Class," Doc. 141 at 1, and ultimately seek a permanent injunction requiring Defendant "to prospectively reinstate TennCare coverage of the Plaintiff Class members . . . ." Compl., Request for Relief E(2). Relief that can be provided to some, but not to others, is, by definition, divisible relief. Insurance coverage can be reinstated as to some, but not others. The reinstatement Plaintiffs seek is thus divisible relief.

The Supreme Court has held that such divisible relief is not available to a class certified under Rule 23(b)(2). As the Court held in *Wal-Mart*, Rule 23(b)(2) requires that the class seek "an indivisible injunction benefiting all its members at once." 564 U.S. at 362. Indeed, "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.' " *Id*. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 98, 132 (2009)).

The Court in *Wal-Mart* made clear that reinstatement is one form of divisible injunctive relief that cannot be sought on behalf of a Rule 23(b)(2) class. Even if plaintiffs could demonstrate that a systemic violation caused the loss of the benefit, the Court explained, a defendant could still interpose an individual's ineligibility for that individualized relief as a defense. "When the plaintiff seeks individual relief such as reinstatement or backpay after establishing a pattern or practice of discrimination, 'a district court must usually conduct additional proceedings . . . to determine the scope of individual relief.' "*Id*. at 366 (quoting *Teamsters v. United States*, 431 U.S. 324, 361 (1977)). Rule 23 does not permit class certification to deprive a defendant of the right interpose individualized defenses to a claim for divisible relief:

> Because the Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right," a class cannot be certified on the premise that Wal–Mart will not be entitled to litigate its statutory defenses to individual claims. And because the necessity of that litigation will prevent backpay from being "incidental" to the classwide injunction, respondents' class could not be certified even assuming, arguendo, that "incidental" monetary relief can be awarded to a 23(b)(2) class.

*Id.* at 367 (citations and emphasis omitted). TennCare likewise may not be deprived of its right to litigate its defense that each individual member of the putative class is not eligible for TennCare coverage.

**C.    It Is Not Administratively Feasible for the Court to Adjudicate the Eligibility Status of Each Putative Class Member.**

Plaintiffs note that, in contrast to a class seeking divisible relief under Rule 23(b)(3), "classes seeking injunctive relief under Rule 23(b)(2) do not need to demonstrate that the proposed class is 'administratively feasible' or 'ascertainable.' " Class Cert. Br. at 11 (quoting *Cole v. City of Memphis*, 839 F.3d 530, 541–42 (6th Cir. 2016)). But ascertainability and administrative feasibility are not prerequisites to certification under Rule 23(b)(2) for a specific reason: "the precise identity of each class member need not be ascertained" because a "single remedy … provides the sole remedy necessary to protect the affected class." *Cole*, 839 F.3d at 542. In other words, where the injunctive relief sought is indivisible, a court need not identify the individual class members in order to administer that injunction because that single indivisible injunction will necessarily provide relief to all of the class members. *Wal-Mart*, 564 U.S. at 360. A court need not identify each member of a class challenging the racial segregation of a school district, for example, in order to order that district to abandon its policy of segregation. *See, e.g., Freeman v. Delta Airlines, Inc.*, 2019 WL 2495471, at *18 (E.D. Ky. June 14, 2019) ("The *Dukes* Court noted that 'challenges to racial segregation'—something that 'was remedied by a single classwide order'— is 'what (b)(2) is meant to capture.' ") (quoting 564 U.S. at 361). Plaintiffs are thus correct that feasibility and ascertainability are not required where a *properly defined* class is seeking the sort of *indivisible injunctive relief* that is authorized under Rule 23(b)(2).

Ascertainability and feasibility do matter here, however, because Plaintiffs are seeking the sort of divisible injunctive relief that is not authorized under Rule 23(b)(2). *Wal-Mart* makes clear that Rule 23 does not relieve individual class members who claim an entitlement to individualized relief of their obligation to establish their eligibility for that relief. 564 U.S. at 366–67. Because Plaintiffs seek divisible injunctive relief restoring TennCare coverage for those who are eligible

22

for TennCare coverage, the Court must resolve whether each putative individual class member is, in fact, "eligible" for TennCare in order to determine whether that individual is actually a member of the class or subclass and, thus, entitled to their portion of that divisible relief.[4]

This would be no easy task. The Medicaid statute is "among the most intricate ever drafted by Congress. Its Byzantine construction, as Judge Friendly has observed, makes the Act 'almost unintelligible to the uninitiated.' " *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981) (quoting *Friedman v. Berger*, 547 F.2d 724, 727 n.7 (2nd Cir. 1976)). Even after passage of the Affordable Care Act, "Medicaid eligibility remains a highly complex determination with numerous rules and requirements. There are still many different eligibility categories, and each involves different eligibility criteria that in turn give rise to different potential obstacles to eligibility." Hagan Decl. ¶ 11.

The facts that determine each individual's eligibility are often as complicated as the law. Indeed, even a court having full knowledge of the facts of each individual's case would be hard-pressed to determine whether certain individuals fall into one or more of the numerous eligibility categories established by the applicable statutes and regulations. At the very least, it would be necessary for the Court to examine the TennCare file of each of the over 108,175 individuals who

---

[4] Where a plaintiff seeks to enjoin a "systemic" violation on behalf of a class and also seeks divisible injunctive relief in the form of reinstatement, the proper course would be to certify both a Rule 23(b)(2) class and, assuming an administratively feasible class could be defined, a Rule 23(b)(3) class. *See, e.g., A.R. v. Conn. State Bd. of Educ.*, 2020 WL 2092650 (D. Conn. May 1, 2020) (certifying claims for injunctive relief that addressed systemic violations under Rule 23(b)(2), and claims for divisible injunctive relief—i.e., individualized remedial education—under Rule 23(b)(3)); *Easterling v. Conn. Dept. of Corr.*, 278 F.R.D. 41 (D. Conn. 2011) (certifying plaintiffs' claims for classwide declaratory and injunctive relief pursuant to Rule 23(b)(2) and their claims for individualized injunctive relief—i.e., reinstatement to their positions—pursuant to Rule 23(b)(3)). Here, a Rule 23(b)(3) class is not possible because it is not feasible for the Court to determine whether each of the 108,175 individuals for whom Plaintiffs seek reinstatement is in fact eligible for TennCare.

Plaintiffs say were terminated on or after March 19, 2019, and are not on the program today, in order to determine whether that person had, in fact, been eligible for TennCare at the time coverage was terminated. A class that requires the Court to make case-by-case eligibility determinations—determinations that are currently performed by a complex, CMS certified eligibility determination system and 716 full-time employees, *see* Hagan Decl. ¶ 3—is not merely administratively infeasible, but practically impossible.

### D. The Class Is Not Cohesive.

Finally, the proposed class lacks the cohesion and homogeneity that are required for certification under Rule 23(b)(2) class. *Romberio*, 385 F. App'x at 432–33; *Reeb v. Ohio Dep't of Rehabilitation and Corr.*, 435 F.3d 639, 649 (6th Cir. 2006). The requirement that the class be cohesive goes hand-in-hand with the requirement that the class relief be indivisible, for each member of a cohesive class will necessarily be affected in the same way by an indivisible injunction. *Romberio*, 385 F. App'x at 432–33; *Reeb*, 435 F.3d at 649.

As the discussions of commonality, *supra* at 11-14, and typicality, *supra* at 14-17, make clear, Plaintiffs seek to assert a disjointed assortment of unrelated and often conflicting claims tied to isolated errors on behalf of a class whose membership would comprise both those who are eligible and those who are ineligible for TennCare coverage. The class complaint is a study in incoherence and heterogeneity. And, as the Sixth Circuit has explained, "where individualized determinations are necessary, the homogeneity needed to protect the interests of absent class members is lacking," *Romberio*, 385 F. App'x at 442–43, and certification under Rule 23(b)(2) is improper. *Reeb*, 435 F.3d at 649 ("The more individualized determinations come into play, the more divergent the interests of the members of the class become."). Here, the need for

individualized eligibility determinations more than suffices to establish that the class lacks the requisite cohesion.

Regardless, whether the question is one of the divisibility of the relief sought, of administrative feasibility, ascertainability, homogeneity, or cohesiveness, and regardless whether the Court looks to *Wal-Mart*, to *Young*, to *Cole*, or to *Romberio*, the answer remains the same: the need for individualized eligibility determinations in order to provide divisible injunctive relief renders certification of Plaintiffs' proposed class and subclass categorically improper under Rule 23(b)(2).

## CONCLUSION

For the reasons stated herein, defendants respectfully request that this Court deny Plaintiffs' Motion for Class Certification.

January 4, 2022                           Respectfully submitted,

Herbert H. Slatery III
Attorney General and Reporter

Sue A. Sheldon TN BPR #15295          /s/ Michael W. Kirk
Senior Assistant Attorney General     Michael W. Kirk*
Meredith Bowen TN BPR #34044          Nicole J. Moss*
Assistant Attorney General            Harold S. Reeves*
OFFICE OF THE ATTORNEY GENERAL        William V. Bergstrom*
P.O. Box 20207
Nashville, TN  37202                  COOPER & KIRK, PLLC
(615) 741-1366                        1523 New Hampshire Avenue, NW
meredith.bowen@ag.tn.gov              Washington, D.C. 20036
                                      (202) 220-9600
                                      mkirk@cooperkirk.com
                                      nmoss@cooperkirk.com
                                      *Appearing *pro hac vice*

*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via

the Court's electronic filing system on this 4th day of January, 2022.

Gordon Bonnyman, Jr.
Michele M. Johnson
Catherine M. Kaiman
Laura E. Revolinski
Vanessa Zapata
TENNESSEE JUSTICE CENTER
211 7th Avenue N., Ste. 100
Nashville, TN 37219

Elizabeth Edwards
Sarah Grusin
Jane Perkins
NATIONAL HEALTH LAW PROGRAM
200 N. Greensboro St., Ste. D-13
Carrboro, NC 27510

Jennifer M. Selendy
Faith E. Gay
Andrew R. Dunlap
Babak Ghafarzade
Amy Nemetz
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY 10104

Gregory Lee Bass
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001

/s/ Michael W. Kirk
Michael W. Kirk