# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |
|---|---|
| A.M.C., by her next friend, C.D.C., et al., | |
| Plaintiffs, | Civil Action No. 3:20-cv-00240 |
| v. | Class Action |
| STEPHEN SMITH, in his official capacity as Deputy Commissioner of Finance and Administration and Director of the Division of TennCare, | Chief Judge Crenshaw<br>Magistrate Judge Newbern |
| Defendant. | |

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Date: July 31, 2023

Michele Johnson TN BPR 16756
Gordon Bonnyman, Jr. TN BPR 2419
Vanessa Zapata, TN BPR 37873
Brant Harrell, TN BPR 24470
Madeline Wiseman, TN BPR 39003
TENNESSEE JUSTICE CENTER
211 7th Avenue North, Suite 100
Nashville, Tennessee 37219
Phone: (615) 255-0331
Fax: (615) 255-0354
gbonnyman@tnjustice.org
vzapata@tnjustice.org
bharrell@tnjustice.org
mwiseman@tnjustice.org

Jane Perkins (*pro hac vice*)
Elizabeth Edwards (*pro hac vice*)
Sarah Grusin (*pro hac vice*)
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin St., Ste. 110
Chapel Hill, NC 27510
Phone: (919) 968-6308
perkins@healthlaw.org
edwards@healthlaw.org
grusin@healthlaw.org

Gregory Lee Bass (*pro hac vice*)
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
Phone: (212) 633-6967
bass@nclej.org

Faith Gay (*pro hac vice*)
Jennifer M. Selendy (*pro hac vice*)
Andrew R. Dunlap (*pro hac vice*)
Babak Ghafarzade (*pro hac vice*)
David Coon (*pro hac vice*)
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Phone: (212) 390-9000
fgay@selendygay.com
jselendy@selendygay.com
adunlap@selendygay.com
bghafarzade@selendygay.com
dcoon@selendygay.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

LEGAL STANDARD...............................................................................................1

ARGUMENT ..........................................................................................................2

I.  Summary judgment is not warranted on the due process or Medicaid Act claims. ...........2

    A.  The Medicaid regulations are relevant to Plaintiffs' claims. ...................................2

    B.  The State fails to consider all categories of eligibility............................................4

    C.  TennCare's notices are inadequate. ......................................................................6

        1.  Notices fail to adequately explain termination decisions. ...........................7

        2.  Notices fail to adequately explain how to seek redress. .............................9

        3.  Notices discourage appeals. .....................................................................11

        4.  The State's revisions to notices do not moot Plaintiffs' claims................13

    D.  TennCare systematically denies fair hearings.......................................................14

        1.  TennCare's valid factual dispute policy is unlawful................................16

        2.  TennCare arbitrarily denies hearings under its good cause policy. ..........20

        3.  TennCare does not take final action within 90 days of appeal. ................22

II.  Summary judgment is not warranted on the ADA claim.....................................................23

    A.  The State lacks a valid and reliable reasonable accommodation system...............23

    B.  The State does not provide adequate in-person assistance to people with disabilities. ........................................................................................................28

III.  The State may not relitigate the issue of CMS certification. ............................................29

CONCLUSION.......................................................................................................30

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ability Ctr. of Greater Toledo v. City of Sandusky*,
    385 F.3d 901 (6th Cir. 2004) ...................................................................3, 24, 25, 26

*Am. Council of the Blind v. Paulson*,
    525 F.3d 1256 (D.C. Cir. 2008) ....................................................................28

*Thompson ex rel. Bailey v. Fitzgerald*,
    558 F. Supp. 3d 1334 (N.D. Ga. 2021) ....................................................22

*Barrios Garcia v. U.S. Dep't of Homeland Sec.*,
    25 F.4th 430 (6th Cir. 2022) ....................................................................13

*Barry v. Lyon*,
    834 F.3d 706 (6th. Cir. 2016) ....................................................................3, 6, 9

*Benton v. Rhodes*,
    586 F.2d 1 (6th Cir. 1978) ....................................................................19

*Berry v. SAGE Dining Servs., Inc.*,
    2021 WL 3037483 (M.D. Tenn. July 19, 2021) ......................................5

*Bliek v. Palmer*,
    102 F.3d 1472 (8th Cir. 1997) ....................................................................10

*Brooklyn Ctr. for Independ. of Disabled v. Bloomberg*,
    980 F. Supp. 2d 588 (S.D.N.Y. 2013) ....................................................24

*Cahoo v. SAS Inst., Inc.*,
    71 F.4th 401 (6th Cir. 2023) ....................................................................9

*Caswell v. City of Detroit Hous. Comm'n*,
    418 F.3d 615 (6th Cir. 2005) ....................................................................4

*Codd v. Velger*,
    429 U.S. 624 (1977)....................................................................17

*Cole v. City of Memphis*,
    839 F.3d 530 (6th Cir. 2016) ....................................................................13

*Rodriguez ex rel. Corella v. Chen*,
    985 F. Supp. 1189 (D. Ariz. 1996) ....................................................8

ii

*Covington v. Dep't of Health & Hum. Servs.*,
    750 F.2d 937 (Fed. Cir. 1984) ............................................................................10

*Crabtree v. Goetz*,
    2008 WL 5330506 (M.D. Tenn. Dec. 19, 2008) ....................................................30

*Crawley v. Ahmed*,
    2009 WL 1384147 (E.D. Mich. May 14, 2009) ....................................4, 7, 17, 20

*Davis v. Shah*,
    821 F.3d 231 (2d Cir. 2016) ...............................................................................19

*Day v. Shalala*,
    23 F.3d 1052 (6th Cir. 1994) ..............................................................................12

*Delphi Auto. Sys., LLC v. United Plastics, Inc.*,
    418 F. App'x 374 (6th Cir. 2011) .........................................................................2

*Disabled in Action v. Bd. of Elections in City of N.Y.*,
    752 F.3d 189 (2d. Cir. 2014) ........................................................................24, 25

*Dozier v. Haveman*,
    2014 WL 5480815 (E.D. Mich. Oct. 29, 2014) ................................................8, 12

*Elder v. Gillespie*,
    54 F.4th 1055 (8th Cir. 2022) ...............................................................................9

*Faber v. Ciox Health, LLC*,
    944 F.3d 593 (6th Cir. 2019) ..............................................................................10

*Fishman by Fishman v. Daines*,
    2016 WL 11496013 (E.D.N.Y. Mar. 10, 2016) .....................................................3

*Flaim v. Med. Coll. of Ohio*,
    418 F.3d 629 (6th Cir. 2005) ..............................................................................17

*Gean v. Hattaway*,
    330 F.3d 758 (6th Cir. 2003) ................................................................................3

*Goldberg v. Kelly*,
    397 U.S. 254 (1970) .................................................................................. *passim*

*Gonzalez v. Sullivan*,
    914 F.2d 1197 (9th Cir. 1990) .............................................................................12

*Grier v. Goetz*,
    402 F. Supp. 2d 876 (M.D. Tenn. 2005) ....................................................16, 17, 19

iii

*Grooms v. Maram*,
　563 F. Supp. 2d 840 (N.D. Ill. 2008) ..................................................................30

*Guadagna v. Zucker*,
　CV 17-3397, 2021 WL 11645538 (E.D.N.Y. Mar. 19, 2021) ...................................4

*Hamby v. Neel*,
　368 F.3d 549 (6th Cir. 2004) ...................................................................6, 7, 9, 12

*Harris v. Klare*,
　902 F.3d 630 (6th Cir. 2018) ......................................................................1, 29, 30

*Harris v. Olszewski*,
　442 F.3d 456 (6th Cir. 2006) ........................................................................3, 4, 30

*Hazard v. Shalala*,
　44 F.3d 399 (6th Cir. 1995) ................................................................................14

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
　143 S. Ct. 1444 (2023) .........................................................................................3

*Henrietta D. v. Bloomberg*,
　331 F.3d 261 (2d Cir. 2003) .................................................................24, 25, 26

*Hicks v. Colvin*,
　214 F. Supp. 3d 627 (E.D. Ky. 2016) ..................................................................30

*Hicks v. Comm'r of Soc. Sec.*,
　909 F.3d 786 (6th Cir. 2018) ...............................................................................18

*Hindel v. Husted*,
　875 F.3d 344 (6th Cir. 2017) .........................................................................24, 28

*Hinojosa v. Livingston*,
　994 F. Supp. 2d 840 (S.D. Tex. 2014) ................................................................26

*Hughes v. McCarthy*,
　734 F.3d 473 (6th Cir. 2013) .................................................................................6

*Hurley v. Toia*,
　432 F. Supp. 1170 (S.D.N.Y. 1977) .....................................................................21

*Kiman v. N.H. Dep't of Corr.*,
　451 F.3d 274 (1st Cir. 2006) ...............................................................................26

*Kimble v. Solomon*,
　599 F.2d 599 (4th Cir. 1979) ...............................................................................21

iv

*Knapp v. Armstrong*,
2012 WL 640890 (D. Idaho Feb. 26, 2012) ................................................. 19

*Laster v. City of Kalamazoo*,
746 F.3d 714 (6th Cir. 2014) ................................................................... 2, 5

*Lisnitzer v. Zucker*,
983 F.3d 578 (2d Cir. 2020) ....................................................................... 22

*Logan v. Zimmerman Brush*,
455 U.S. 422 (1982) ................................................................................... 15

*Marble v. Tennessee*,
767 Fed. App'x. 647 (6th Cir. 2019) ......................................................... 26

*Markva v. Haveman*,
168 F. Supp. 2d 695 (E.D. Mich. 2001),
*aff'd*, 317 F.3d 547 (6th Cir. 2003) .......................................................... 14

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ....................................................................... 8, 17, 18

*Mayhew v. Cohen*,
604 F. Supp. 850 (E.D. Pa. 1984) ............................................................. 12

*Memphis Light, Gas & Water Div. v. Craft*,
436 U.S. 1 (1978) .......................................................................... *passim*

*Mullane v. Cent. Hanover Bank & Tr.*,
339 U.S. 306 (1950) ......................................................................... 4, 6, 10

*Nat'l Fed'n of the Blind, Inc. v. Lamone*,
438 F. Supp. 3d 510 (D. Md. 2020) ........................................................... 27

*New Mexico Cattle Growers' Ass'n v. U.S. Forest Serv.*,
2023 WL 2185698 (D.N.M. Feb. 22, 2023) ............................................... 30

*Paulone v. City of Frederick*,
787 F. Supp. 2d 360 (D. Md. 2011) ........................................................... 27

*People First of Ala. V. Merrill*,
491 F. Supp. 3d 1076 (N.D. Ala. 2020) ..................................................... 27

*Pickett v. Tex. Tech. Univ. Health Scis. Ctr.*,
37 F.4th 1013 (5th Cir. 2022) ................................................................... 27

*Pierce v. District of Columbia*,
128 F. Supp. 3d 250 (D.D.C. 2015) ........................................................... 25

v

*Price v. Medicaid Dir.*,
838 F.3d 739 (6th Cir. 2016) ...................................................................14

*R.K. v. Lee*,
563 F. Supp. 3d 774 (M.D. Tenn. 2021).................................................24

*Radaszewski v. Maram*,
383 F.3d 599 (7th Cir. 2004) ...................................................................30

*Randolph v. Rogers*,
170 F.3d 850 (8th Cir. 1999) ...................................................................26

*Reeb v. Ohio Dep't of Rehab. & Corr.*,
435 F.3d 639 (6th Cir. 2006) ...................................................................13

*Rikos v. Proctor & Gamble Co.*,
799 F.3d 497 (6th Cir. 2015) ...................................................................12

*Robertson v. Las Animas Cnty. Sheriff's Dep't*,
500 F.3d 1185 (10th Cir. 2007) ...............................................................26

*Roddy v. Tenn. Dep't of Corr.*,
2023 WL 180052 (M.D. Tenn. Jan. 13, 2023).....................................13, 29

*Rodgers v. Banks*,
344 F.3d 587 (6th Cir. 2003) .....................................................................1

*Rolen v. Barnhart*,
273 F.3d 1189 (9th Cir. 2001) .................................................................10

*Rosen v. Goetz*,
410 F.3d 919 (6th Cir. 2005) ...............................................16, 19, 29, 30

*Shakhnes v. Berlin*,
689 F.3d 244 (2d Cir. 2012).................................................................3, 22

*Singh v. Garland*,
2022 WL 4283249 (6th Cir. Sept. 16, 2022) ........................................21

*Sullivan v. Benningfield*,
920 F.3d 401 (6th Cir. 2019) ...................................................................13

*K.B. ex rel. T.B. v. Mich. Dep't of Health & Hum. Servs.*,
367 F. Supp. 3d 647 (E.D. Mich. 2019)...................................................4

*Tennessee v. Lane*,
541 U.S. 509 (2004)...................................................................................24

vi

*Transco Sec., Inc. of Ohio v. Freeman*,
　639 F.2d 318 (6th Cir. 1981) ..................................................................8

*Washington v. DeBeaugrine*,
　658 F. Supp. 2d 1332 (N.D. Fla. 2009)..................................................18

*Waskul v. Washtenaw Cnty.*,
　979 F.3d 426 (6th Cir. 2020) ..............................................................2, 3

*Westside Mothers v. Olszewski*,
　454 F.3d 532 (6th Cir. 2006) ....................................................................3

*Withrow v. Concannon*,
　942 F.2d 1385 (9th Cir. 1991) ................................................................22

*Wolff v. McDonnell*,
　418 U.S. 539 (1974)................................................................................14

*Yee-Litt v. Richardson*,
　353 F. Supp. 996 (N.D. Cal.),
　*aff'd sub nom. Carlson v. Yee-Lit*, 412 U.S. 924 (1973)........................18

**Statutes, Regulations, and Rules**

42 U.S.C.
　§ 1396a(a)(3)......................................................................... *passim*
　§ 1396a(a)(43)(A) ..............................................................................3
　§ 1396n(c)(2) ......................................................................................3
　§ 12132...............................................................................................25

28 C.F.R.
　§ 35.130.........................................................................................24, 25
　§ 35.160...............................................................................................27

42 C.F.R.
　§ 431.205.........................................................................................4, 15
　§ 431.206.....................................................................................4, 6, 11
　§ 431.210 ......................................................................... *passim*
　§ 431.220.......................................................................................15, 19
　§ 431.221.......................................................................................12, 15
　§ 431.223.........................................................................................3, 19
　§ 431.231...........................................................................15, 20, 21, 22
　§ 431.244.........................................................................................3, 22
　§ 435.917.........................................................................................4, 6
　§ 435.919...............................................................................................4
　§ 441.56.................................................................................................3
　§ 441.301...............................................................................................3

Fed. R. Civ. P. 56 ................................................................................................1, 2, 17

Tenn. Comp. R. & Regs. § 1200-13-19 ...........................................................................20

viii

## INTRODUCTION

This case, commenced in March 2020, concerns the State's unlawful termination of TennCare benefits for thousands of Tennesseans in violation of the Due Process Clause, 42 U.S.C. § 1396a(a)(3), and the Americans with Disabilities Act ("ADA"). Plaintiffs represent a class of individuals who have been involuntarily disenrolled from TennCare since March 19, 2019, and a subclass of those disenrollees who are disabled. ECF 234 ("Cert. Order") at 40. The State seeks summary judgment on all three claims, while giving short shrift to several fact-intensive and hotly contested issues. Plaintiffs' Responses to Defendant's Statement of Undisputed Material Facts ("PRSUMF") and Statement of Additional Disputed Facts ("PADF") confirm that dozens of material facts, concerning all three claims, remain in dispute. For instance: whether TennCare has actually resolved the errors in its eligibility determination system ("TEDS"), which TennCare has "struggl[ed] with" for years, ECF 179 at 36:16-18; whether enrollees find notices so confusing, discouraging, and burdensome that it interferes with their ability to challenge their loss of coverage; how TennCare applies its "valid factual dispute" and "good cause" policies; whether it resolves appeals within 90 days; and whether TennCare provides equal access to coverage for enrollees with disabilities, including through in-person assistance and other accommodations. The Court need not—and cannot—resolve those issues now under Rule 56. The State's motion therefore must be denied, and the parties' myriad factual and legal disputes must proceed to trial.

## LEGAL STANDARD

"Summary judgment is appropriate only when 'no genuine dispute as to any material fact' exists and the moving party is entitled to judgment as a matter of law." *Harris v. Klare*, 902 F.3d 630, 634 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). The burden is on the movant. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The Court "must accept [the non-movant's] evidence as true and draw all reasonable inferences in his favor," and the Court "may not make credibility

determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

## ARGUMENT

The State fails to carry its burden to justify summary judgment on any claims or issues. Its misguided effort to preclude any consideration of Medicaid regulations runs contrary to the law in this Circuit, *e.g.*, *Waskul v. Washtenaw Cnty.*, 979 F.3d 426, 448, 454 (6th Cir. 2020), and its effort to relitigate the 2020 CMS certification is barred by the law of this case. Plaintiffs have adduced substantial evidence refuting each issue raised by the State. The record reveals that TennCare, in violation of federal law, fails to consider all categories of eligibility, issues notices that fail to explain termination decisions and how Medicaid enrollees can maintain their benefits, routinely fails to provide fair hearings to members wishing to challenge their terminations of coverage through its valid factual dispute and good cause policies, and fails to take final administrative action on appeals within 90 days. The record, including unrefuted expert testimony, also shows that TennCare, in violation of the ADA, lacks a valid and reliable system for granting reasonable accommodations to members with disabilities and fails to adequately provide in-person assistance. Summary judgment is unwarranted on any claim or issue, and the motion should be denied.[1]

**I.     Summary judgment is not warranted on the due process or Medicaid Act claims.**

**A.     The Medicaid regulations are relevant to Plaintiffs' claims.**

The Court should reject the State's argument that Plaintiffs' Medicaid Act claim must be narrowed to "whether TennCare fails to provide fair hearings at any time." Def.'s Mem. Supp. Mot. Summ. J. ("Br.") 5, ECF 309. *First*, the State ignores the constitutional claim, which supports

---

[1] Although Plaintiffs have not cross-moved for summary judgment, the Court can grant them summary judgment *sua sponte* on any issues raised by the State. *See Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 379–80 (6th Cir. 2011); Fed. R. Civ. P. 56(f)(1).

each of Plaintiffs' theories on the inadequacy of the state's notice and hearing procedures. *Second*, the State's assertion that 42 U.S.C. § 1396a(a)(3) may not "create[] an enforceable right," Br. 4, is contrary to binding precedent, *see Barry v. Lyon*, 834 F.3d 706, 717 (6th. Cir. 2016) ("[I]t is proper for plaintiffs to bring their [§ 1396a(a)(3)] claim for enforcement of their Medicaid rights under § 1983." (quoting *Gean v. Hattaway*, 330 F.3d 758, 773 (6th Cir. 2003)); *cf. Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 143 S. Ct. 1444, 1458 (2023) (finding similarly worded, individually focused Medicaid statutes enforceable under § 1983).

*Third*, the State mistakenly argues that the Medicaid regulations "are irrelevant" to Plaintiffs' claims. Br. 3. Under binding precedent, when a regulation "effectuates a mandate" of an enforceable statute, the regulation is also "enforceable through the private cause of action available under the statute." *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 907 (6th Cir. 2004). The Sixth Circuit has thus repeatedly looked to Medicaid regulations to define the Medicaid Act's statutory rights. *E.g.*, *Waskul*, 979 F.3d at 448, 455–56 (finding 42 C.F.R. § 441.301 and .302 set standards for states under 42 U.S.C. § 1396n(c)(2)); *Westside Mothers v. Olszewski*, 454 F.3d 532, 544 (6th Cir. 2006) (reversing dismissal of 42 U.S.C. § 1396a(a)(43)(A) claim, in part, because "the district court ignored the Medicaid Act's implementing regulations" under 42 C.F.R. § 441.56(a)). Because § 1396a(a)(3) creates an enforceable right to a hearing, the regulations detailing the requirements of those hearings are "covered by the cause of action to enforce that section." *Harris v. Olszewski*, 442 F.3d 456, 465 (6th Cir. 2006); *see also Shakhnes v. Berlin*, 689 F.3d 244, 254 (2d Cir. 2012) (finding 90-day requirement in 42 C.F.R. § 431.244(f) "further defines or fleshes out the content" of the hearing right); *Fishman by Fishman v. Daines*, 2016 WL 11496013, at *5 (E.D.N.Y. Mar. 10, 2016) (finding 42 C.F.R. § 431.223, concerning when appeals can be dismissed, "further defines or fleshes out the scope of []§ 1396a(a)(3)"). As with

constitutional due process, for § 1396a(a)(3)'s hearing right to be meaningful, it must include adequate notice. *Cf. Mullane v. Cent. Hanover Bank & Tr.*, 339 U.S. 306, 314 (1950) (finding the "right to be heard has little reality or worth" absent adequate notice). This Court has already held that the right of action under § 1396a(a)(3) includes the notice and hearing rights conferred by its implementing regulations, including that the State's "hearing system 'must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970),'" Cert. Order 6 (quoting 42 C.F.R. § 431.205), as have numerous other courts.[2]

The State's lone citation, to *Caswell v. City of Detroit Housing Commission*, 418 F.3d 615 (6th Cir. 2005), does not justify ignoring relevant Medicaid regulations. Br. 3–4. *Caswell* was not a Medicaid case, and the Sixth Circuit has already rejected the State's argument in a different Medicaid context: "[I]n *Caswell*, neither the plaintiff nor the court could identify any statutory provision that conferred the right at issue. Here, the authoritative regulation[s] merely supplement[] the right identified in a specific *statutory* provision." *Harris*, 442 F.3d at 464. Because the Medicaid regulations governing notice and appeal rights "merely supplement[]" § 1396a(a)(3)'s fair hearing right, *id.*, they are relevant to Plaintiffs' claims.

### B. The State fails to consider all categories of eligibility.

The State asserts there is no dispute whether "TennCare considers all categories of eligibility" because of how "TEDS is programmed" and how "TennCare workers are trained." Br. 21. But the evidence shows that, in *practice*, TennCare has failed to consider all eligibility categories

---

[2] *See K.B. ex rel. T.B. v. Mich. Dep't of Health & Hum. Servs.*, 367 F. Supp. 3d 647, 661–62 (E.D. Mich. 2019) (finding that § 1396a(a)(3) requires notice of the opportunity for a hearing under 42 C.F.R. § 431.210); *Crawley v. Ahmed*, 2009 WL 1384147, at *26 & n.7 (E.D. Mich. May 14, 2009) (finding that § 1396a(a)(3) requires timely and adequate notice of decisions under 42 C.F.R. §§ 431.206–.211 and § 435.919 (now codified at § 435.917); *Guadagna v. Zucker*, CV 17-3397, 2021 WL 11645538, at *13 (E.D.N.Y. Mar. 19, 2021) (finding right under § 1396a(a)(3) encompasses "a number of provisions fleshing out the right to pre-termination notice").

4

in multiple ways: TennCare (1) terminated up to 30,000 people in "conversion status" in April and May 2023 *without* considering all categories of eligibility; (2) lacked certain data necessary to assess individuals' eligibility for the Supplemental Security Income ("SSI")-related eligibility categories of Disabled Adult Child ("DAC"), Widow/Widower, and Pickle until May 2023; (3) fails to screen individuals for DAC even when they are already enrolled in that category; (4) fails to ask questions that would elicit information necessary to assess eligibility for the SSI-related categories; (5) failed to load key indicators (the D and W indicators) used to trigger evaluation for the SSI-related categories; and (6) acknowledged an ongoing problem, unresolved as of at least November 2022, with assessing eligibility for the category of Medicare Savings Plan. *See* PRSUMF ¶ 22(a)-(g); PADF ¶¶ 6–9, 19. These facts preclude summary judgment on this issue.

The State's arguments to the contrary are meritless. The State asserts that its admittedly inaccurate determinations do not reflect "a systematic failure to screen for eligibility," Br. 22, but such a "conclusory assertion" cannot "carry the day," *Berry v. SAGE Dining Servs., Inc.*, 2021 WL 3037483, at *13 (M.D. Tenn. July 19, 2021), because "all reasonable inferences" must be drawn in *Plaintiffs'* favor at this stage, *Laster*, 746 F.3d at 726. Contrary to the State's contention, moreover, it does not "promptly rectif[y]" all incorrect eligibility decisions. Br. 22. For example, although a TennCare appeals specialist raised concerns in July 2021 that TennCare lacked historical SSI data necessary to assess eligibility for SSI-related categories, TennCare did not address the problem until after Plaintiffs used the email in depositions in April 2023. PRSUMF ¶ 24. TennCare also still fails to assess DAC eligibility. Despite asking SSI-related questions of Gentry Fields in the past, TennCare omitted such questions from his 2023 renewal packet.[3] PRSUMF ¶ 22(d). And

---

[3] TEDS can only run the eligibility rules based on the facts and information input into each case, *see* PRSUMF ¶ 21, which makes these omissions critically important.

despite being directly informed of Gentry's DAC eligibility by his mother during the renewal process, TennCare still sent him a termination letter. PADF ¶¶ 6–13.

## C. TennCare's notices are inadequate.

As this Court has explained, before terminating coverage TennCare must provide the enrollee with timely and adequate notice that complies with due process and Medicaid requirements. *See* Cert. Order 5–6 (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Hughes v. McCarthy*, 734 F.3d 473, 475 (6th Cir. 2013); *Hamby v. Neel*, 368 F.3d 549, 559 (6th Cir. 2004); 42 C.F.R. §§ 431.210, 435.917). To be adequate under the Constitution, notices must "detail[] the reasons for a proposed termination," including both "the legal and factual bases" for the decision. *Goldberg*, U.S. at 267–68. Notices must also "clearly" explain "the availability of an avenue of redress." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13–14 n.15 (1978). And they must be "reasonably calculated" to communicate this information. *Mullane*, 339 U.S. at 314. Failure to include any of the required information offends due process, even if other aspects of the notice are sufficient. *See, e.g.*, *Memphis Light*, 436 U.S. at 14 (finding a due process violation where notice, "while adequate to apprise the [plaintiffs] of the threat of termination . . . was not 'reasonably calculated' to inform them of the availability of 'an opportunity to present their objections'"); *Barry*, 834 F.3d at 719 (finding notice inadequate where it provided "specific notice of the recipient's right to appeal," but not "a detailed statement of the intended action" or "the reason for the change in status"). Similarly, to satisfy § 1396a(a)(3), notices must identify the action being taken, the "specific reasons" for the action, the "specific regulations," supporting the action, an explanation of the right to a hearing or in "cases of a change in law, the circumstances under which a hearing will be granted," and when benefits will continue pending the hearing. 42 C.F.R. § 431.210. States must also notify enrollees of the right to obtain a hearing and the method

6

for obtaining one. *Id.* § 431.206. Because TennCare's Notices of Decision ("<u>NODs</u>") do not meet these requirements, summary judgment is not appropriate.

### 1. Notices fail to adequately explain termination decisions.

The State argues that TennCare's NODs adequately explain termination decisions even though they do not provide factual details for ineligibility in all categories and, until December 2022, contained only "a stock citation to the full set of TennCare's eligibility rules." *See* Br. 5–9, 22–23. The State is wrong, and summary judgment is unwarranted.

*First*, termination NODs inaccurately tell each recipient that TennCare both "looked at you for different kinds of coverage" and reviewed each recipient's facts to assess their eligibility. PRSUMF ¶ 22(a)-(g); PADF ¶¶ 6–9. The State agrees that whether this language is "unlawfully mislead[ing]" depends entirely on a resolution of the factual question of whether "TennCare does consider all categories of eligibility." Br. 21 n.1. Because the evidence shows that TennCare systematically fails to consider all categories of eligibility and use all facts available to it when making eligibility decisions, *supra* Part I.B, the NODs are inaccurate and therefore misleading.

*Second*, NODs do not "fully apprise" TennCare enrollees of the factual bases for ineligibility determinations. *Hamby*, 368 F.3d at 561 (finding notice inadequate although it provided some explanation for the decision). For example, while TEDS is programmed to input standardized language from a reference spreadsheet into NODs explaining denial reasons for particular categories of eligibility, that sheet does not contain any language for a denial based on a purported end in SSI coverage. PRSUMF ¶¶ 41, 53. Nor does the sheet contain any language for individuals who group into DAC, Widow/Widower, or Pickle categories. *Id.*; *see also* PADF ¶ 10 (describing NOD terminating DAC eligibility that provided no reasons relevant to DAC). Such notices "hardly qualify as 'adequate'" because they lack a "determination of eligibility on all relevant grounds." *Crawley*, 2009 WL 1384147, at *26. Notices stating that individuals failed to return information do not

7

provide any explanation of what materials the State believes are missing. PRSUMF ¶ 41. But "[w]ithout further identifying information . . . it would be at best onerous and at worst virtually impossible to effectively gather and present relevant information refuting this general charge." *Transco Sec., Inc. of Ohio v. Freeman*, 639 F.2d 318, 323 (6th Cir. 1981). And the "non-grouping" language that TennCare uses to tell people they do not fall within any eligibility category has caused significant confusion among Medicaid enrollees and even TennCare Connect call center staff (currently AHS and previously KePro). PRSUMF ¶ 41; PADF ¶¶ 7–9, 21; *see Dozier v. Haveman*, 2014 WL 5480815, at *10-11 (E.D. Mich. Oct. 29, 2014) (finding Medicaid Act violated where notice explained that enrollee was not "under 21, pregnant, or a caretaker of a minor child . . . or over 65 (aged), blind, or disabled," but "did not contain information regarding all eligibility categories"). Each defect deprives recipients of "full access to all information relied upon by the state agency." *Mathews v. Eldridge*, 424 U.S. 319, 345–46 (1976).

*Third*, the stock citation in all NODs issued before December 2022 failed to adequately apprise recipients of the legal bases for their terminations.[4] *See* 42 C.F.R. § 431.210. As this Court explained, the "NODs [did] not explain how to access this document" or "cite the subpart of the document ostensibly applicable to the NOD recipient." Cert. Order 13. These omissions were unlawful. *See Rodriguez ex rel. Corella v. Chen*, 985 F. Supp. 1189, 1195–96 (D. Ariz. 1996) (holding termination notices deficient where they gave "lengthy general descriptions of program eligibility rules" but not "the applicable provision as applied to the particular case" or "where a copy of the cited legal authority c[ould] be located and reviewed"). The State's effort to distinguish *Rodriguez* on its facts, Br. 8, further undermines the appropriateness of summary judgment here.

The State's argument that "a plain English explanation" for termination decisions "is all

---

[4] The State's post-December 2022 revisions to NODs are addressed in Part I.C.3, *infra*.

that is required" to give a recipient adequate notice, Br. 8, mischaracterizes well-established law. The Constitution demands that notice include not only an explanation of "the reason for the change in status" but also a "citation to the specific statutory section requiring reduction or termination." *Barry*, 834 F.3d at 719; *Goldberg*, 397 U.S. at 268 (concluding that, to be adequate, notices must include the "*legal* and factual" bases for the decision (emphasis added)). The Medicaid regulations likewise impose distinct requirements to explain the reason and provide the "specific regulation." *Compare* 42 C.F.R. 431.210(b), *with* 42 C.F.R. 431.210(c).[5]

## 2.   Notices fail to adequately explain how to seek redress.

The State's NODs are also deficient because they fail to identify available "avenue[s] of redress." *Memphis Light*, 436 U.S. at 13; *accord Barry*, 834 F.3d at 720. Due process requires Medicaid enrollees to be "adequately informed as to how to fully receive the benefits to which they were entitled, at the time they were entitled to them." *Hamby*, 368 F.3d at 561; *Elder v. Gillespie*, 54 F.4th 1055, 1064–65 (8th Cir. 2022) (finding the requirement that notice inform beneficiary of "what steps she should take to continue receiving" benefits a clearly established due process right). As this Court explained, the Medicaid regulations similarly require TennCare to provide "an explanation of the 'individual's right to request a local evidentiary hearing if one is available' and 'the circumstances under which Medicaid is continued if a hearing is requested.'" Cert. Order 6 (quoting 42 C.F.R. § 431.210). But TennCare has failed to do so.

*First*, the State concedes that NODs deliberately omit information about TennCare's 90-day reconsideration and good cause policies, based on TennCare's "judgment" that fully apprising enrollees of their rights could potentially cause them to miss deadlines and lose coverage.

---

[5] *Cahoo v. SAS Inst., Inc.*, 71 F.4th 401 (6th Cir. 2023) does not change these requirements. *See* Br. 8. *Cahoo* was neither a Medicaid case nor a summary judgment case; it was a qualified immunity case that, notably, found that the notices identified the "relevant statute." *Id.* at 410.

PRSUMF ¶¶ 60–61, 76–77. Such purposeful omissions cannot satisfy the State's obligation to employ "means . . . such as one desirous of actually informing," the enrollee. *Mullane*, 339 U.S. at 315. Further, the evidence shows that applying the 90-day reconsideration policy would not cause any gaps in coverage, PRSUMF ¶ 61, and that omitting information about the good cause policy discourages enrollees from exercising their appeal rights and creates risks that TennCare employees will provide inaccurate or incomplete information about them, *id.* ¶¶ 75, 77. Indeed, "common sense dictates that the likelihood of the state employing the [] authority is much less when a recipient (ignorant of the state's authority) does not request" it. *Bliek v. Palmer*, 102 F.3d 1472, 1477 (8th Cir. 1997). But "with the due process protection of notice in place, the risk of deprivation . . . will be reduced." *Id.* There are factual disputes regarding the impact of these omissions. The State cites *Rolen v. Barnhart*, 273 F.3d 1189 (9th Cir. 2001), Br. 15, but the *Rolen* notice "accurately stated the law, and therefore was not misleading," *id.* at 1192. The NODs here, by contrast, cannot "accurately" state the law by omitting it altogether.[6]

The State suggests that describing the good cause policy in TennCare's Appeal Resolution Notice is sufficient. *See* Br. 10–11. But individuals receive this notice only *after* electing to appeal, and thus are not aware of this avenue for requesting a hearing when deciding whether to appeal in the first instance. This Appeal Resolution Notice also comes too late to satisfy the constitutional requirement that notice must permit a recipient to "choose for himself" whether, when, or how to appeal. *Faber v. Ciox Health, LLC*, 944 F.3d 593, 603 (6th Cir. 2019) (quoting *Mullane*, 339 U.S. at 314); *see also Covington v. Dep't of Health & Hum. Servs.*, 750 F.2d 937, 943 (Fed. Cir. 1984)

---

[6] The language in the renewal packet cover letter does not "accurately" state the law: it omits the 90-day timeline and fails to explain the significance of submitting information within that timeframe (namely, that TennCare will backdate their coverage to fill any gap). PRSUMF ¶ 62; *see also* PRSUMF ¶¶ 59–60.

(finding notice "inadequate and erroneous" where it failed to inform recipient of "his applicable rights," because "[a] decision made 'with blinders on,' based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process"). The belated Appeal Resolution Notice also cannot satisfy the Medicaid requirement to notify an affected individual of the "method by which he may obtain a hearing." 42 C.F.R. 431.206(b)(2).

In any event, the Appeal Resolution Notice's description of TennCare's good cause policy is overly narrow. It references only extreme scenarios, not those more likely to cause an enrollee to miss an appeals deadline, such as non-receipt of mail, being away from home, or loss of documents, which TennCare admits can be a basis for good cause. *See* PRSUMF ¶ 80. The language also creates confusion by stating, in bold, that "it's too late to appeal this problem." PADF ¶ 42. Plaintiffs' experiences demonstrate the impact of not informing individuals of the good cause exception or what evidence is necessary to obtain the exception. *E.g.*, PRSUMF ¶¶ 77–78, 82. When combined with the volume of appeals closed by TennCare as untimely, the evidence easily supports an inference that the State has denied many class members' appeals when they could have received good cause exceptions had they known to ask for one.

### 3.    Notices discourage appeals.

Each of the NODs' shifting descriptions of TennCare's valid factual dispute policy discourage recipients from pursuing appeals. The NODs previously stated, "If you still think we made a mistake about a fact, you can have a fair hearing. If you don't think we made a mistake about a fact, you can't have a fair hearing." PRSUMF ¶ 95. After the Court raised concerns at the March 4, 2022 hearing about the "misleading" nature of this language, *see* ECF 179 at 19:2–20:15, TennCare revised the NODs in June 2022 to read, "You can have a fair hearing if you still think we made a mistake and, if you're right, you would qualify for our program," PRSUMF ¶ 97 (citing ECF 213 at 2). Despite the change, the Court expressly "permit[ted] the class to litigate the

11

lawfulness of" the prior language. Cert. Order 18 n.10. Moreover, both the old and new versions of NODs contain the misleading and discouraging sentence "You don't have a right to a fair hearing just because you don't like this decision or think it will cause problems for you." PRSUMF ¶¶ 95, 97. The evidence shows that NODs' confusing language made it difficult to satisfy TennCare's valid factual dispute policy. *See* PADF ¶¶ 23, 50, 53. As another court observed, asking individuals to "state the reason for your appeal" is "to ask the impossible, given that the recipient is not told the 'reason' for the initial determination." *Mayhew v. Cohen*, 604 F. Supp. 850, 857 (E.D. Pa. 1984). In sum, notice of appeal rights in the NODs is both misleading and discouraging, in violation of due process, *Hamby*, 368 F.3d at 561 (quoting *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990)); *accord Dozier*, 2014 WL 5480815, at *11, and the prohibition on "interfer[ing] with the . . . freedom to make a request for a hearing," 42 C.F.R. § 431.221(b).

The State argues that, under *Day v. Shalala*, 23 F.3d 1052 (6th Cir. 1994), relief is available only to those class members who can individually prove detrimental reliance on an offending notice provision. Br. 18. But the State ignores that *Day* was decided after trial and found (among other things) that the agency's denial notices were inadequate. *See* 23 F.3d at 1060, 1064–66. As in *Day*, the appropriate scope of declaratory and injunctive relief in this case should be determined after trial. *Id.* at 1066–67. The State's individual-reliance argument is also wrong because reliance is not an element of any of Plaintiffs' claims. Even if it were, reliance may be presumed because the NODs contained uniform language. *See, e.g.*, *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 512 (6th Cir. 2015) (holding that class-wide reliance could be established with evidence that material statements were made "in a generally uniform way to the entire class").[7] As the Court has

---

[7] Although *Rikos* was a Rule 23(b)(3) class action, its logic extends to Rule 23(b)(2) actions like this one, where "the party opposing the class has affected the class in a way generally applicable

stated, "when the State of Tennessee makes a representation to somebody about the medical coverage," the State "intend[s] for them to read it." ECF 179 at 22:20-25.

### 4. The State's revisions to notices do not moot Plaintiffs' claims.

The State is mistaken in arguing that Plaintiffs' notice claims have been mooted by two revisions to NODs—one to their "generic citation" to TennCare's 95-page chapter of regulations, and the other to their language concerning appeal rights—made well after this case was filed. *See* Br. 5–6, 18; PRSUMF ¶¶ 39, 40, 46, 95, 97.[8] Such "voluntary cessation . . . moots a case only in the rare instance where subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (quotation marks omitted). The State fails to establish either element.

*First*, the State concedes that TennCare can unilaterally "change the citations in the NODs in the future" and walk back its current "intention [not] to revert to the earlier language." PRSUMF ¶¶ 49, 51, 98. Because "[a] future [TennCare] administration could rescind the [revised NOD language] just as easily as this administration established it," the voluntary cessation doctrine is inapplicable. *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 441 (6th Cir. 2022). The State also ignores that Plaintiffs' claims are not cabined to the two NOD defects that the State belatedly revised. As the Court has recognized, Plaintiffs' claims also depend on various additional

---

to the class as a whole so that final injunctive or declaratory relief with respect to the entire class is appropriate," *Reeb v. Ohio Dep't of Rehab. & Correction*, 435 F.3d 639, 645 (6th Cir. 2006), and "[t]he precise identity of each class member need not be ascertained," *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016).

[8] The State's contention that "Plaintiffs lack standing" to challenge the State's NODs and appeals practices runs contrary to the Court's prior ruling that Plaintiffs do have standing, *see* ECF 178, 179 at 36, which, as "'law of the case,' is dispositive." *Roddy v. Tenn. Dep't of Corr.*, 2023 WL 180052, at *3 (M.D. Tenn. Jan. 13, 2023); *see also infra* Part III.

13

common "questions tied to the NODs," as well as common questions "that are not tied to the NODs." Cert. Order 13–14. And the Court expressly permitted Plaintiffs to "litigat[e] the past-tense version of" each common question. *Id.* at 18 n.10.

*Second*, class members continue to suffer the effects of the State's violations because they remain excluded from TennCare coverage, which is a cognizable and continuing injury. *E.g.*, *Hazard v. Shalala*, 44 F.3d 399, 403 (6th Cir. 1995); *Markva v. Haveman*, 168 F. Supp. 2d 695, 704 (E.D. Mich. 2001), *aff'd*, 317 F.3d 547 (6th Cir. 2003). Because the State's voluntary and forward-looking revisions to NODs do nothing to remedy this ongoing harm for individuals who already lost their coverage with inadequate notice, declaratory and injunctive relief remain available. *See Price v. Medicaid Dir.*, 838 F.3d 739, 746–47 (6th Cir. 2016) (holding that "a federal court may enjoin the state's officers to comply with federal law by awarding [public] benefits in a certain way going forward" and "may order state officers to provide recipients of public benefits with notice of ... beneficiaries' right to pursue state administrative remedies to obtain benefits in accordance with [an] injunction"). Plaintiffs are also entitled to seek relief for class members currently going through redetermination, which includes the 31,128 persons whom TennCare determined ineligible in April 2023 and who were notified using the still-inadequate NODs. PADF ¶ 103. Accordingly, the State is not entitled to summary judgment on Plaintiffs' notice claims.

### D. TennCare systematically denies fair hearings.

The State is not entitled to summary judgment because it denies fair hearings that are required by the Due Process Clause, 42 U.S.C. § 1396a(a)(3), and its implementing regulations. The Supreme Court "consistently has held that 'some kind of hearing is required at some time before a person is finally deprived of his property interests.'" *Memphis Light*, 436 U.S. at 16 (citing *Wolff v. McDonnell*, 418 U.S. 539, 557–58 (1974)). The hearing must occur before termination because, although benefits "may be restored ultimately, the cessation of essential services for any

14

appreciable time works a uniquely final deprivation." *Id.* at 20. The State's "hearing system 'must meet the due process standards set forth in *Goldberg*,'" Cert. Order 6 (quoting 42 C.F.R. § 431.205), which held that "a recipient must be allowed to state his position orally" because "[w]ritten submissions are an unrealistic option for most recipients," 397 U.S. at 269.

Under the Medicaid Act, TennCare must grant a fair hearing to "[a]ny individual who requests it because he or she believes the agency has taken an action erroneously," unless the "sole issue is a Federal or State law requiring an automatic change adversely affecting some or all beneficiaries," 42 C.F.R. § 431.220(a), (b); "may not limit or interfere with the . . . freedom to make a request for a hearing," § 431.221(b); and must "reinstate and continue services until a decision is rendered after a hearing if . . . [a]ction is taken without the advance notice" required by the Medicaid regulations, § 431.231(c). TennCare violates these rules by using arbitrary standards and unchecked discretion to deny access to hearings. *See Logan v. Zimmerman Brush*, 455 U.S. 422, 434–35 (1982) ("A system or procedure that deprives persons of their claims in a random manner . . . necessarily presents an unjustifiably high risk that meritorious claims will be terminated.").

The State contends that TennCare "does not systematically fail to provide fair hearings at any time" unless TennCare decides (among other things) that an appeal is "found to be untimely" or "lacking a valid factual dispute." Br. 21. But the State's own data show that, even among hearings that are timely and survive review for valid factual dispute, TennCare closed a significant number of appeals without a hearing. Out of the 69,250 total redetermination- and termination-related appeals that were timely filed between March 19, 2019, and October 31, 2022, and for which a hearing was possible, TennCare conducted only 5,754 hearings—a rate of approximately 8%. *See* PRSUMF ¶ 68; PADF ¶¶ 56–57, 59–62. The State's conclusory assertion that "an individual whose appeal is delayed is given continuation of benefits and therefore has

15

not suffered an adverse action," Br. 20, conflicts with the evidence. Of the 63,496 appellants who were denied fair hearings, 19,425 appellants (over 30%) did not receive continuation of benefits during the appeals process. PRSUMF ¶ 68; PADF ¶ 63.

### 1. TennCare's valid factual dispute policy is unlawful.

Apart from the conclusory assertion by counsel that TennCare's "'valid factual dispute' policy in place today is the same one that was in place in *Rosen* [*v. Goetz*, 410 F.3d 919 (6th Cir. 2005),] and approved by CMS," Br. 16, the State offers no factual basis to support summary judgment on the policy as TennCare applies it. Several disputed facts preclude summary judgment.

There is a genuine dispute about how TennCare implements the policy. *See* PRSUMF ¶¶ 91–92. TennCare initially represented that it required a *factual* dispute, as reflected in the NODs in use at the start of the case. *See* PRSUMF ¶ 95; *supra* Part I.C.2. After this Court raised concerns that this approach precluded disputes over the application of law to fact, ECF 179 at 20:2-8, TennCare changed course and represented that it *does* accept such appeals as raising valid factual disputes (similar to the representations made in *Rosen*), *see* PRSUMF ¶ 91; *Rosen*, 410 F.3d at 926 (holding that appeals raising "matters of fact *or the application of law*" are entitled to fair hearings (emphasis added)). Yet the evidence contradicts the State's representations. In depositions, TennCare admitted that its policy is to close appeals without a hearing when they "just state that they need their coverage reinstated," PRSUMF ¶ 92, though such a statement should constitute a valid factual dispute, *see Grier v. Goetz*, 402 F. Supp. 2d 876, 922 (M.D. Tenn. 2005) ("A statement as simple as: 'I am appealing because I did not get my medicine or treatment' . . . must be treated as raising a 'valid factual dispute.'"). And TennCare's statement of facts here suggests it has reverted to the position that only a *factual* dispute suffices. *See* PRSUMF ¶ 91.

The experiences of Plaintiffs and other Medicaid enrollees demonstrate that TennCare fails to acknowledge even straightforward *factual* disputes when they are asserted. *Id.*; PADF ¶¶ 23,

16

49, 50, 53. This is so in part because TennCare requires individuals to identify the "correct" or "true reason" for TennCare's decision, which it admits requires review of the whole case—something individuals are not equipped to do given the limited explanations notices provide. *See* PRSUMF ¶ 91; PADF ¶¶ 23, 49, 50, 51–53. Plaintiffs' experiences are not isolated incidents. The evidence shows that between March 19, 2019 and October 31, 2022, TennCare closed at least 3,683 appeals without a fair hearing based on the valid factual dispute policy, representing approximately 5% of the total appeals filed during that period. PRSUMF ¶¶ 68, 103. In the first six months of 2023, moreover, TennCare closed approximately 7.8% of all appeals—629 out of 8,089—without a fair hearing based on the valid factual dispute policy. PRSUMF ¶¶ 68, 70, 103.[9]

The record thus amply supports the conclusion that the valid factual dispute policy violates the bedrock principle that "some kind of hearing is required" before an individual is deprived of a protected property interest. *See Memphis Light*, 436 U.S. at 16; *Goldberg*, 397 U.S. at 266 ("[T]he stakes are simply too high for the welfare recipients, and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires to . . . produce evidence in rebuttal."). Nor can the policy pass muster under the *Mathews v. Eldridge* factors: it simultaneously increases the risk of erroneous deprivation of a vital private interest *and* creates additional administrative burden.[10] *See Mathews*, 424 U.S. at 335. As

---

[9] Medical appeals data bolster the conclusion that hearing denials are commonplace under the valid factual dispute policy. While the *Grier* court cautioned that "it will be the rare case indeed that is dismissed for failure to raise a 'valid factual dispute.'" *Grier*, 402 F. Supp. 2d at 923, in 2022 TennCare closed 47% of medical appeals under the policy. PADF ¶ 55.

[10] It is undisputed that the private interest at issue here—Medicaid coverage for individuals with "brutal need," *Crawley*, 2009 WL 1384147, at *27 (quoting *Goldberg*, 397 U.S. at 261)—is critical. The State thus misses the mark by relying on authorities concerning less compelling private interests, Br. 17: a college student's disciplinary record, *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005); a nontenured public employee's disciplinary record, *Codd v. Velger*, 429 U.S. 624 (1977), and a civil litigant's ability to survive summary judgment, Fed. R. Civ. P. 56.

17

demonstrated above, the risk of erroneous deprivations is high particularly because the valid factual dispute policy closes appeals brought by people who, by appealing, have already expressed their disagreement with the State's decision. Thus, this pool of people is particularly likely to suffer an erroneous termination. *See Yee-Litt v. Richardson*, 353 F. Supp. 996, 999–1000 (N.D. Cal.) (rejecting fact vs. policy distinction as too likely to erroneously deny hearings, and requiring hearings), *aff'd sub nom. Carlson v. Yee-Lit*, 412 U.S. 924 (1973).

While the State analogizes this policy to the requirements for litigating a case, Br. 17, 19, the Supreme Court has found procedures that are "too bounded by procedural constraints" to be unconstitutional, *Memphis Light*, 436 U.S. at 20; *see also Washington v. DeBeaugrine*, 658 F. Supp. 2d 1332, 1336–37 (N.D. Fla. 2009) ("Imposing a procedural bar to such a hearing—a formal pleading requirement that a disabled person or lay representative may be poorly equipped to meet—is the very antithesis of the right to a hearing."). Requests for additional information, a common step in TennCare's appeals process, pose an additional hurdle that causes more people, including three named Plaintiffs, to lose coverage without a hearing. *See* PRSUMF ¶¶ 91–92, 99 (Caudill, A.L.T., and S.L.T.). Each was eventually found eligible, which underscores that fair hearing denials under this policy are divorced from the merits of appeals.

As to administrative burden, the evidence supports an inference that the valid factual dispute policy increases TennCare's administrative burdens, tipping the *Mathews* scale even further toward the risk of erroneous deprivation. *See, e.g.*, *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 799 (6th Cir. 2018) ("*Mathews* directs courts to weigh the private interest in a property right against the government's interest in avoiding additional or substitute process."). TennCare officials testified about the detailed review the policy requires, and multiple staff members may have to conduct such a detailed review because different staff are responsible for hearings. PADF ¶¶ 44–45. While

18

rescinding the policy would increase the number of hearings, it would eliminate duplicative work without changing the result when termination is indeed warranted. In any event, the burden of the additional hearings itself is not sufficient to overcome the importance of avoiding erroneous deprivation of individuals' vital interest in Medicaid coverage. *See Goldberg*, 397 U.S. at 266.

The State's arguments fail to justify summary judgment. The State argues that *Rosen* and *Grier* blessed the valid factual dispute policy as "a valid expression of the applicable Medicaid regulation, 42 C.F.R. § 431.220." Br. 15–16. But that regulation condones a narrow exception not applicable in this case: hearings may be denied "if the sole issue is a Federal or State law requiring an automatic change adversely affecting some or all beneficiaries." 42 C.F.R. § 431.220(b). In *Rosen*, new rules eliminated full categories of eligibility, 410 F.3d at 922, and in *Grier*, new rules subjected medical benefits to hard limits "for which there [were] no exceptions based on individual circumstances," 402 F. Supp. 2d at 910.[11] There was no mass change of eligibility categories here. Ignoring § 431.220(b), TennCare testified that *any* state or federal law establishing an eligibility requirement can justify denying a hearing, so it screens *all* requests for hearings under this policy.[12] PADF ¶ 48. Permitting this approach would allow this narrow exception to swallow beneficiaries' broad right to a hearing as guaranteed by due process and the Medicaid Act.

---

[11] *See also Benton v. Rhodes*, 586 F.2d 1, 3 (6th Cir. 1978) (termination of optional benefits); *Davis v. Shah*, 821 F.3d 231, 253 (2d Cir. 2016) (elimination of branch of coverage); *Knapp v. Armstrong*, 2012 WL 640890 (D. Idaho Feb. 26, 2012) (mass change with no individual findings).

[12] Other Medicaid regulations confirm that § 431.220(b) is limited to changes in law. Section 431.210(d) requires notices to explain "the individual's right to request a . . . hearing" or, "[i]n *cases of an action based on a change in law*, the circumstances under which a hearing will be granted." 42 C.F.R. § 431.210(d) (emphasis added). This distinction makes little sense if *every* hearing is subject to the limitation in § 431.220(b). Nor does the State's reading of § 431.220(b) account for other federal regulations. For instance, 42 C.F.R. § 431.223(b) limits the circumstances in which "[t]he agency may deny or dismiss a request for a hearing" to instances where: (1) the beneficiary withdraws the request, or (2) the beneficiary fails to appear. The State's reading of § 431.220(b) would eviscerate these careful limitations on denying and dismissing an appeal.

### 2. TennCare arbitrarily denies hearings under its good cause policy.

TennCare's restrictive use of good cause exceptions deprives Medicaid enrollees of required hearings. TennCare does not authorize good cause exceptions where individuals allege they never received the NOD and, therefore, were unaware of the deadlines to appeal.[13] PRSUMF ¶ 81. Yet, to comport with due process, individuals must receive *pre*-deprivation notice. *Goldberg*, 397 U.S. at 267–68. Due process and the Medicaid Act both demand that TennCare have policies to ensure that individuals who have not received such notice have a means of redress, including prospective reinstatement until adequate notice is issued. *See Crawley*, 2009 WL 1384147, at *28 (rejecting system that "subverts the purpose of a *pre-termination* review); 42 C.F.R. § 431.231(c).

As written, TennCare's regulations would satisfy this obligation. TennCare enrollees have 40 days to appeal "unless good cause can be shown." Tenn. Comp. R. & Regs. § 1200-13-19-.06. TennCare regulations define "good cause" as "a reason based on circumstances outside the party's control and despite the party's reasonable efforts." *Id*. § 1200-13-19-.02(20). A straightforward reading would include instances in which an individual never received a notice (or other document, like a renewal packet) through no fault of their own. But, in practice, TennCare requires additional evidence to establish good cause, meaning that individuals who never received notice—but who lack enough evidence to prove as much to TennCare's satisfaction—are not allowed to appeal. PRSUMF ¶ 83; *see* Br. 13 (asserting the need to screen out "self-serving" allegations).

Compounding this due process problem, the State does not offer enrollees a hearing to present evidence of non-receipt. PRSUMF ¶ 84. Plaintiff S.L.T., for example, expressly notified TennCare of her family's non-receipt of any renewal packet or NOD, and TennCare admitted that

---

[13] TennCare also categorically denies good cause exceptions for all non-appeals deadlines, such as the deadline to respond to a renewal packet, leaving individuals who did not receive notice of key deadlines without recourse to challenge the loss of coverage. PRSUMF ¶ 74.

20

mail may have been sent to a different address, but TennCare nonetheless closed the appeal as untimely without granting a good cause exception or an opportunity to present evidence in a hearing (or otherwise). PRSUMF ¶ 73; *see also* PADF ¶¶ 31–37, (describing persistent errors with incorrect mailing address in TEDS and limitations on enrollee's ability to correct information). This practice is contrary to *Goldberg*, which held that oral presentation is a critical component of due process because of the "flexibility" it offers compared to written submissions and because, "where credibility and veracity are at issue . . . written submissions are a wholly unsatisfactory basis for decision." 397 U.S. at 269. Many good cause decisions, especially regarding non-receipt, rest on credibility and "require perhaps the most delicate of determinations, a case by case balancing of individual factual patterns against a loosely defined standard," especially where, as here, there are no "clearly defined standards circumscribing the 'good cause' determination." *Hurley v. Toia*, 432 F. Supp. 1170, 1177 (S.D.N.Y. 1977).

The State relies on cases involving entirely distinct statutory schemes that not only authorize but *require* certain actions without written notice. *See* Br. 18; *Singh v. Garland*, 2022 WL 4283249, at *3 (6th Cir. Sept. 16, 2022) (noting that the federal immigration statute at issue required an order of removal "even without the 'written notice' that the laws otherwise required"). By contrast here, consistent with *Goldberg*'s requirement for a *pre*-deprivation hearing, federal Medicaid regulations are clear that "[t]he agency *must* reinstate and continue services until a decision is rendered after a hearing if . . . [a]ction is taken without the advance notice required."[14] 42 C.F.R. § 431.231(c)(1) (emphasis added).

In sum, TennCare's refusal to apply good cause to allegations of non-receipt or to provide

---

[14] *See Kimble v. Solomon*, 599 F.2d 599, 605 (4th Cir. 1979) (ordering prospective reinstatement of Medicaid benefits until adequate notice is provided).

good cause hearings means that individuals who did not receive a notice are routinely deprived of a fair hearing. This policy violates the most basic requirements of due process and the Medicaid Act. *See* 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.231(c).

### 3. TennCare does not take final action within 90 days of appeal.

Due process requires the administrative hearing to occur "at a meaningful time," *Goldberg*, 397 U.S. at 267, which to be meaningful, must include the decision itself. Through § 1396a(a)(3) and its implementing regulation, 42 C.F.R. § 431.244(f), state Medicaid agencies must take final administrative action on appeals within 90 days in all but exceptional cases. *See* Cert. Order 4; *Lisnitzer v. Zucker*, 983 F.3d 578, 580 (2d Cir. 2020). Courts have consistently held that the requirement of "final administrative action" includes a written decision following a fair hearing. *E.g.*, *Shakhnes*, 689 F.3d at 254; *Thompson ex rel. Bailey v. Fitzgerald*, 558 F. Supp. 3d 1334, 1348 (N.D. Ga. 2021). Yet, TennCare's appeals data from March 2019 through October 2022 shows that it failed to conduct a hearing, much less render a written decision, within 90 days in over 64% of cases (2,933 of 4,559) in which a hearing occurred. PADF ¶¶ 56–58, 64–65. These facts preclude summary judgment.

The State contends that, since August 2022, it "has not had a *hearing* more than 90 days after a termination appeal was filed." Br. 20 (emphasis added). But the requirement is to issue a final *decision* within 90 days, not simply hold a hearing. Moreover, the post-August 2022 data set is misleading because of the significantly lower volume of appeals at that time given the COVID-19 moratorium on Medicaid terminations, which began in March 2020 and ended on April 1, 2023. *See* ECF 180, 181, 263. Plaintiffs' analysis, which also includes TennCare's own data from before the moratorium began, is a better indicator of current practice. Moreover, that TennCare *sometimes* provides hearings within 90 days does not defeat Plaintiffs' claims. *See Withrow v. Concannon*, 942 F.2d 1385, 1387 (9th Cir. 1991) (noting that for those denied hearings and decisions within

22

the mandated time, "it is no comfort to be told . . . the state is in 'substantial compliance'").

The State further contends that a "waiver from CMS . . . permits [TennCare] to allow appeals to go beyond 90 days as long as it provides continuation of benefits," Br. 20, but the mere existence of such a waiver does not justify summary judgment. The waiver goes into effect only when a triggering condition is met. *See* PADF ¶¶ 66–69. Assuming it has, the waiver is limited by its terms: it does not apply "to any fair hearing request where benefits cannot be provided pending the outcome of the hearing." PADF ¶ 69. Finally, the waiver is only temporary, expiring on February 28, 2025, and cannot excuse noncompliance with the Constitution's due process requirements. PADF ¶ 68. Summary judgment is therefore not appropriate.

## II.     Summary judgment is not warranted on the ADA claim.

### A.     The State lacks a valid and reliable reasonable accommodation system.

The State misses the mark in asserting that TennCare has "a system" for granting reasonable accommodations. Br. 24. The record shows that TennCare's system is fragmented, siloed, and woefully understaffed, relying entirely on one person to resolve accommodation requests from a population of 1.7 million. *See* PRSUMF ¶¶ 3, 127, 130, 136, 138, 140. TennCare's policies and practices impose additional burdens on individuals requesting accommodations, by requiring cumbersome paperwork and making circular referrals to various third parties. *Id.* These burdensome steps must be repeated anew each time an individual requires accommodation (*e.g.*, at the next renewal), even when it is identical to one they previously received. PRSUMF ¶ 27. TennCare also improperly requires individuals with disabilities to rely on family and friends to navigate the process. PRSUMF ¶ 106. As a result, as stated by Plaintiffs' unrebutted expert, "TennCare does not provide a reliable, accessible path to assistance needed to appropriately access its programs."[15]

---

[15] TennCare asserts that it has a system but provides no evidence that the system is effective for

Harrell Decl., Ex. 37, Report of Dr. Peter Blanck, Ph.D,, J.D., at 14. The experiences of several Plaintiffs, including Walker, Monroe, and D.R., illustrate these system failures and harms. PRSUMF ¶ 141; *see also* PRSUMF ¶¶ 110, 140. This evidence is more than enough for Plaintiffs to survive summary judgment. *See Hindel v. Husted*, 875 F.3d 344, 350 (6th Cir. 2017).

A system that cannot reliably provide accommodations is insufficient under the ADA. If a state program could assert it had a "system" without any assessment of the efficacy of that system, ADA claims could always be easily defeated. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 276–77 (2d Cir. 2003) (discussing the functioning of the system for people with disabilities); *Disabled in Action v. Bd. of Elections in City of N.Y.*, 752 F.3d 189, 201 (2d. Cir. 2014) (examining an ad hoc versus effective system); *Brooklyn Ctr. for Independ. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588 (S.D.N.Y. 2013)*.* As these cases demonstrate, a claim based on the adequacy of a system does not defeat class-wide adjudication. *See also R.K. v. Lee*, 563 F. Supp. 3d 774, 783–84 (M.D. Tenn. 2021). The question certified for the Disability Subclass—"whether Defendant *actually* lacks such systems"—is still very much in contention. ECF 234 at 20–21.

Nor does TennCare satisfy its affirmative obligations under the ADA. The ADA, which was enacted to address the pattern of unequal treatment in the administration of state services and programs, creates an affirmative obligation to accommodate people with disabilities. *Tennessee v. Lane*, 541 U.S. 509, 524–27 (2004). Entities must make reasonable modifications to policies, practices, or procedures *and* not use discriminatory methods of administration. 28 C.F.R. § 35.130(b); *Ability Ctr.*, 385 F.3d at 910 (noting ADA violations may come in the form of discrimination or the denial of benefits of public services). The obligation is not limited to providing requested accommodations; entities must also evaluate the programs and services they offer to ensure that

---

enrollees with disabilities. *See* ECF 311 at 5–11. Plaintiffs' expert is thus unrebutted.

people with disabilities are not denied the benefits of public services and to provide individuals the means necessary to access those services. *Ability Ctr.*, 385 F.3d at 910; *see also Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269 (D.D.C. 2015); *Henrietta D.*, 331 F.3d at 275–76. TennCare does not meet these obligations. *See* PRSUMF ¶¶ 106-07, 110-12, 114, 127, 135, 141; *see also Disabled in Action*, 752 F.3d at 201.

*First*, as discussed above in Part I.B, by failing to consider all categories of eligibility, in particular those based on disability status, TennCare's original design choices when implementing TEDS are methods of administration that screen out people with disabilities who should be eligible under SSI-related categories of eligibility. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b). Furthermore, TennCare lacks reliable systems to identify these errors, diligently respond to them, or check that problems impacting people with disabilities have in fact been fixed. *See* PRSUMF ¶¶ 12, 19, 22, 24, 28, 36. And even when issues were brought to TennCare's attention, it did not diligently pursue solutions. PRSUMF ¶¶ 22, 24, 28, 36. These choices compounded the harm to individuals with disabilities who were being screened out. *Id.* Much like physical barriers impairing access to buildings, TennCare's inability to accurately determine eligibility for the SSI-related categories is a barrier of TennCare's own making that must be recognized and removed. *See Ability Ctr.*, 385 F.3d at 910. TennCare's lack of planning, testing, and responsiveness to issues impacting access to the program for people with disabilities is exactly what the ADA was enacted to protect against. *See id.* (discussing ADA protection against choices that may not have intended to exclude individuals with disabilities but did so anyway); *Henrietta D.*, 331 F.3d at 265.

*Second*, TennCare impedes access by imposing burdens on individuals trying to request accommodations. Plaintiffs Monroe, Walker, and D.R. clearly requested accommodations by expressing that they had disabilities and needed assistance to access TennCare. PSRUMF ¶¶ 140–

25

42, 110–11. It took intervention of counsel to ensure these individuals could navigate the redetermination process. *Id.* The evidence also shows that individuals experienced barriers to making requests, including additional paperwork and an individual with a hearing disability who was left a voicemail by the director and sole employee of TennCare's Office of Civil Rights Compliance. PRSUMF ¶¶ 136, 140–41.

In fact, while a clear request for a modification or accommodation certainly puts a Title II entity on notice that a modification is needed, contrary to the State's assertion, Br. 26, the obligation may also be triggered if the entity knows the person has a disability and experiences limitations as a result of that disability. *See, e.g.*, *Ability Ctr.*, 385 F.3d at 910 (discussing affirmative obligations); *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007) (collecting cases); *Hinojosa v. Livingston*, 994 F. Supp. 2d 840, 843–44 (S.D. Tex. 2014) (finding accommodation required where defendant had knowledge of plaintiff's disability and needs it created); *cf. Marble v. Tennessee*, 767 Fed. Appx. 647, 653–55 (6th Cir. 2019) (finding that no accommodation was required where the request was made by a third party and made no mention of disabilities, the disabled party testified that he could not recall whether the request was necessitated by his disabilities, the request was consistent with other law so would not have suggested that the request was intended to accommodate disabilities, and the state attempted to implement the request). The ADA does not require a state to be clairvoyant, but it does require an effectual accommodation system to give clear opportunities to request needed accommodations and provide them once they are determined reasonable and necessary. *Henrietta D.*, 331 F.3d at 279–80; *see also Randolph v. Rogers*, 170 F.3d 850, 858–59 (8th Cir. 1999) (finding the ADA is not so narrow as to let a public entity claim a plaintiff failed to request an accommodation when it declined to discuss the issue); *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006) (noting that a

person's need for accommodation is sometimes obvious); *Pickett v. Tex. Tech. Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022) (noting that when ongoing accommodations have been acknowledged as necessary, they should be provided).

While TennCare has access to relevant data about Medicaid enrollees, and could collect accommodation-specific data, it has chosen not to, refusing to take even the most basic steps to evaluate whether individuals seeking to access its program require accommodations. PRSUMF ¶¶ 106, 135; PADF ¶¶ 87–101 (describing efforts to identify individuals with disabilities in 2002 using medical claims data). TennCare does not track individuals who have disabilities or who have requested accommodations in the past and require them on an ongoing basis, though the TEDS design already has fields to do so. PRSUMF ¶¶ 106, 140; PADF ¶ 84. Thus, even if enrollees with disabilities do navigate their way to receiving an accommodation, this process must be repeated each time the person needs to interact with TennCare, which impedes access. PRSUMF ¶ 106.

*Third*, TennCare's system is inadequate because it relies on family and friends. PRSUMF ¶ 106. The ADA's auxiliary aids and services requirements prioritize the protection of privacy and cannot be satisfied by such third-party assistance. 28 C.F.R. § 35.160(b)(2); *Nat'l Fed'n of the Blind, Inc. v. Lamone*, 438 F. Supp. 3d 510, 526 (D. Md. 2020). Even if enrollees with disabilities could access TennCare with the assistance of family and friends, TennCare's failure to provide accommodations remains an ADA violation. *See Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 390–91 (D. Md. 2011) (collecting cases); *People First of Ala. v. Merrill*, 491 F. Supp. 3d 1076, 1159 (N.D. Ala. 2020) (noting plaintiffs need not show they are prohibited from the program, only that the program is not readily accessible to them).

*Finally*, TennCare fails to show that changing its system or methods of providing reasonable accommodations would be burdensome, much less meet the high standard required for the

fundamental alteration defense. *See Hindel*, 875 F.3d at 348–49 (holding such a determination is fact intensive and inappropriate for summary judgment); *see* PRSUMF ¶¶ 106, 133; PADF ¶¶ 87–101. And Plaintiffs are not seeking an expansion of TennCare services, but rather the removal of obstacles to requesting and receiving accommodations so that they may access the TennCare program as it exists. *See Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267 (D.C. Cir. 2008).

### B. The State does not provide adequate in-person assistance to people with disabilities.

The *adequacy* of TennCare's in-person assistance is an inherently factual question that is inappropriate for summary judgment. *See* Cert. Order 20, n.12. Plaintiffs raise disputes with each of the facts the State relies on in support of its argument and assert ten additional material facts that weigh on this highly fact-intensive certified issue. PRSUMF ¶¶ 111–15; PADF ¶¶ 73–82. According to the State, TennCare provides adequate in-person assistance through two entities: the Department of Human Services ("DHS") and the nine Area Agencies on Aging and Disability ("AAADs"). But enrollees who go to their DHS county office for help will find little more than a device and internet access. PRSUMF ¶ 111. While DHS employees will assist with the mechanics of using a kiosk, phone, scanner, or fax, and with basic tasks like logging onto an online TennCare Connect account, they have no eligibility training and refer substantive questions to the TennCare Connect call center. PRSUMF ¶ 111; *see also* PADF ¶ 73.

If AAADs provide the breadth of assistance TennCare asserts, the State has yet to produce evidence proving it. AAADs were not contractually required to provide in-person assistance with renewals generally before renewals resumed in April 2023, nor does their reporting to TennCare reflect any such assistance. PADF ¶ 75. On the main website for renewals and the current renewal packet, TennCare lists DHS, not AAADs, as the resource available to individuals who need in-

28

person assistance.[16] PRSUMF ¶ 114; PADF ¶ 73. Plaintiff William Monroe's interaction with the AAAD reveals the parties' disputes over the AAADs' role in providing in-person, at-home assistance with renewals. *See* PRSUMF ¶ 115.

### III. The State may not relitigate the issue of CMS certification.

The State argues that summary judgment is warranted because "CMS has reviewed and certified TennCare's processes for determining eligibility." Br. 28. Because the Court has already squarely rejected this argument, ECF 139-1 at 17–22; ECF 178; ECF 179 at 31–35, it "need not reconsider the issue because the 'law of the case' is dispositive," *Roddy v. Tenn. Dep't of Corr.*, 2023 WL 180052, at *3 (M.D. Tenn. Jan. 13, 2023).

As the Court already concluded, the State misinterprets CMS's November 2020 cover letter and certification report. *See* PRSUMF ¶¶ 13–14 (citing ECF 139-5, 139-6). CMS expressly stated that its analysis "was an assessment of *information technology system functionality* and [did] not reflect a comprehensive determination of State compliance or noncompliance with all federal Medicaid policy regulations," ECF 179 at 32:14-18 (emphasis added), and the report "reinforces that all [CMS] looked at was the functionality," *id.* at 34:24-25. The State is thus mistaken in contending that CMS made any determination as to TennCare's compliance with the Medicaid Act and its attendant regulations.[17] *See* Br. 28–30. As the Court stated, "[f]unctionality doesn't equal it being legal." ECF 179 at 32:19-20.

Contrary to the State's arguments, this case is nothing like *Rosen* or *Harris*. *See* Br. 29–30. In *Rosen*, CMS filed an *amicus* brief confirming it had "reviewed and expressly approved" the

---

[16] The renewal packet also notes that those who receive care at a local community mental health center can get help there. PRSUMF ¶ 114.

[17] The State's focus on "critical findings" overlooks that CMS identified other issues with TEDS, the severity of which is disputed, *see* PRSUMF ¶ 15, such as how TennCare compares to other state Medicaid agencies, *see id.* ¶ 148.

State's compliance with the regulation at issue. 410 F.3d at 926–27. In *Harris*, the Sixth Circuit found the Medicare Act ambiguous as to whether incontinence products constituted "medical devices" and so deferred to DHS's position in an *amicus* brief. 442 F.3d at 459, 465–68. But CMS has not appeared in support of the State in *this* case, there is no ambiguity in the governing law, and this Court has already determined that CMS's certification concerned the separate issue of information technology system functionality, not lawfulness. *See* ECF 179 at 32:9-20, 34:3–35:2.

Nor can CMS approval dispose of the ADA claims. *See e.g.*, *Radaszewski v. Maram*, 383 F.3d 599, 601 (7th Cir. 2004) (allowing the plaintiffs' claims to proceed without regard to federal approval of the State's Medicaid plan and waiver programs); *Crabtree v. Goetz*, 2008 WL 5330506, at *2, *30-*31, (M.D. Tenn. Dec. 19, 2008) (same); *Grooms v. Maram*, 563 F. Supp. 2d 840, 844, 863 (N.D. Ill. 2008) (same). And, of course, regardless of the scope of CMS's certification, that certification is entitled to "no deference" regarding whether a constitutional violation has occurred. *New Mexico Cattle Growers' Ass'n v. U.S. Forest Serv.*, 2023 WL 2185698, at *9 (D.N.M. Feb. 22, 2023); s*ee also Hicks v. Colvin*, 214 F. Supp. 3d 627, 640 (E.D. Ky. 2016) (holding that "the Court must still follow the Constitution").

## <u>CONCLUSION</u>

For the reasons discussed above, the State's Motion should be denied.

Dated: July 31, 2023

By:    /s/  *Babak Ghafarzade*

Gordon Bonnyman, Jr. TN BPR 2419
Vanessa Zapata, TN BPR 37873
Brant Harrell, TN BPR 24470
Madeline Wiseman, TN BPR 39003
TENNESSEE JUSTICE CENTER
211 7th Avenue North, Suite 100
Nashville, Tennessee 37219
Phone: (615) 255-0331
Fax: (615) 255-0354
gbonnyman@tnjustice.org
vzapata@tnjustice.org
bharrell@tnjustice.org
mwiseman@tnjustice.org

Jane Perkins (*pro hac vice*)
Elizabeth Edwards (*pro hac vice*)
Sarah Grusin (*pro hac vice*)
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin St., Ste. 110
Chapel Hill, NC 27516
Phone: (919) 968-6308
perkins@healthlaw.org
edwards@healthlaw.org
grusin@healthlaw.org

Gregory Lee Bass (*pro hac vice*)
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
Phone: (212) 633-6967
bass@nclej.org

Faith Gay (*pro hac vice*)
Jennifer M. Selendy (*pro hac vice*)
Andrew R. Dunlap (*pro hac vice*)
Babak Ghafarzade (*pro hac vice*)
David Coon (*pro hac vice*)
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Phone: (212) 390-9000
fgay@selendygay.com
jselendy@selendygay.com
adunlap@selendygay.com
bghafarzade@selendygay.com
dcoon@selendygay.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via

the Court's electronic filing system on this 31st day of July, 2023.

Meredith Bowen TN BPR #34044
Assistant Attorney General
Matthew Dykstra TN BPR #38237
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202

Michael W. Kirk
Nicole J. Moss
Harold S. Reeves
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036

*/s/*       *Babak Ghafarzade*
Babak Ghafarzade
*On behalf of Counsel for Plaintiffs*
