# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| A.M.C., by her next friend, C.D.C., *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>STEPHEN SMITH, in his official capacity as Deputy Commissioner of Finance and Administration and Director of the Division of TennCare,<br><br>    Defendant. | Civil Action No. 3:20-cv-00240<br>Chief District Judge Crenshaw<br>Magistrate Judge Newbern |

## **DEFENDANT'S POST-TRIAL REPLY BRIEF**

## TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

ARGUMENT .......................................................................................................................1

    I.    Plaintiffs Fail to Connect Their Due Process, Medicaid Act, and ADA Claims to Any Trial Evidence of Harm to an Individual. ...............................................1

    II.   Plaintiffs' Remaining Arguments Are Flawed. ............................................................8

CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

**Cases:**                                                                                                                     **Page:**

*Caswell v. City of Detroit Hous. Comm'n*,
    418 F.3d 615 (6th Cir. 2005) ..................................................................................................8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ..............................................................................................................7

*Crippen v. Kheder*,
    741 F.2d 102 (6th Cir. 1984) ............................................................................................9, 10

*Fialka-Feldman v. Oakland Univ. Bd. of Trs.*,
    639 F.3d 711 (6th Cir. 2011) ................................................................................................2

*Harbison v. Little*,
    723 F. Supp. 2d 1032 (M.D. Tenn. 2010) ........................................................................4, 5

*Rosen v. Goetz*,
    410 F.3d 919 (6th Cir. 2005) ................................................................................................3

*United States v. Fruehauf*,
    365 U.S. 146 (1961) ..............................................................................................................2

**Statutes:**

42 U.S.C. § 1396a(a)(3) ..................................................................................................................8

**Other Authorities:**

Felix Frankfurter, *A Note on Advisory Opinions*,
    37 HARV. L. REV. 1002 (1924) ............................................................................................1

# INTRODUCTION

Plaintiffs' post-trial brief reads as two separate halves: The first focuses on the experiences of Plaintiffs and their class-member witnesses with TennCare; the second turns to discussing the legal issues certified by this Court. But Plaintiffs barely link the two. Plaintiffs bear the burden to connect the dots between the named Plaintiffs who testified and the issues the Court certified. And to attain injunctive relief for *any* issue, Plaintiffs must identify individuals likely to be harmed by the challenged practice in the future. Lawsuits are means to redress specific injuries, not vehicles for counsel to act as armchair administrators and work program-wide alterations within TennCare. Because Plaintiffs' claims are almost completely divorced from the experiences of actual TennCare members, they seek an advisory opinion on almost every certified issue, and this Court should not indulge them. In addition to being constitutionally proscribed, advisory opinions are "ghosts that slay" and regularly have long-term destructive effects. Felix Frankfurter, *A Note on Advisory Opinions*, 37 HARV. L. REV. 1002, 1008 (1924). It would be so here. Indeed, it is evident from the fact that Plaintiffs seek relief including (but not limited to) the unilateral reinstatement of hundreds of thousands of individuals (none of whom testified or presented evidence at trial), the repeal of several TennCare policies, and the imposition of a "qualified expert" to administer a "remedial plan" over important parts of the program, Pls.' Proposed Findings of Fact & Conclusions of Law ¶ 179, Doc. 405 (Mar. 8, 2024) ("Pls. Br."), that a destructive advisory opinion is *exactly* what Plaintiffs want. The inappropriate scope of the requested relief aside, the Court should not even reach the question because Plaintiffs have failed to prove liability on a single certified issue.

# ARGUMENT

**I. Plaintiffs Fail to Connect Their Due Process, Medicaid Act, and ADA Claims to Any Trial Evidence of Harm to an Individual.**

As a threshold matter, Plaintiffs offer very few proposed findings of fact about the named

Plaintiffs or class members. Rather, they discuss individual cases in a 25-page appendix of "Plaintiffs' Experiences." Plaintiffs do not cite to this appendix in the body of their brief and it should be disregarded.[1] And when they turn to legal argument, Plaintiffs connect almost *none* of the certified issues to the experience of any individual who testified at trial. That alone is fatal to their position on most issues in this case, for this Court is limited in the exercise of its powers to deciding "disputes with the 'clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument.' " *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 715 (6th Cir. 2011) (quoting *United States v. Fruehauf*, 365 U.S. 146, 157 (1961)). The certified issues lack that concreteness because Plaintiffs have not presented any evidence that any of them were injured by the TennCare policies they challenge.

*Provision of Fair Hearings*: Plaintiffs do not even attempt to argue, as this Court certified the issue, that "TennCare systematically fails to provide fair hearings at any time." *See* Def.'s Post-Trial Br. at 21, Doc. 404 (Mar. 8, 2024) ("State Br."). They do not cite a single individual's case in which a hearing was owed and was not provided and offer no rebuttal to the evidence showing that thousands of appeals go to hearing annually. *See* Holt Tr. 17:21–24, Doc. 395-1 (Jan. 5, 2024) (TennCare conducted 6,706 termination or redetermination appeals hearings in the relevant time period). Their only factual support rests entirely on the undisputed fact that TennCare closed 5,767 appeals when it determined those appeals did not present a valid factual dispute ("VFD"), but that cannot be a violation of the Medicaid Act and its implementing regulations because as explained below, TennCare's VFD Policy is entirely lawful and TennCare may close such appeals without a hearing.

---

[1] If Plaintiffs' *had* cited to the appendix, that would violate the Court's order limiting post-trial briefs to 50 pages (as Plaintiffs' counsel proposed), 11/20 Tr. 192:13–21, and would need to be stricken to prevent prejudice to TennCare, who abided by the page limit.

*Valid Factual Dispute Policy*: On the question of the lawfulness of TennCare's VFD policy, Plaintiffs' claims fare no better. Again, they are entirely academic because Plaintiffs submitted no evidence at trial that any individual who was entitled to a hearing was denied one despite having presented TennCare with a valid factual dispute. The two examples Plaintiffs point to are the cases of Samantha Turner, Pls. Br. ¶ 53, who failed to return an additional information notice when it was sent to her, State Br. ¶ 945, and Carlissa Caudill, Pls. Br. ¶ 54, who *never* told TennCare that she was still receiving SSI (which would have established a valid factual dispute), State Br. ¶ 936. Lacking a concrete example of the VFD policy being applied to foreclose any potentially meritorious appeal, Plaintiffs mount essentially a "facial challenge" to the policy, but the policy has already been upheld. *See Rosen v. Goetz*, 410 F.3d 919, 927–29, 933 (6th Cir. 2005). Without reference to any actual *application* of the policy that might distinguish *Rosen*, Plaintiffs are left with the policy itself, which they mischaracterize by claiming that TennCare treats "its VFD Policy [as] *itself* a 'state law describing the requirements of eligibility.' " Pls. Br. ¶ 143. This is false— the VFD policy is not a requirement of eligibility but, as the State has repeatedly explained, a way of weeding out challenges that are contrary to the actual rules of eligibility. *See* State Br. at 22. Nothing requires TennCare to hold a hearing in such a case. *See id.* at 23–24.

*The Good Cause Exception*: Plaintiffs claim that TennCare "arbitrarily denies good cause hearings," Pls. Br. at 38, but they do not cite a single case in which the lack of a good cause hearing hurt anyone. Furthermore, although they characterize "good cause" as an entitlement giving rise to a property interest, TennCare is not required to offer the exception *at all*, *see* State Br. at 26, and due process does not require a hearing before dismissing an appeal for failure to file on time, *see id.* at 25 (collecting cases). The Court also certified the question of "whether TennCare's policy of denying good cause exceptions or hearings based on 'allegations of non-receipt' of a notice" is

3

lawful. *Id.* at 24. Plaintiffs do not make any argument as to this issue and have abandoned it. *See Harbison v. Little*, 723 F. Supp. 2d 1032, 1038–39 (M.D. Tenn. 2010) (collecting cases stating that arguments not included in post-trial brief are deemed abandoned).

*Hearings Within 90 Days*: Plaintiffs have attempted to change this certified issue, arguing that TennCare fails to take "final action within 90 days of an appeal," Pls. Br. ¶ 150, when the court certified the question of whether TennCare is required to and provides hearings "within 90 days of an appeal," State Br. at 28. Plaintiffs made no attempt to change the certified issue prior to trial and it is inappropriate to do so now. In any event, Plaintiffs again do not have *any* evidence from trial of any individual being harmed by TennCare's process for prioritizing the appeals to send to hearing within 90 days. Though they complain that Michael Hill experienced a delay in resolving his appeal, Pls. Br. ¶ 58, it is undisputed that Hill maintained his coverage during the pendency of his appeal, Jt. Stips. ¶ 207, and so he was by definition unharmed by the delay.

Lacking concrete examples, Plaintiffs claim TennCare fails to resolve appeals within 90 days "in 47.8% of cases." Pls. Br. ¶¶ 23, 150. This is false; the portion of Holt's testimony on which Plaintiffs' rely for that figure establishes that between March 19, 2019, and October 31, 2022, TennCare did not resolve 3,206 appeals out of the 88,604 that were timely filed within 90 days, for a rate of only *3.6%*. *See* Holt Tr. 17:11–16; 21:22–22:12. Plaintiffs reach their contrary and misleading figure by mistakenly using only the appeals that proceeded to hearing (excluding those that were resolved, closed for lack of a valid factual dispute, or withdrawn prior to hearing) as their denominator. *See* Pls. Br. ¶ 58.

*Former NOD Stock Citation*: Plaintiffs only make a passing legal argument regarding TennCare's former use of the same citation in all NODs, limited merely to citing the (unenforceable through Section 1983) regulation that requires citation of "the specific regulations [that]

support[] the action." Pls. Br. ¶ 130 (citing 42 C.F.R. § 431.210). They make no argument as to how the old citation failed that standard (or violated due process, an issue they do not raise at all and have abandoned). *See Harbison*, 723 F. Supp. 2d at 1038–39. Nor do they cite any evidence that the former citation misled any individual to their detriment, nor could they, as they presented no evidence from any current or former TennCare member on this issue.

*Former Language Describing VFD Process*: Plaintiffs make even less of an argument regarding the language TennCare formerly used in some NODs regarding the VFD policy. Plaintiffs claim that both the former and the current language (which is not an issue that has been certified for class resolution) "makes it unduly difficult for members to know whether they might satisfy TennCare's VFD Policy," *id.* ¶ 136, but they tellingly do not cite *any* evidence from trial of actual confusion by any TennCare enrollee due to either the current or former language.

*NOD Language About Considering Eligibility*: All Plaintiffs say about this certified issue is that TennCare's representation in its notices about evaluating members for all categories of eligibility is "false." *Id.* ¶ 134. The uncontroverted evidence at trial proves otherwise. *See* State Br. at 35. That TennCare has occasionally made (and corrected) errors does not render its statement that it checks for eligibility "in each kind of group we have" false or misleading. *Id.* Moreover, Plaintiffs cite to no evidence that *anyone* detrimentally relied on this statement. While Plaintiffs state that Guyton received notices with assurances that TennCare considered her son for all categories of eligibility, Pls. Br. ¶ 22, Guyton did not testify that she was misled by this statement in any way, and her son never lost coverage so was never a class member in any event.

*NODs' Omission of Explanation About Irrelevant Categories*: Plaintiffs claim that the NODs do not fully apprise members of the factual bases for ineligibility determinations, Pls. Br. ¶ 133, making it "difficult or impossible" for "individuals like Noe, Gavigan, Monroe, and

5

Guyton" to understand their eligibility determinations, *id.* ¶ 18. But the trial testimony cited for each of these individuals does not support Plaintiffs' alleged injury. For Guyton, the cited testimony explained that she was not informed there was worker error on her son's case, which would not appear in an NOD and is unrelated to whether the NOD made it difficult for her to understand her son's eligibility determination. 11/14 Tr. 104:16–20, 106:5–22. For Noe, Plaintiffs argue that she could not tell from the notices which category her brother was in, Pls. Br. ¶ 19, but she testified that she knew he qualified as a DAC, 11/15 Tr. 29:18–20. For Gavigan, Plaintiffs cite no testimony in which he stated it was difficult or impossible to understand his daughter's eligibility determination. Pls. Br. ¶ 20. Indeed, Gavigan testified that the notice accurately explained that his daughter's MSP coverage was ending because TennCare believe her income was over $1,288, which Gavigan knew was true. 11/14 Tr. 220:3–13. Finally, for Monroe, Plaintiffs cite no testimony at all, and their citations to the stipulations and various exhibits, Pls. Br. ¶ 21, do not demonstrate that the NODs' phrasing made it difficult or impossible for Monroe to understand his eligibility determination. Indeed, Monroe conceded that he cannot read his notices, Monroe Tr. 10:20–11:7, Doc. 401-1 (Jan. 8, 2024), so the contents of his NODs could not possibly mislead him. In any event, due process requires only that TennCare's NODs inform enrollees of the basis for their termination so they can prepare for an appeal hearing. State Br. at 38. TennCare does not include categories that are irrelevant to individuals so as not to confuse them and make it more difficult for them to prepare for an appeal hearing. *See id.* at 36–37. While Plaintiffs' counsel wants TennCare to specify more information, Plaintiffs fail to show that anything more is constitutionally or statutorily required.

*NODs' Omission of Information About 90-Day Reconsideration and Good Cause*: Plaintiffs again fail to identify a TennCare member harmed by the NODs' omission of language

6

about the 90-day reconsideration period or TennCare's good cause policy. Pls. Br. ¶ 135. They also cite no legal authority that such language is required, *see id.*, and none exists, State Br. at 37–39.

*TennCare's System for Granting Reasonable Accommodations*: While Plaintiffs claim that TennCare denied Monroe and Grace accommodations, Pls. Br. ¶ 164, that is false. As Plaintiffs' expert conceded, no member of the disability subclass was denied meaningful access to TennCare for failure to receive an accommodation. *See* State Br. at 44–45. Grace and Monroe's requests for more time were granted, as was Monroe's request for in-person assistance. *See id.* at 45.

*TennCare's Provision of In-Person Assistance*: Plaintiffs do not cite any evidence that identifies any person—let alone any witness or class representative—who asked for in-person assistance, did not receive it, and was denied meaningful access to TennCare as a result. Pls. Br. ¶¶ 115–124, 165. Plaintiffs also failed to show that any individual is likely to be harmed in the future. Thus, no Plaintiff has standing to seek injunctive relief. *See* State Br. at 46–47. The closest Plaintiffs come to arguing that an injury is likely to occur is to claim that Hagan testified that TennCare "will make mistakes in the future." Pls. Br. ¶ 73. This is misleading. Hagan's testimony was that no system created and operated by humans—especially a complex system such as TennCare—could possibly be completely error-free. 11/20 Tr. 143:4–24. The evidence at trial demonstrated time and time again that when TennCare identifies discrete errors, it promptly corrects them. *See, e.g.*, State Br. at 20. Plaintiffs cannot show, from the mere admission that *some* mistakes are inevitable in a program like TennCare, that either they or any other individual TennCare enrollee is likely to experience the specific mistakes at issue here in the future. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).[2]

---

[2] Plaintiffs also err in saying that TennCare only corrected errors from the conversion of data into TEDS for individual trial witnesses. Pls. Br. ¶ 22. Hagan stated that if TennCare finds an error, it investigates whether others were impacted and makes corrections. 11/17 Tr. 70:11–15.

## II. Plaintiffs' Remaining Arguments Are Flawed.

Because space precludes addressing each argument, the State focuses on correcting a few key errors here. *First*, Plaintiffs cannot enforce the Medicaid regulations through Section 1983. Despite claiming that "TennCare must comply with the Medicaid Act and its implementing regulations" and listing various times that TennCare allegedly failed to do so, *e.g.*, Pls. Br. ¶¶ 14, 83, 126, Plaintiffs cite no cases holding that the implementing regulations are enforceable through Section 1983. TennCare's wealth of binding precedent shows they emphatically are not. *See* State Br. at 28–29 (collecting authorities). Rights enforceable through Section 1983 must be found in a statute, and that statute must confer the right clearly and unambiguously. *See, e.g.*, *Caswell v. City of Detroit Hous. Comm'n*, 418 F.3d 615, 619 (6th Cir. 2005). The only statute Plaintiffs cite to support *all* their Medicaid Act claims is the fair hearing provision of 42 U.S.C. § 1396a(a)(3), but that provision does not unambiguously create a right to *anything* Plaintiffs seek. That provision states only that TennCare must provide fair hearings to anyone whose claim for coverage "is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3). It thus cannot be used to enforce more specific requirements in the regulations as Plaintiffs seek to do. *See, e.g.*, Pls. Br. ¶ 130 (notice stating specific reasons for the action being taken), *id.* ¶ 133 (notice apprising members of basis for ineligibility), *id.* ¶ 137 (listing appeal rights in notice), *id.* ¶ 150 (appeals longer than 90 days), *id.* ¶ 151 (consider all bases of eligibility), *id.* ¶ 165 (in-person assistance).

*Second*, Plaintiffs are wrong to argue that TennCare fails to consider all categories of eligibility. Plaintiffs erroneously claim that TennCare failed to do so in certain cases involving SSI benefits, suggesting that TennCare "did not properly load special indicators for DAC and Widow/er data into TEDS leading to missed screenings for those categories" and "failed to reliably load data that affects consideration of three of TennCare's SSI Related categories: DAC, Widow/er, and

Pickle[.]" Pls. Br. ¶¶ 64–65; *see also id.* ¶¶ 21–22 (discussing Monroe and Guyton cases).

To the contrary, the evidence clearly established that these problems arose not from a policy of not checking all categories, but from discrete human errors, one-time conversion errors, and mistakes by the Social Security Administration, all of which were promptly fixed when TennCare discovered them. State Br. 47. The problem Guyton experienced with his Pickle eligibility resulted from worker error, not a failure of TEDS to systematically review him for all categories of eligibility. State Br. ¶ 929. Plaintiffs claim that Monroe was also "not properly evaluated for Pickle eligibility during redetermination nor through his appeal," Pls. Br. ¶ 70, but the only evidence Plaintiffs cite for that claim is the parties' joint stipulations and they do not support Plaintiffs' claim, Jt. Stips. ¶¶ 246, 267–69. As Hagan testified at trial, Monroe withdrew the appeal that raised the claim of Pickle eligibility and was subsequently determined (on a new application) to be eligible in that category, 11/20 Tr. 85:11–86:11.

Hill experienced an issue with his eligibility because data was wrongly converted from Interchange (TennCare's legacy eligibility system) into TEDS. 11/20 Tr. 135:10–136:3. This was a one-time error that will not repeat itself because conversion is over and the error has long since been corrected for Hill and all other similarly affected individuals. In any event, this incident does not show that Hill was not *reviewed* for all categories of eligibility, but rather that a data problem caused him to *appear* ineligible. *See id.* The same is true of the other mistakes regarding SSI eligibility experienced by Walker and Caudill that were discussed extensively at trial and are traceable not to a mistake on TennCare's part but to a mistake made by the Social Security Administration. *See* 11/17 Tr. 44:12–45:4, 94:6–109:9. It was never the case that TennCare did not *evaluate* them for all categories, but rather that they appeared ineligible due to bad data TennCare got from the federal government. That distinguishes this case from *Crippen v. Kheder*, 741 F.2d

9

102 (6th Cir. 1984), which Plaintiffs cite, because in *Crippen* it was the policy of the Michigan Medicaid program *not* to evaluate individuals who lost SSI for any non-SSI related category. *See id.* at 106–07. Here, Plaintiffs have not put forward any evidence that TennCare has a policy of not reviewing those with SSI-related eligibility for every category if they lose their SSI coverage. Plaintiffs' claim that "TennCare did not take other steps to stop this error from harming affected individuals, including monitoring coverage terminations, appeals, or applications after it became aware of the issue," Pls. Br. ¶ 72, is manifestly false, *see* State Br. at 20.

*Third*, Plaintiffs incorrectly argue that TennCare must make individualized inquiries into members' disabilities and that non-specific requests for accommodations are sufficient to trigger legal duties under the ADA. Pls. Br. ¶¶ 157–161. TennCare cites numerous binding cases to the contrary. *See* State Br. at 43–44. In any case, the only certified issue is *whether* TennCare has a system, and Plaintiffs' expert admits it does. *See id.* at 42.

*Fourth*, the Court should not consider any of Plaintiffs' arguments about injunctive relief. Pls. Br. at 44–50. The Court called discussions about injunctive relief "premature" at trial and deferred consideration of evidence about any such relief until it determined liability on the certified issues. 11/16 Tr. 238:6–14. The plan Plaintiffs submit includes mass re-enrollment in TennCare and the creation of a de facto conservatorship of a federally-approved Medicaid program. Plaintiffs seek an unprecedented remedy that would cost Tennessee billions.

## CONCLUSION

TennCare is entitled to judgment on every certified issue. To the extent the Court disagrees, no injunctive relief can be awarded to Plaintiffs until TennCare has been given the opportunity to put on evidence about the costs of such relief.

| April 8, 2024 | Respectfully submitted, |
|---|---|
| Jonathan Skrmetti<br>Attorney General and Reporter<br>Meredith Bowen TN BPR #34044<br>Assistant Attorney General<br>Matthew Dykstra TN BPR #38237<br>OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 20207<br>Nashville, TN 37202<br>(615) 741-1366<br>meredith.bowen@ag.tn.gov | /s/ Michael W. Kirk<br>Michael W. Kirk*<br>Nicole J. Moss*<br>William V. Bergstrom*<br>Kate Hardiman*<br>COOPER & KIRK, PLLC<br>1523 New Hampshire Avenue, NW<br>Washington, D.C. 20036<br>(202) 220-9600<br>mkirk@cooperkirk.com<br>nmoss@cooperkirk.com<br>*Appearing *pro hac vice* |

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 8th day of April, 2024, a true and exact copy of the foregoing has been forwarded by the Court's Electronic Filing System to:

| | |
|---|---|
| Gordon Bonnyman, Jr.<br>Brant Harrell<br>Michele M. Johnson<br>Madeline Wiseman<br>TENNESSEE JUSTICE CENTER<br>155 Lafayette Street<br>Nashville, TN 37210 | Elizabeth Edwards<br>Sarah Grusin<br>Jane Perkins<br>NATIONAL HEALTH LAW CENTER<br>200 N. Greensboro St., Ste. D-13<br>Carrboro, NC 27510 |
| Jennifer M. Selendy<br>Faith E. Gay<br>Andrew R. Dunlap<br>Babak Ghafarzade<br>David Coon<br>SELENDY & GAY PLLC<br>1290 Avenue of the Americas<br>New York, NY 10104 | Gregory Lee Bass<br>NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE<br>275 Seventh Avenue, Suite 1506<br>New York, NY 10001 |

                                            /s/ Michael W. Kirk
                                              Michael W. Kirk