**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| A.M.C., by her next friend, C.D.C., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHEN SMITH, in his official capacity as Deputy Commissioner of Finance and Administration and Director of the Division of TennCare, <br><br> Defendant. | Civil Action No. 3:20-cv-00240 <br> District Judge Crenshaw <br> Magistrate Judge Newbern |

**MEMORANDUM OF LAW
<u>IN SUPPORT OF DEFENDANT'S MOTION TO DECERTIFY CLASS ACTION</u>**

| | |
|---|---|
| Jonathan Skrmetti <br> Attorney General and Reporter <br><br> Meredith W. Bowen, TN BPR #34044 <br> Assistant Attorney General <br> OFFICE OF THE ATTORNEY GENERAL <br> P.O. Box 20207 <br> Nashville, TN 37202-0207 <br> (615) 741-1366 <br> (615) 741-8726 <br> meredith.bowen@ag.tn.gov | Michael W. Kirk* <br> Nicole J. Moss* <br> William V. Bergstrom* <br> Athanasia O. Livas** <br> COOPER & KIRK, PLLC <br> 1523 New Hampshire Avenue, NW <br> Washington, D.C. 20036 <br> (202) 220-9600 <br> mkirk@cooperkirk.com <br> nmoss@cooperkirk.com <br> wbergstrom@cooperkirk.com <br> alivas@cooperkirk.com <br><br> *Appearing *pro hac vice* <br> **Application for *pro hac vice* admission pending <br><br> *Counsel for the Defendant* |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................ 2

LEGAL STANDARD ..................................................................................................... 5

ARGUMENT ................................................................................................................. 6

    I.      En Banc Sixth Circuit's Decision in *Speerly v. General Motors* Clarified the Standard for Determining Commonality Under Rule 23(a) ......................................................... 6

    II.    Under a Straightforward Application of *Speerly*, Plaintiffs' Class Must Be Decertified .............................................................................................................. 10

        A.    The Plaintiffs and the Court Failed to Analyze Commonality Through the Lens of the Elements of Plaintiffs' Claims. ......................................................... 10

        B.    None of the Certified Issues Satisfy *Speerly*'s Requirements. ........................... 12

CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Anderson v. City of Blue Ash*,
    798 F.3d 338 (6th Cir. 2015) .......................................................................12

*Barney v. Holzer Clinic, Ltd.*,
    110 F.3d 1207 (6th Cir. 1997) .....................................................................5

*Binta B. ex rel. S.A. v. Gordon*,
    710 F.3d 608 (6th Cir. 2013) .......................................................................5

*G.E. v. Williamson Cnty. Bd. of Educ.*,
    731 F. Supp. 3d 954 (M.D. Tenn. 2024)....................................................11

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)................................................................................1, 6

*Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*,
    542 F.3d 529 (6th Cir. 2008) .....................................................................10

*In re Polyurethane Foam Antitrust Litigation*,
    No. 1:10 MD 2196, 2015 WL 4459636 (N.D. Ohio July 21, 2015).................6

*Novak v. Federspiel*,
    140 F.4th 815 (6th Cir. 2025) .....................................................................11

*Parham v. J.R.*,
    442 U.S. 584 (1979)..................................................................................15

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
    646 F.3d 347 (6th Cir. 2011) .......................................................................5

*Reed v. Goertz*,
    598 U.S. 230 (2023)..................................................................................11

*Rosen v. Goetz*,
    410 F.3d 919 (6th Cir. 2005) .....................................................................17

*Sherwood v. Marchiori*,
    76 F.4th 688 (6th Cir. 2023) ......................................................................11

*Speerly v. General Motors*,
    143 F.4th 306 (6th Cir. 2025) ...........................................1, 2, 6, 7, 8, 9, 12, 13, 14, 16, 17

*Sutton v. Hopkins Cty.*,
    No. 4:03-cv-003, 2007 WL 119892 (W.D. Ky. Jan. 11, 2007) .........................5

*Whitlock v. FSL Mgmt., LLC*,
    843 F.3d 1084 (6th Cir. 2016) .....................................................................1

**Statutes**

42 U.S.C.
    § 1396a(a)(3)............................................................................................11

Fᴇᴅ. R. Cɪᴠ. P.

23(a)(2) ...................................................................................................................7

23(c)(1)(C) ............................................................................................................5

Case 3:20-cv-00240    Document 432    Filed 09/09/25    Page 4 of 24 PageID #: 25195

# INTRODUCTION

The Supreme Court and the Sixth Circuit have long directed that courts should "monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1090 (6th Cir. 2016) (citation omitted); *see also id.* (noting a "duty" to decertify "where the requirements of class certification had not been met," even if the parties had reached a settlement agreement) ; *see Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation."). In its recent decision in *Speerly v. General Motors*, the en banc Sixth Circuit decertified a class of individuals who had all purchased GM cars with the same, allegedly defective, transmission, explaining that although they had that in common, they did not have the requisite "commonality" under Rule 23(a) to litigate as a class. 143 F.4th 306, 316 (6th Cir. 2025) (en banc). *Speerly* is on all fours with this case and requires this Court, consistent with its obligation to monitor the appropriateness of class certification throughout the proceedings, to decertify the class because neither the Plaintiff Class nor the Disability Subclass have the requisite commonality required to sustain a class action.

Decertification is necessary for several reasons. *Speerly* held that to establish the commonality required to sustain a class action, plaintiffs must pose a common question (or questions) answerable with a "yes" or "no" as to *every* member of the class. *Id.* at 316–19. And it is not enough that there is some generally phrased question that is applicable to the entire class. *Id.* at 320. "A common question must 'resolve an issue that is central to the validity of each one of the claims.'" *Id.* at 317 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Determining whether that is the case requires each cause of action asserted by purported class

1

plaintiffs to be evaluated individually and for each case of action to be broken down by its elements to determine whether plaintiffs have shown common questions that "'affect at least one element' of all … claims." *Id.* at 317. And that question must be answerable with common evidence for all members of the purported class. *Id.*

None of the certified questions on which this Court found liability meet *Speerly*'s "stringent requirements." *Id.* at 315. Under a straightforward application of the Sixth Circuit's recent en banc decision in *Speerly*, Plaintiffs' class must be decertified.

## BACKGROUND

Three years ago, this Court certified a Plaintiff Class comprising "'all individuals who, since March 19, 2019, have been or will be disenrolled from TennCare, excluding individuals, and the parents and legal guardians of individuals, who requested withdrawal from TennCare.'" Mem. Op. & Order at 40, Doc. 234 (Aug. 9, 2022) ("Class Cert. Op."). It also certified a "Disability Subclass" that included "Plaintiff Class members who are 'qualified individuals with a disability' as defined in 42 U.S.C. § 12131(2)." Class Cert. Op. at 40. The Class, the Court held, was suitable for litigating Plaintiffs' claims under 42 U.S.C. § 1396a(a)(3) of the Medicaid Act, the Due Process Clause of the Fourteenth Amendment, and (in the case of the Disability Subclass) Title II of the Americans with Disabilities Act. *See* Pls.' Am. Compl. at 122–26, Doc. 202 (May 5, 2022).

The State opposed class certification on the grounds that Plaintiffs "proposed a class definition that would require an individualized merits determination" and thereby "create[d] an impermissible fail-safe class," and that the proposed class and subclass failed the commonality, typicality, and adequacy of representation requirements of Federal Rule of Civil Procedure 23(a). Def's Resp. in Opp'n to Pls.' Mot. for Class Certification 1–2, Doc. 164 (Jan. 4, 2022). Notably, the State argued that "Plaintiffs' complaint alleges a collection of varied, random, and often contradictory injuries that are not—and, indeed, could not be—the result of systemic policies, but

2

must, by virtue of their random and contradictory nature, reflect random and isolated mistakes." *Id.* at 11. "[P]laintiffs allege having experienced different difficulties during different segments of a single bureaucratic process" and rely upon an argument which "confuses a class whose members have received the same form letter notice and a class whose members have received individualized notices generated using a template." *Id.* at 12–13. Defendant further noted that Plaintiffs had failed to establish that Defendant "acted on grounds that appl[ied] generally to the [proposed] class," to seek indivisible injunctive relief, to request relief that would be administratively feasible to provide, and to propose a class with the cohesion required under a Rule 23(b)(2) class. *Id.* at 19.

In overruling the State's objections and certifying the Plaintiff Class, this Court held that "Plaintiffs' claims depend on common contentions capable of classwide resolution." Class Cert. Op. at 12. Specifically, it certified 15 questions as "common" to the class and capable of class-wide resolution:

1. Whether the State considers all categories and bases of eligibility before terminating enrollees' coverage.
2. Whether the notices of decision (NODs) mislead recipients to think that TennCare considers all bases of eligibility, all program rules, and all facts in determining eligibility.
3. Whether the NODs' citation to a 95-page compendium of TennCare regulations, Chapter 1200-13-20, satisfies the notice requirement of 42 U.S.C. § 1396a(a)(3) or the Due Process Clause.
4. Whether the NODs' omission of an explanation why recipients do not qualify for every other Medicaid category violates 42 U.S.C. § 1396a(a)(3) or the Due Process Clause.
5. Whether Defendant lacks any system to grant requests for reasonable accommodations for disabled persons navigating TennCare.
6. Whether the NODs' omission of information concerning the good cause exception and good cause hearings violates the Medicaid Act or the Due Process Clause.
7. Whether the NODs' omission of information about the 90-day reconsideration period violates the Medicaid Act or the Due Process Clause.
8. Whether the NODs' language instructing class members to describe the reasons they want to appeal and facts supporting their appeal violates the Medicaid Act or Due Process Clause.

3

9. Whether the State's valid factual dispute policy violates the Medicaid Act or the Due Process Clause.
10. Whether the prior use of language, in some NODs, telling recipients they could only get a hearing if they thought TennCare made a "mistake about a fact" violated the Medicaid Act or the Due Process clause.
11. Whether the State's policy of denying good cause exceptions or hearings based on "allegations of non-receipt" of a notice violates the Medicaid Act or the Due Process Clause.
12. Whether the State systematically fails to provide fair hearings at any time.
13. Whether the State is required to provide fair hearings within 90 days of an appeal and, if so, whether it fails to do so.
14. Whether the State provides adequate "in-person assistance" for disabled persons and, if not, whether that violates the ADA.
15. Whether the State fails to evaluate disability related eligibility categories in making termination decisions and, if so, whether that violates the ADA.

Mem. Op., Doc. 412, at 4–5 (Aug. 26, 2024) (cleaned up). The Court also certified these questions in the past tense. *Id.*

Following a bench trial, this Court "resolve[d] Certified Issues 1, 2, 3, 4 [sic], 6, 7, 9, 11, 12, and 15, at least in part, in Plaintiffs' favor." *Id* at 6; *but see id.* at ¶ 551 (Certified Issue 4 "asks whether TennCare is obligated to explain why an individual *does not* qualify under every eligibility category, of which there are over 40. On this point, Plaintiffs offer no argument, and therefore have not established a violation of the Medicaid Act or Due Process Clause by a preponderance of the evidence."). It concluded that "TennCare violated the ADA" in its approach to considering enrollees' categories and bases of eligibility before terminating coverage. *Id.* at 88–92. It also found that TennCare's disclosures were "flat[ly] untrue and inherently misleading," *id.* at 93, and that TennCare's reliance on the Stock Citation violated TennCare's obligations under the Due Process Clause and the Medicaid Act, *id.* at 96. Likewise, the Court concluded that TennCare's Notice of Decision omitted information about the good cause exception and the 90-day reconsideration period, in violation of the Due Process Clause, *id.* at 98–102, and that the Valid Factual Dispute Policy "as enforced violates the Medicaid Act and Due Process Clause," *id.* at

4

107. Finally, the Court concluded that TennCare's denial of good-cause exceptions or hearings based on enrollee non-receipt violated the Due Process Clause. *Id.* at 111. On "all other Certified Issues and subparts of Certified Issues – the Court conclude[d] that Plaintiffs have not met their burden on issues of either fact or law." *Id.* at 7.

This Court later clarified that "[n]either the Memorandum Opinion nor the Order entered on August 26, 2024, (Doc. No. 412 and Doc. No. 413) are final judgments," and that "the Court retains jurisdiction of this case . . . until the Court enters a final judgment in this matter." Agreed Order Granting Mot. to Alter or Amend J. at 1, Doc. No. 416.

## LEGAL STANDARD

District courts have a "continuing obligation to ensure that the class certification requirements are met." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011); *see also Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 618 (6th Cir. 2013) ("[A] district court's responsibilities with respect to Rule 23(a) do not end once the class is certified."). Thus, the Federal Rules provide that "[a]n order that grants or denies class certification may be altered or amended before final judgment." FED. R. CIV. P. 23(c)(1)(C).

If it becomes clear that one or more of the Rule 23(a) prerequisites to class certification is no longer satisfied, the Court must decertify the class. *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997) ("[A]s long as the court retains jurisdiction over the case 'it must continue carefully to scrutinize the adequacy of representation and withdraw certification if such representation is not furnished.'") (citation omitted); *see also Sutton v. Hopkins Cty.*, No. 4:03-cv-003, 2007 WL 119892, at *2 (W.D. Ky. Jan. 11, 2007) ("[T]he district court is charged with the *duty* of monitoring its class decisions in light of the evidentiary development of the case [and] *must* define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts") (citations and quotation marks omitted) (emphases added) (internal

5

quotation marks and citations omitted). In particular, "developments in the . . . substantive or procedural law . . . necessitate reconsideration of the earlier order and the granting or denial of certification or redefinition of the class." *In re Polyurethane Foam Antitrust Litigation*, No. 1:10 MD 2196, 2015 WL 4459636, at *2 (N.D. Ohio July 21, 2015) (quotations omitted).

The Supreme Court has required district courts to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *Falcon,* 457 U.S. at 161. After all, the "exponential aggregation of parties" into a class action "magnifies the stakes of litigation, bypasses our tradition of litigation by 'individual named parties only.'" *Speerly*, 143 F.4th at 315. (internal quotation marks and citations omitted). Critically for this case, in order for class actions to be permissible, the class must have "commonality," meaning that it must raise a "common question [that] 'resolve[s] an issue that is central to the validity of each one of the claims'" at issue. *Id.* at 317.

Thus, "Civil Rule 23 imposes stringent requirements before permitting the aggregation of so many claims by so many people in one court." *Id.* at 315–316. A plaintiff seeking class certification "must show that it is so numerous that joinder is impracticable," *id.* at 316. (quotation marks omitted), that "questions of law or fact [are] common" to the class, *id.* (quotation marks omitted), that "the named plaintiffs' claims or defenses [are] typical of those of the unnamed class members," *id.* (quotation marks omitted), and that "they will fairly and adequately protect class interests," *id.* (quotation marks omitted).

## ARGUMENT

I. **The En Banc Sixth Circuit's Decision in *Speerly v. General Motors* Clarified the Standard for Determining Commonality Under Rule 23(a).**

In *Speerly*, the en banc Sixth Circuit reviewed a district court decision certifying a class of "roughly 800,000 individual car buyers" who asserted that their General Motors cars contained a

defective transmission with "two alleged problems. It led some GM cars occasionally to shudder, and it led some GM cars occasionally to lurch." 143 F.4th at 312. The plaintiffs alleged that these defects were actionable under "a range of state common law and statutory theories: express warranty, implied warranty, consumer protection laws, and fraudulent omission." *Id.* But because the class did not satisfy "the rigorous requirements for handling all of these cases in one district court," the Sixth Circuit "vacate[d] the class-certification order." *Id.*

In so doing, *Speerly* clarified the standard for determining whether a plaintiff class has the requisite commonality to satisfy Rule 23. *See* FED. R. CIV. P. 23(a)(2). The Sixth Circuit stressed that, "to be common, [t]he decisionmaker must be able to resolve [a] question with a yes-or-no answer for the class in one stroke." 143 F.4th at 316 (internal quotation marks omitted). "If a reasonable decisionmaker left with the evidence may answer 'yes' to a question for some class members and 'no' for others, the class has not shown that it is common." *Id.* Moreover, "[a] question is not common if the answer requires 'evidence that varies from member to member.'" *Id.* at 318 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)); *see also id.* at 319 ("And the plaintiffs must prove that common evidence would yield a common answer; they cannot ignore the individualized inquiries that might occur with respect to the allegedly 'common' question.").

And even if each of those significant hurdles is overcome, and a class raises a question that is susceptible to a class-wide, yes-or-no common answer that can be gleaned from common evidence, "not every question with a common answer meets Rule 23(a)." *Id.* at 316. The question may not be drawn at too high a level of generality, "[e]lse, the fact that every customer sued GM about a GM car would create a common question suitable for class certification." *Id.* To avoid accepting too general a framing, class certification is only permissible if the question that is

common to the class "affects at least one disputed *element* of the class's claims." *Id.* (cleaned up) (emphasis added). Thus, to properly conduct the required "rigorous analysis," *id.* at 316, *Speerly* requires that "the court must walk through each cause of action, identify the relevant elements, and evaluate which elements, if any, submit to common answers," *id* at 316–17. (internal quotation marks omitted). *Speerly* was emphatic about "the imperative of an element-driven analysis," *id.* at 318, and the necessity that, "plaintiffs must tie th[e] debated question to the relevant elements of th[e] claim; they cannot simply ask whether a 'defect' exists in the abstract." *Id.* at 319 (internal quotation marks omitted).

Applying this standard to the certified class of GM customers before it, the en banc Sixth Circuit determined that the district court's analysis "d[id] not suffice." *Id.* at 318. "The district court reasoned that 'three readily discernible common questions that are crucial to the pleaded causes of action exist: whether the transmissions have shift and shudder defects; whether GM knew about them; and whether the defects are material.'" *Id.* "Every claim, [the district court] pointed out, 'demand[s] proof of a defect in the vehicles' transmission design.'" *Id.* And "because the [district] court determined that these questions lend themselves to a common answer and feature 'prominently in the disposition of the case,' it found commonality satisfied." *Id.*

Yet *Speerly* concluded that these shared issues were insufficient to establish commonality and vacated the certification order. It explained: "A court may not simply ask whether generalized questions yield a common answer. That would undermine the bedrock principle that courts must identify common questions with respect to concrete elements of each claim. By hitching all 59 claims to a question about 'defect' in the abstract, the court overlooked how significant differences across each cause of action raise serious commonality concerns." *Id.* Instead, "[b]ecause 'defect' bears different legal meanings for different causes of action, the class needs to explain how and

8

why class-wide proof of each alleged fault in the transmission resolves a material component of each cause of action." *Id.* at 320. It matters not, the en banc Sixth Circuit explained, that "the court may answer whether a 'defect' exists in each transmission in one stroke," *id.* at 318, because "that is not necessarily so in the context of the relevant elements of each claim." *Id.*

Broadly speaking, *Speerly* significantly raises the required showing for certifying a class action in this Circuit. Several rules emerge: First, a common question must be answerable with a "yes" or "no" as to every plaintiff's claim. Second, assuming such a common question exists, it must be answerable with the same *evidence* as well. Third, alleged "defects" or "errors" may not be asserted at a high level of generality which, by definition, apply to the entire class. Fourth, each separate cause of action must be evaluated individually, and the district court must determine whether plaintiffs have shown commonality as to an *element* of each claim.

"The problem is one of process. By choosing to resolve the commonality question at the level of generality of a 'defect,' the court d[oes] not measure the question's impact on each cause of action." *Id.* at 320. "Otherwise, the word 'defect' becomes a chameleon for every cause of action, no matter how differently state law gauges the point, no matter how differently each alleged fault manifests." *Id.*

*Speerly*'s framework applies fully to this case and as explained below, the Plaintiff Class and Disability Subclass have not come close to meeting it.

II.    **Under a Straightforward Application of *Speerly*, Plaintiffs' Class Must Be Decertified.**

As in *Speerly*, this Court must order the decertification of the Plaintiff Class and the Disability Subclass. Not *one* of the questions certified by this Court for class litigation and on which it found liability meets *Speerly*'s rigorous requirements.

### A.  The Plaintiffs and the Court Failed to Analyze Commonality Through the Lens of the Elements of Plaintiffs' Claims.

As in *Speerly*, the problems in this case stem in part from a process issue. Neither Plaintiffs in arguing for class certification, nor the Court in granting it, conducted the sort of claim-by-claim analysis required by *Speerly* to determine what the elements of each of Plaintiffs' claims were and what, if any, questions common to the whole class could be resolved with common evidence for every class member. Doing so now demonstrates that certification should not have been granted.

Plaintiffs' first cause of action claims a violation of 42 U.S.C. § 1396a(a)(3), the "fair hearing" provision of the Medicaid Act. Doc. 202 at ¶¶ 495–97. As the State has argued in its motion to dismiss the Medicaid Act claim, filed contemporaneously with this motion, this provision is not individually enforceable under § 1983. If this Court grants that motion, it need not consider the Medicaid Act elements at all. But if the Court does consider this claim still viable, it has two elements: "(1) [a] deprivation of a right secured by the Constitution or the laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). Here, meeting that first element would require Plaintiffs to show that TennCare failed to "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the

plan is denied or is not acted upon with reasonable promptness" on a class-wide basis. 42 U.S.C. § 1396a(a)(3).

Plaintiffs' second cause of action is an asserted violation of procedural due process. Doc. 202 at ¶¶ 498–500. "A procedural-due-process claim requires proof of the following two elements: '(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process.'" *Novak v. Federspiel*, 140 F.4th 815, 821 (6th Cir. 2025) (quoting *Reed v. Goertz*, 598 U.S. 230, 236 (2023)). A process is inadequate only if it fails to "offer meaningful redress for the particular injury suffered by the plaintiff." *Sherwood v. Marchiori*, 76 F.4th 688, 696 (6th Cir. 2023) (quoting *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1010 (7th Cir. 2017)). "Importantly, the Court has stated that a procedural due process claim 'is not completed when the deprivation occurs.' Rather, the claim is 'complete' only when 'the State fails to provide due process.'" *Reed*, 598 U.S. at 236.

Plaintiffs' final cause of action, relevant to the Disability Subclass, is a claim that TennCare violated Title II of the ADA. Doc. 202 at ¶¶ 501–09. "The Sixth Circuit … 'generally recognize[s] two methods for proving discrimination [under Title II]: intentional discrimination and failure to make reasonable accommodation." *G.E. v. Williamson Cnty. Bd. of Educ.*, 731 F. Supp. 3d 954, 982 (M.D. Tenn. 2024) (quoting *Marble v. Tenn.*, 767 F. App'x 647, 651 (6th Cir. 2019) (brackets in *G.E.*)). "To prevail on a failure-to-accommodate claim, a plaintiff must show that the defendant reasonably could have accommodated his disability but refused to do so, and that this failure to accommodate impeded his ability to participate in, or benefit from, the subject program." *G.E.*, 731 F. Supp. 3d at 992 (quoting *Knox Cnty. v. M.Q.*, 62 F.4th 978, 999 (6th Cir. 2023)). "To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being

11

excluded from participation in, denied the benefits of, or subject to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). Furthermore, "'the plaintiff must show that the discrimination was *intentionally* directed toward him or her in particular.'" *Id.* (citation omitted) (emphasis in original).

### B. None of the Certified Issues Satisfy *Speerly*'s Requirements.

This Court certified 15 issues for class litigation and Plaintiffs prevailed, at least in part, on nine of them. Not one of those issues was properly certifiable under *Speerly*. (Indeed, none of the issues that TennCare prevailed on were certifiable, but as the certifiability of those issues is now a moot point, TennCare confines its argument to the issues on which the Court found liability.)

*Certified Issues 1, 2 & 15.* These issues asked whether TennCare considers or considered all bases of eligibility (Issue 15 was limited to the disability-related categories) and whether its notices stating that it did so were misleading. *See* Doc. 412 at 4–5. The Court agreed with Plaintiffs that "TennCare's systems and policies, primarily TEDS, were flawed in myriad ways that resulted in TennCare functionally ignoring categories of eligibility." *Id.* at ¶ 529. But even that high level description reveals several problems demonstrating these issues are not appropriate for class-wide litigation under *Speerly*.

*First*, it violates *Speerly*'s instruction that "[a] question is not common if the answer requires evidence that varies from member to member" of the class. 143 F.4th at 318 (citation and quotation omitted). Here, there is no common evidence that demonstrates, on a classwide basis, that TennCare failed to consider all categories of eligibility, or even a common *way* in which TennCare failed to do so. Rather, in its liability opinion the Court found "myriad errors," *id.* at ¶ 532, a "litany of errors," *id.* at ¶ 531, "TEDS's systemic errors," and "TEDS's failings," *id.* at ¶¶ 540, 541, which convinced it to find in favor of Plaintiffs on these issues. These "errors" and

12

"failings" ranged from TEDS's "inability to load special indicators for DAC and Widow/er data into TEDS," (an error the Court recognized had been corrected in 2023), *id.* at ¶ 529, to TennCare's use of bad data it received from the Social Security Administration to assess eligibility in the SSI category (which it recognized had been corrected in 2020), *id.* at ¶¶ 60, 534, to instances of worker error in failing to account for relevant information provided by enrollees, *id.* at ¶ 530.

Not one of these errors apply to the whole class (indeed, for many class members, *none* apply). Take, for instance, the DAC issue. It impacted Plaintiffs Michael Hill and Kerry Vaughn, but not the other class representative with DAC eligibility, S.L.C. *See* DX109. Further, while Ms. Vaughn experienced this issue, it is stipulated that she never lost coverage, *see* Doc. 398 at ¶¶ 333-34, and thus isn't even a member of the class or subclass the Court certified. Similarly with the SSI-eligibility issue, the Court found it impacted Plaintiffs Caudill and Walker, Mem. Op. at ¶¶ 58-59, but it did not impact Plaintiffs S.K.A., A.M.C., J.S.K., J.C.K., M.K., G.R., or J.R., all of whom have SSI eligibility. *See* DX 109. Plaintiffs "cannot simply ask whether a 'defect' exists in the abstract" with TennCare's processes, and "they cannot ignore the individualized inquiries that might occur with respect to the allegedly 'common' question." *Speerly*, 143 F.4th at 319. But that is what has occurred here. The Court's analysis on Issues 1 and 15 essentially boils down to it asking the question, "Is or was TennCare flawed?" and answering that question yes. But *nothing* in the opinion suggests that there is a "common" answer across the whole class to the question "did TennCare consider all categories of eligibility" in an individual's case—indeed, in recognizing a "myriad" of different "defects" that impacted some but not all of the named Plaintiffs, the Court's opinion specifically *refutes* that idea.

Because there is no common answer to that question, there is no common answer to the related question, posed by Issue 2, of whether TennCare's notices are misleading because they

State that TennCare considered all categories of eligibility. The answer must be "it depends." Whether any given notice was misleading would depend on why the individual was being disenrolled; it would depend on which error an individual experienced, if any at all. For some class members, the notice stating that TennCare considers all bases of eligibility, all program rules, and all facts in determining eligibility was true; for other defects, such as when a worker fails to consider all information submitted as part of an eligibility redetermination, the notice might be misleading. That is fatal under *Speerly*.

*Second*, commonality on these issues is also impossible given the fact that, as the Court acknowledged, various identified errors were corrected years ago, *see, e.g.*, Doc. 412 at ¶¶ 533–34, but both the Class and the Subclass include people who were disenrolled *after* the errors were fixed. *See* Mem. Op., Doc. 412 at 4 (including in the certified Class individuals who "will be disenrolled" in the future). That means that the class as defined necessarily contains individuals who had their eligibility determined *before* identified issues were corrected *and after* they were fixed. The existence of "myriad defects" found by the Court cannot possibly give rise to a "common" issue to a class including people who were disenrolled *after* those defects were fixed. That would be like treating individuals who purchased GM vehicles after "[a] full redesign solved the problem when GM released a second generation of eight-speed transmissions for the 2022 model-year (and later) vehicles," *Speerly*, 143 F.4th at 314—and for all its faults, the district court that certified the class in *Speerly* never attempted that.

*Third*, these issues do not satisfy *Speerly*'s requirement that a common question must yield "a 'yes-or-no answer' [that] would resolve an element 'for the class in one stroke.'" *Speerly*, 143 F.4th at 318 (quoting *Doster v. Kendall*, 54 F.4th 398, 430–31 (6th Cir. 2022), *certiorari granted, judgment vacated as moot*, 144 S. Ct. 481 (2023)). The mere existence of "defects" in TennCare's

system writ large—even "myriad defects"—does not establish any single element of a due process, Medicaid Act, or ADA claim for every member of the Plaintiff Class or Disability Subclass. Indeed, even for the class members who *were* affected by one of the identified defects, the mere existence of a defect does not establish a due process violation; "inadequate state process" does not mean an "error free" process. *See Parham v. J.R.*, 442 U.S. 584, 612 (1979) ("That there may be risks of error in the process affords no rational predicate for holding unconstitutional an entire statutory and administrative scheme that is generally followed in more than 30 states."). Similarly, that TennCare made errors in eligibility determinations for certain categories, including disability-related categories, does not establish that it violated the Medicaid Act's "fair hearing provision" or that it deprived someone of benefits "because of their disability." The fact that Plaintiff Vaughn, who is a member of the Plaintiff Class and Disability Subclass, experienced errors but never lost eligibility, or the fact that Plaintiff Anders, who is a member of the Disability Subclass loss coverage for three months for reasons completely unrelated to her disability, *see* Doc. 389 at ¶¶ 128-46, demonstrates this fundamental point.

*Certified Issue 3.* This issue relates to whether TennCare's former citation, in adverse Notices of Decision, to a 95-page compendium of TennCare regulations satisfied the notice requirements of the Medicaid Act or the Due Process Clause. Doc. 412 at ¶ 542. This issue is not "common" to the class in a way that supports class certification. As with the other errors discussed so far, TennCare changed its notices in December 2022, Doc. 412 at ¶ 543, so this issue is not common to the class because there are class members who were disenrolled after that period who never received notices containing this complained-of citation. While Plaintiffs may well object to the State's correction of this issue defeating commonality, it is the Plaintiffs who sought to lump together in a single class individuals disenrolled both before and after TennCare made changes to

15

its programming and its notices. That they sought to certify a maximally broad class is not the State's fault. it is precisely the problem with this case.

*Certified Issues 6 & 7.* These issues deal with TennCare's "good cause policy" and "90-day reconsideration period," specifically the questions whether the omission of information regarding (for Issue 6) the good cause policy and good cause hearings and (for issue 7) the 90-day reconsideration period from the Notices of Decision violated the Medicaid Act and Due Process Clause. Doc. 412 at ¶ 552. The Court held that Plaintiffs abandoned this claim as it related to the Medicaid Act but held that due process required NODs to contain information about both. *Id.* Neither of these issues is an appropriate basis for class certification either. Taking them out of order, the Court should have dismissed Issue 7 based on the fact that, even after trial, there was *zero* evidence before it that *anyone* was harmed by the lack of reference to the 90-day reconsideration period. *See* Doc. 412 at ¶ 559 ("Plaintiffs offered substantially less evidence on Certified Issue 7. At trial, Certified Issue 7's only touchstones were stipulations that neither the Renewal Packets nor the NODs include information regarding the 90-day reconsideration period, and testimony that certain enrollees, including the **Kings**, received the Renewal Packets and NODs at issue."). If a question is to "resolve an issue that is central to the validity of each one of the claims," *Speerly*, 143 F.4th at 317 (quoting *Dukes*, 564 U.S. at 350), it plainly must be *relevant* to at least someone's claim. Based on the evidence presented at trial, this issue was not.

More fundamentally, neither Issue 6 or 7, even if answered in the affirmative, do not establish an element of a due process claim for *every* member of the class. Both of these issues are relevant only to members who, for whatever reason, may have missed a deadline under TennCare's policies and procedures. For the many class members who never missed a deadline, or were granted good cause or who submitted their Renewal Packets during the 90-day

16

reconsideration period, the omission of these provisions caused no deprivation of property whatsoever. Therefore, they cannot be "common" to the class.

*Certified Issues 9 & 12.* Certified Issue 9 asked whether the valid factual dispute policy violates or violated the Medicaid Act or Due Process Clause and Issue 12 asked whether TennCare "systematically fails/failed to provide fair hearings at any time." Doc. 412 at ¶ 565. Here again, these issues fail the *Speerly* metrics because a finding of "systematic[]" failure to provide a hearing "at any time" is at too high a level of generality—it does not even purport to make a finding that applies to each member of the Plaintiff Class. Many, for instance, never appealed at all. And others both appealed *and* had a hearing or had no hearing for a reason entirely separate from the valid factual dispute policy. At most, these policies affected individuals who appealed and had their appeal closed for lack of a valid factual dispute (though even in that case, the Court acknowledged that there are some applications of the policy that are valid). *See* Doc. 412 at ¶¶ 569–71 (recognizing that under the precedent established by *Rosen v. Goetz,* 410 F.3d 919, 926 (6th Cir. 2005) that there is no right to a hearing when an appellant is solely challenging "a State's legal or policy judgement" as opposed to "permissible challenges to the relevant facts or application of law to a given beneficiary."). The certification of a broad class comprising a varied group with disparate issues is inconsistent with *Speerly*. It is impossible to establish a "yes-or-no answer for the class in one stroke" to the question posed by these issues. *Speerly*, 143 F.4th at 316 (quotation and citation omitted).

Furthermore, even accepting for present purposes that TennCare's "implementation of the VFD Policy creates barriers to appellants who believe that the agency has taken an action erroneously and denies them the fair hearing they are due," *see* Doc. 412 at ¶ 574, finding that TennCare failed, in discrete cases, to properly recognize and send to hearing appeals that

17

challenged the application of fact to law does not establish that in every case (or even most cases) where the VFD policy was applied this was true and the implementation of the VFD policy violated the Medicaid Act or due process. For example, when the VFD policy is applied to deny a hearing to an appellant solely challenging a State policy—such as the decision to not expand Medicaid—consistent with both the Court's ruling and *Rosen* there is no violation of the Medicaid Act or Due Process. As this example demonstrates, because not all appeals involve the application of fact to law, the finding that there are issues with TennCare's implementation of the VFD Policy when it comes to recognizing appeals that are challenging the application of facts to law does not establish the existence or nonexistence of any element of a due process or Medicaid Act claim even for the subset of members of the class to whom the policy was applied without individually examining those members cases and determining what the issue was on appeal.

**Certified Issue 11.** This certified issue concerned "whether the State's policy of denying good cause exceptions or hearings based on allegations of non-receipt of a notice violates/violated the Medicaid Act or the Due Process Clause." Doc. 412 at 5. The Court held that TennCare was obligated, under due process, to afford "at a minimum, good cause hearings to enrollees who allege without additional evidence that they are entitled to a good cause exception because they did not receive their NOD." *Id.* at ¶ 581. Again, however, there are class members who *did* receive good cause, class members who were denied good cause but never alleged they failed to receive a notice, and there are class members who never needed a good cause exception because they met the deadlines in their cases. This issue is not amenable to class litigation because even assuming, as this Court held, that the policy established one element of a due process claim for *some* class members, it cannot have done so in a way that is applicable to the whole class as required by *Speerly*.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs' class action should be decertified.


Dated: September 9, 2025                    Respectfully submitted,

Jonathan Skrmetti                           /s/ Michael W. Kirk
Attorney General and Reporter               Michael W. Kirk*
Meredith W. Bowen, TN BPR #34044            Nicole J. Moss*
Assistant Attorney General                  William Bergstrom*
OFFICE OF THE ATTORNEY GENERAL              Athanasia O. Livas**
P.O. Box 20207                              COOPER & KIRK, PLLC
Nashville, TN 37202-0207                    1523 New Hampshire Avenue, NW
(615) 741-1366                              Washington, D.C. 20036
(615) 741-8726                              (202) 220-9600
meredith.bowen@ag.tn.gov                    mkirk@cooperkirk.com
                                            nmoss@cooperkirk.com
                                            wbergstrom@cooperkirk.com
                                            alivas@cooperkirk.com

                                            *Appearing *pro hac vice*
                                            **Application for *pro hac vice* admission
                                            pending


                                            *Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the Court's electronic filing system on this 9th day of September, 2025.

Gordon G. Bonnyman, Jr.
Robert B. Harrell, Sr.
Michele M. Johnson
Vanessa M. Zapata
TENNESSEE JUSTICE CENTER
211 7th Avenue N., Ste. 100
Nashville, TN 37219

Jennifer M. Selendy
Faith E. Gay
Andrew R. Dunlap
Babak Ghafarzade
David A. Coon
Alvaro M. Cureno
Amy Nemetz
Laura M. King
SELENDY & GAY PLLC
1290 Avenue of the Americas
New York, NY 10104

Jane Perkins
NATIONAL HEALTH LAW PROGRAM
200 N. Greensboro St., Ste. D-13
Carrboro, NC 27510

Elizabeth Edwards
Sarah Grusin
NATIONAL HEALTH LAW PROGRAM
1512 East Franklin St., Ste. 110
Chapel Hill, NC 27514

Gregory Lee Bass
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001

/s/ Michael W. Kirk
Michael W. Kirk

*Counsel for the Defendant*

20