# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| A.M.C., by her next friend, C.D.C., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:20-cv-00240 |
| | ) | |
| STEPHEN SMITH, in his official | ) | |
| capacity as Deputy Commissioner of | ) | |
| Finance and Administration and Director | ) | |
| of the Division of TennCare, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

At the trial of this class action, individuals testified about their experiences when they sought healthcare coverage through Tennessee's Medicaid Program ("TennCare"). That evidence proved that TennCare's policies and practices violated their rights under the Due Process Clause of the Fourteenth Amendment ("Due Process Clause"), Americans with Disabilities Act ("ADA") and Medicaid Act. (Doc. No. 412 at 1–2). The Court will determine the remedy for those violations after the parties present evidence during the remediation hearings.

Now before the Court are two motions by Stephen Smith, Director of TennCare. First, he cites the Supreme Court's decision in Medina v. Planned Parenthood S. Atl., 606 U.S. 357 (2025), to request reconsideration and dismissal of Plaintiffs' claim that TennCare violated 42 U.S.C. § 1396a(a)(3) of the Medicaid Act (the Fair Hearing requirement) because, as a matter of law, Plaintiffs do not have rights under § 1396a(a)(3) enforceable through 42 U.S.C. § 1983. (Doc. No. 433). Second, based upon the Sixth Circuit's decision in Speerly v. General Motors, 143 F.4th 306, 315 (6th Cir. 2025) (en banc), Smith argues that the Plaintiff Class and Disability Subclass

1

certified under Federal Rule of Civil Procedure 23(b)(2) no longer satisfy the "commonality" requirement under Rule 23(a), so both must be decertified. (Doc. No. 431). Those motions are fully briefed and ripe for decision. (Doc. Nos. 432, 434, 443, 444, 448 and 449).

## I.     Standard of Review

Smith seeks reconsideration under Federal Rule of Civil Procedure 54(b), which requires him to prove one of the following: (1) an intervening change of controlling law; (2) new evidence is available; or (3) a need to correct a clear error or prevent manifest injustice. BLC Lexington SNF, LLC v. Townsend, 171 F.4th 788, 796 (6th Cir. 2026). Smith invokes the "intervening change of controlling law" basis for his motion to dismiss and to decertify. (Doc. No. 431 at 1; Doc. No. 434 at 9).

In the motion to dismiss, Smith equivocates on whether Medina in fact established new law to determine when a statute creates rights enforceable under § 1983. (Doc. No. 448 at 1) ("But that Medina did not create a new test out of whole cloth means little."). Instead, Smith argues that reconsideration is required because Medina rejected prior Supreme Court precedents relied upon by the Sixth Circuit in Gean v. Hathaway, 330 F.3d 758 (6th Cir. 2003), which this Court followed to conclude that Plaintiffs had rights created in 42 U.S.C. § 1396a(a)(3) that are enforceable under § 1983. (Doc. No. 434 at 14). What Medina makes clear, according to Smith, is that the test to determine whether a statute creates rights enforceable through § 1983 is whether the statute has language that "clearly and unambiguously uses rights-creating terms" and "display[s] an unmistakable focus on individuals like the Plaintiff," as explained in Gonzaga Univ. v Doe, 536 U.S. 273, 284, 287, 290 (2002), and applied in Health & Hosp. Corp. of Marion Cnty v. Talevski, 599 U.S. 166, 183 (2023). For the reasons that follow, the Court holds that § 1396a(a)(3) does not

2

pass the <u>Gonzaga</u> test, therefore Plaintiffs' Medicaid Act claims are not enforceable under § 1983 and must be dismissed.

Smith's Rule 54(b) argument to support his motion to decertify Plaintiffs' two Rule 23(b)(2) classes is that Plaintiffs do not now satisfy the Rule 23(a) commonality requirement as explained and applied in <u>Speerly</u>. (Doc. No. 431 at 1). This is enough, Smith believes, to trigger Federal Rule of Civil Procedure 23(c)(1)(C) that authorizes this Court to alter or amend an order granting class certification before entry of a final judgment. (Doc. No. 432 at 10); <u>Rikes v. Proctor & Gamble Co.</u>, 799 F.3d 497, 521 (6th Cir. 2015) (quoting <u>Gen. Tel. Co. of SW v. Falcon</u>, 457 U.S. 147, 160 (1982)) ("Even after a certification order is entered, the judge remains free to modify it in . . . light of subsequent developments in the litigation."). As the Court considers Smith's arguments, it remains mindful that decertification is a "drastic step," 3 <u>Newberg and Rubenstein on Class Actions</u> § 7:37 (6th ed.) (citation omitted), because the parties have relied upon the certification to conduct discovery, proceed to trial and to engage in settlement. <u>Wilson v. Long</u>, 2018 WL 2722510, at *2 (M.D. Tenn. June 5, 2018). And the Rule 23(b) class certification is made only after a rigorous analysis of the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy. <u>Clippinger v. State Farm Auto. Ins. Co.</u>, 173 F.4th 817, 826 (6th Cir. 2026) (citation omitted).

Prior to trial, the Court certified two classes—"Plaintiff Class" and "Disability Subclass." (Doc. No. 234 at 40). The Court engaged in a vigorous Rule 23(b) analysis regarding TennCare policies and procedures that resulted in individuals losing TennCare coverage in violation of the Due Process Clause and the Medicaid Act. The "Plaintiff Class" consisted of individuals who "have been or will be disenrolled from TennCare," (<u>id.</u>), and the "Disability Subclass" applied to "Plaintiff Class members who are 'qualified individuals with a disability' as defined in 42 U.S.C.

3

§ 12131(2))," (id.).  For both classes, the Court then identified Certified Issues pursuant to Federal Rule of Civil Procedure 23(c)(4).  (Id. at 18).  Smith's motion to dismiss seeks reconsideration of Certified Issues based on the Medicaid Act – Certified Issues 1, 2, 3, 9 and 12.  (Doc. No. 234 at 7).  For the reasons that follow the motion to decertify will be denied.

**II.     Motion to Dismiss Medicaid Act Claims**

A.     The Legal Standard Before Medina

The Court's conclusion that Plaintiffs could enforce their rights in § 1396a(a)(3) through § 1983 was based on the Sixth Circuit published precedent in Gean v. Hattaway, 330 F.3d 758 (6th Cir. 2003).  (See Doc. No. 412 at ¶ 547).  In Gean, the Sixth Circuit expressly concluded that § 1396a(a)(3) creates an enforceable right under § 1983.  Gean, 330 F.3d at 772–73.  Section 1396a(a)(3) requires States to provide "an opportunity for a fair hearing . . . to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness."  42 U.S.C. § 1396a(a)(3).  The Appeals Court reasoned:

> . . . (1) the Medicaid Act imposes a "binding obligation," Livadas v. Bradshaw, 512 U.S. 107, 132–33 [] (1994), on a provider; (2) the binding obligation is "intended to benefit [a] putative plaintiff," Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 509 [] (1990); and (3) the obligation is neither a mere statement of "congressional preference" for certain conduct nor an interest "too vague and amorphous" to be enforced by a competent judiciary, id., then it is proper for those affected by that obligation to bring a suit for its breach under § 1983. . . . The right to a "fair hearing" provided to beneficiaries by § 1396a(a)(3) creates an obligation on the part of the State and is phrased in terms of benefitting Medicaid recipients. Moreover, given that the judiciary regularly determines whether an individual has been afforded procedural due process rights, a right to a fair hearing is not so vague and amorphous that its enforcement is beyond the abilities of a competent judiciary. Therefore, it is proper for plaintiffs to bring their claim for enforcement of their Medicaid rights under § 1983.

Gean, 330 F.3d at 772–73 (6th Cir. 2003).

Gean's reliance on Wilder v. Va. Hosp. Ass'n, 496 U.S. 498 (1990), was logical because there the Supreme Court held that spending-power legislation, such as the Medicaid Act, can create

4

enforceable rights under § 1983 if it is "'intend[ed] to benefit the putative plaintiff'" and "the interest the plaintiff asserts is [not] 'too vague and amorphous' such that it is 'beyond the competence of the judiciary to enforce.'" Wilder, 496 U.S. at 509 (citation omitted). Wilder cited Wright v. Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 423–24 (1987) to support its analysis. Wright held that the Housing Act of 1937 created an enforceable right under § 1983 because its implementing regulations undeniably intended to confer specific and definite benefits on individual tenants. Wright, 479 U.S. at 430–32.

This Court not only followed Gean, but also the subsequent Sixth Circuit case: Barry v. Lyon, 834 F.3d 706 (6th Cir. 2016). Barry concluded that the Supplemental Nutrition Assistance Program ("SNAP") creates an individual right enforceable under § 1983. Barry also relied on two Supreme Court cases. Blessing v. Freestone, 520 U.S. 329, 340–41 (1997), that applied a three factor test to determine whether a statute gives rise to privately enforceable rights. Whether (1) "Congress . . . intended that the provision in question benefit the plaintiff;" (2) "the right assertedly protected by the statute is [] so 'vague and amorphous' that its enforcement would strain judicial competence;" and (3) "the statute [] unambiguously impose[s] a binding obligation on the States." Barry also followed Gonzaga Univ. v. Doe, 536 U.S. 273, 280 (2002). It held that spending powers legislation cannot create an enforceable § 1983 right "unless Congress 'speaks with a clear voice,' and manifests an 'unambiguous' intent to create individually enforceable rights." The Court in Gonzaga "reject[ed] the notion that [Supreme Court] cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." Id. at 283.

The holding in Gonzaga was practiced in Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 181 (2023), that considered two provisions of the Federal Nursing Home Reform Act ("FNHRA"), which "is largely composed of a litany of statutory requirements that

5

Congress laid out for Medicaid-participant States and nursing facilities." (Citation and quotation marks omitted). There the Court held that the <u>Gonzaga</u> test was satisfied because the statutory language "expressly" used "'rights-creating language'" that were tied to '[r]equirements relating to residents' rights.'" <u>Talevski</u>, 599 U.S. at 181, 184, 186. Specifically, "[t]he first [FNHRA provision] require[d] nursing facilities to 'protect and promote' residents' '*right* to be free from . . . any physical or chemical restraints'" that were unnecessary for treating their symptoms. <u>Id.</u> at 181–82 (emphasis added). The second provision was "[n]estled in a paragraph concerning 'transfer and discharge *rights*,'" which was "focused on individual residents." <u>Id.</u> at 184–85.

      B.      The <u>Medina</u> Standard

The Supreme Court in <u>Medina</u> interpreted the Medicaid Act's "any-qualified-provider provision" in 42 U.S.C. § 1396a(a)(23)(A). <u>Medina</u>, 606 U.S. at 363, 366. There, it applied the <u>Gonzaga</u> legal standard to "determine whether a statute confers an individually enforceable right":

> § 1983 provides a cause of action "only for the deprivation of 'rights, privileges, or immunities,'" not "'benefits' or 'interests.'" To prove that a statute secures an enforceable right, privilege, or immunity, and does not just provide a benefit or protect an interest, a plaintiff must show that the law in question "clear[ly] and unambiguous[ly]" uses "rights-creating terms." In addition, the statute must display "'an unmistakable focus'" on individuals like the plaintiff. We have described this as a "stringent" and "demanding" test. And even for the rare statute that satisfies it, this Court has said, a § 1983 action still may not be available if Congress has displaced § 1983's general cause of action with a more specific remedy.

<u>Id.</u> at 367, 368 (citing <u>Gonzaga</u>). To remove any doubt, the Court said that <u>Gonzaga</u> "sets forth [the] established method for determining whether a spending-power statute confers individual rights." <u>Id.</u> (citation and quotation marks omitted). <u>Medina</u> did not announce a new legal standard, test or rule. To the contrary, <u>Medina</u> instructed lower federal courts to apply <u>Gonzaga</u> only, rendering the Supreme Court's decisions in <u>Wright</u>, <u>Wilder</u>, and <u>Blessing</u> irrelevant. <u>Id.</u> at 376 (citation omitted).

6

The <u>Medina</u> Court emphasized that "the statutes at issue in <u>Talevski</u> supply the only reliable yardstick against which to measure whether spending-power legislation confers a privately enforceable right." <u>Medina</u>, 606 U.S. at 377. Applying <u>Gonzaga</u> and <u>Talevski</u>, the Court in <u>Medina</u> held that § 1396a(a)(23)(A) does not contain "unambiguous rights-creating language." <u>Id.</u> (citation and quotation marks omitted). The Court reasoned that § 1396a(a)(23)(A)'s "language speaks to what a State must do to participate in Medicaid, and a State that fails to fulfill its duty might lose federal funding. . . . [T]his provision [also] seeks to benefit both providers and patients." <u>Id.</u>

After finding no rights-creating language in the statute the Court looked to "surrounding statutory context" to confirm that Congress had no rights-creating intent in enacting § 1396a(a)(23)(A). <u>Id.</u> at 379. First, the Court noted that states only must "comply substantially" with § 1396a(a)(23)(A), which, according to the <u>Gonzaga</u> framework, evinces a focus on "aggregate compliance[,] suggest[ing] that [the] statute addresses a State's obligations to the federal government, not the rights of any particular person." <u>Id.</u> (citation and quotation marks omitted). Second, § 1396a(a)(23)(A) is located in the "Contents" subsection of the Medicaid Act, that "outlines scores of things a state plan must include to qualify for federal funding." <u>Id.</u> The Court explained that § 1396a(a)(23)(A) "stands in stark contrast" to the statute in <u>Talevski</u>.

At bottom, the Supreme Court in <u>Medina</u> instructs this Court to apply <u>Gonzaga</u> and <u>Talevski</u> to analyze whether § 1396a(a)(3) contains individual federal rights-creating words that can be enforced through § 1983.

C.	Application of <u>Medina</u>

Because hundreds of TennCare members were threatened with loss of TennCare coverage, Plaintiffs rely upon the fair hearing provision in § 1396a(a)(3) to provide them with procedural due process.  The section reads:

> A state plan for medical assistance must - -
>
> 	* * *
>
> (3) provide for granting an opportunity for a fair hearing before the state agency to any individual  whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness.

Applying the rationale and holding of <u>Gonzaga</u> and its progeny to § 1396a(a)(3), this Court concludes that it does not create an individual right to a fair hearing enforceable through § 1983. The section does provide an important benefit to protect plaintiffs' interests, but that is not enough to create a right enforceable through § 1983.  The Court's textual analysis applying controlling precedent supports this conclusion and "powerfully" convinces this Court that the Sixth Circuit will repudiate the holding in <u>Gean</u>.  <u>See</u> <u>United States v. Wehunt</u>, 230 F. Supp. 3d 838, 846 (E.D. Tenn. 2017) (". . . this Court must be extremely careful in concluding that circuit precedent is no longer good law, and should only deviate from such authority where it is powerfully convinced that the circuit will overrule itself at the next available opportunity.") (citations and quotation marks omitted).

First, the plain and ordinary words in § 1396a(a)(3) do not suggest that Congress intended to create individual rights enforceable through § 1983. The section's focus is on the state to create an opportunity for an individual to have a fair hearing when an individual's benefits are at risk.  It does not focus on the individual's right or suggest an entitlement to a fair hearing.  While it is true that the individual receives a benifit, there are no words in the section from which to conclude that

8

Congress sought to give an individual a personal right to a fair hearing. The absence of such language means that the section does not "clearly and unambiguously us[e] rights-creating terms." Medina, 606 U.S. at 368 (citation and quotation marks omitted). Without such "explicit and unmistakable rights-creating language," the Court's analysis ends. Id. at 379 (citation and quotation marks omitted). There is no basis to determine whether the section "displays an unmistakable focus" on individuals or whether Congress displaced the § 1983 general cause of action with a more specific remedy. Id. (citation and quotation marks omitted).

Second, nowhere in § 1396a(a)(3) does the word "right" or "rights" appear as was the case in the statute at issue in Talevski. The words in § 1396a(a)(3) do not objectively demonstrate that individuals, like the Plaintiffs, have a right of any kind. Indeed, logic dictates that a statute cannot create rights without words that say so. Medina, 606 U.S. at 380.

Third, § 1396a(a)(3) is more akin to the statute in Gonzaga. There the statute gave directions to the Secretary of Education, here the command is to the State of Tennessee – TennCare. This is further confirmed by the location or § 1396a(a)(3) in the "Contents" subsection directed to States, as well as 42 U.S.C. § 1396c, the provision of the Medicaid Act mandating that States need only "substantially comply" to receive funding. As the Court in Gonzaga explained, when States need only "substantially comply" with federal funding requirements, the focus is on "the aggregate services provided by the State, rather than the needs of any particular person." Gonzaga, 536 U.S. at 282 (citation and quotation marks omitted).

The Court's conclusion that § 1396a(a)(3) is not enforceable by individuals under § 1983 follows other courts. See e.g. Keira M. v. Quin, 2026 WL 937311, at *28 (M.D. Tenn. Apr. 7, 2026) (Trauger, J.) (concluding that after Medina, Sections 1396a(a)(8), (a)(10), (a)(43)(B) and (C), and 1396d(a) and (r)(5) of the Medicaid Act do not create rights enforceable under § 1983).

9

The Court reaches this conclusion carefully, respectful of published Sixth Circuit precedent and with little doubt that when given the opportunity the Sixth Circuit will come to the same conclusion. In fact, the Sixth Circuit has recently applied <u>Medina</u> in the context of § 504 of the Rehabilitation Act. In <u>Smith v. Michigan Dep't of Corr.</u>, 159 F.4th 1067, 1078 (6th Cir. 2025), <u>cert. denied sub nom.</u> <u>Smith v. MI DOC</u>, No. 25-1028, 2026 WL 1855069 (U.S. June 29, 2026), quoting <u>Medina</u>, 606 U.S. 357, 376, the Court held that § 504 does not create an implied cause of action for retaliation because it does not "provid[e] 'clear and unambiguous notice that [the federal spending-power statute] creates a personally enforceable right.'" See also <u>Gonzaga</u>, 536 U.S. at 283.

Plaintiffs' claims under the Medicaid Act will be dismissed.

III.     **Motion to Decertify the Class**

Smith argues that the Court's decision to certify Plaintiffs' Rule 23(b)(2) classes must be vacated because Plaintiffs do not satisfy the commonality element after the Sixth Circuit's decision in <u>Speerly v. General Motors</u>, 143 F.4th 306 (6th Cir. 2025). The Court disagrees.

The Court's Rule 54(b) analysis is grounded in the findings of fact and conclusions of law after trial pertaining to Certified Issues 1, 2, 3, 9, and 12. For each, the Court found Due Process Clause and Medicaid Act violations. First, through programming errors and design defects in TennCare's computerized Eligibility Determination System ("TEDS"), TennCare failed to consistently consider all eligibility categories when making coverage determinations, so TennCare's notices to individuals stating that it considered all bases of eligibility were misleading (Certified Issues 1 and 2). (Doc No. 412 at ¶¶ 528–35, 538–41). Indeed, at trial Smith conceded that TEDS failed to accurately assess eligibility in all instances. (<u>Id.</u> at ¶ 531, 532) (quoting Doc. No. 404 at 19–20) ("Smith acknowledged TEDS's failures to accurately assess eligibility due to

10

'TEDS receiving inaccurate data, worker error, or some other systems defect. . . .' The Court finds unavailing Smith's attempt to sanitize TennCare's myriad errors."); (see also id. at ¶ 534) ("Aware that TEDS either ignored or could not assess available data that was essential to eligibility determinations, TennCare closed off SSI-related categories of eligibility to its disabled enrollees who were eligible for TennCare in those categories.").

Second, TennCare violated both the Due Process Clause and Medicaid Act by sending enrollees Notices of Determination ("NODs") citing to a 95-page compendium of TennCare regulations to support its termination decisions, instead of a specific regulation justifying termination or denial of coverage (Certified Issue 3). (Id. at ¶¶ 542–49). Specifically, the Court found:

> There is no dispute that, prior to December 2022, the only legal citation in the NODs intended to support the termination decision was the Stock Citation [to the 95-page compendium]. . . . Every member who was terminated or denied coverage from TennCare before December 2022 . . . received a version of a NOD with this language. . . .
>
> Smith acknowledges that the Stock Citation did not point to a specific regulation or section supporting the termination decision.

(Id. at ¶¶ 543–44).

Third, TennCare's Valid Factual Dispute ("VFD") Policy violates the Due Process Clause and the Medicaid Act by foreclosing the opportunity for enrollees to receive fair hearings to which they are entitled when they lose coverage. (Id. at ¶¶ 565–74) (Certified Issues 9 and 12). Under the VFD, TennCare determines whether an appeal of coverage termination "presents a valid factual dispute (i.e. one that, if resolved in the appellant's favor, would have prevented the state from taking the adverse action). The VFD Policy acts as a mechanism to screen appeals prior to a hearing." (Id. at ¶ 212). Smith again made concessions regarding the VFD policy's inadequacy:

11

When Plaintiffs filed this case, TennCare included language in NODs denying coverage that said: "If you still think we made a mistake about a fact, you can have a fair hearing. If you don't think we made a mistake about a fact, you can't have a fair hearing."

5,238 class members received this language.

At the behest of the Court following a hearing in March 2022, TennCare replaced the language in those notices so that they now say: "You can have a fair hearing if you still think we made a mistake and, if you're right, you would qualify for our program."

TennCare has not sent an updated, revised NOD to the 5,238 class members who received a NOD containing the prior iteration of the fair hearing language.

(Id. at ¶¶ 217–20) (citations omitted).

A. Speerly

In Speerly, car buyers filed a class action for damages against GM arising from defects based upon state law. Id. at 312. The district court certified a class under Rule 23(b)(3), id. at 314, 316, finding that the commonality requirement was met because there were "questions of law or fact common to the class." Id. at 316 (citation and quotation marks omitted). The Sixth Circuit vacated and remanded because the district court "overlooked how significant differences across each cause of action raise serious commonality concerns." Id. The Court explained that:

> [t]o be common, a question must (1) yield a common answer with common evidence and (2) meaningfully progress the lawsuit. The decisionmaker must be able to resolve the question with "a yes-or-no answer for the class in one stroke." . . . . If a reasonable decisionmaker left with the evidence may answer "yes" to a question for some class members and "no" for others, the class has not shown that it is common. . . .
>
> A common question must "resolve an issue that is central to the validity of each one of the claims." [Wal-Mart Stores, Inc. v. ]Dukes, 564 U.S. [338,] 350 [ (2011)]. To ensure the questions, whether factual or legal, are central, a court must ensure that they "affect at least one element" of all [] claims. Doster[ v. Kendall, 54 F.4th 398,] 430 [(6th Cir. 2022), cert. granted, judgment vacated as moot, 144 S. Ct. 481 (2023)]. The court "must walk through each cause of action" and "identify the relevant elements. Because an issue is not "central" unless it affects at least one contested element in each cause of action, it flows from Wal-Mart that only an

element-oriented analysis permits the court to identify which questions meaningfully move the lawsuit forward. 564 U.S. at 350 []. . . .

. . . . [A] common question [i]s one "where the same evidence will suffice for each member" to answer it. Id. (quotation omitted).

Id. at 316–18.

It is important that Speerly compared and contrasted "pattern or practice" class actions like Wal-Mart, from cases like Speerly that "involve[d] a swath of distinct state-law claims." Id. at 320 (citations omitted). Pattern or practice actions under Rule 23(b)(2) contemplates injunctive relief, as opposed to Rule 23(b)(3) class actions seeking damages. See Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 428 (6th Cir. 2012) (discussing Rule 23(b)(2) certification). In a pattern or practice case, proof is "generalized" to lead to yes-or-no answers for the class." Speerly, 143 F.4th at 319.

This case, unlike Speerly, is a 23(b)(2) case, which has long been used in cases challenging the state's provision of social aid benefits. See, e.g., M.B. by Eggemeyer v. Corsi, 327 F.R.D. 271, 282 (W.D. Mo. 2018) (certifying Rule 23(b)(2) class of children in foster care who alleged due process violations); People United for Child., Inc. v. City of New York, 214 F.R.D. 252, 266 (S.D.N.Y. 2003) (certifying Rule 23(b)(2) class alleging systemic deficiencies in the city's administration of child-welfare program); Sorenson v. Concannon, 893 F. Supp. 1469, 1479 (D. Or. 1994) (certifying Rule 23(b)(2) class challenging disability-determination procedures); Gould v. Sullivan, 131 F.R.D. 108, 115 (S.D. Ohio 1989) (certifying a statewide class under Rule 23(b)(2) challenging calculation of social security benefits); Gorton v. Johnson, 100 F.R.D. 801, 803 (E.D. Mich. 1984) (allowing class to proceed under Rule 23(b)(2) to challenge policies related to inmates' mental health care); Willis v. Lascaris, 499 F. Supp. 749, 754 (N.D.N.Y. 1980) (certifying Rule 23(b)(2) class of plaintiffs facing loss of public assistance); Wilczynski v. Harder, 323 F.

13

Supp. 509, 512 n.3 (D. Conn. 1971) (certifying a Rule 23(b)(2) class of plaintiffs facing termination of Medicaid benefits).

Speerly did not announce any new law. To the contrary, Speerly applied settled law. Speerly, 143 F.4th 315–21. And unlike Medina, Speerly did not explicitly or implicitly abrogate any published Sixth Circuit case law. Speerly does not constitute an intervening change in law that would warrant decertification or reconsideration. Indeed, applying Speerly to this case leads the Court to the same conclusion based upon the trial record—that the Rule 23(a) commonality requirement is satisfied.

B.     Applying Speerly to This Case

The Court conducted a rigorous commonality analysis when it certified the Plaintiff Class and Disability Subclass, "subject to a caveat: collective litigation is only appropriate regarding particular issues under Rule 23(c)." (Doc. No. 234 at 9, 11–12). That analysis remains firm based upon the full record before the Court.[1]

First, the Court contrasted questions common to the classes with questions that did not satisfy commonality. For example, the Plaintiff Class sought "to resolve '[w]hether TennCare's template notices provide sufficiently detailed and clear statements of the reasoning supporting the agency's termination decisions.'" (Doc. No. 234 at 18–19) (quoting (Doc. No. 140-1 at 21)). The Court explained that this question did not satisfy commonality because not all NODs listed the same reasons for termination, of which there were at least 50. (Id. at 19). As a result, "TennCare has not acted 'on a ground that is applicable to the entire class regarding the NODs' reasons for termination." (Id.) (quoting Gooch, 672 F.3d at 428). Also because "[t]he Court would have to make individualized determinations among class members' NODs to resolve the broad question

---

[1] The Court will only discuss commonality with respect to the remaining two claims: the Due Process Clause and ADA violations.

of whether they provide sufficiently clear and detailed reasons supporting termination," that issue was not suitable for 23(b)(2) litigation. (Id.) (citation and quotation marks omitted). Similarly, commonality issues were identified for the Disability Subclass. The Court explained:

> Plaintiffs claim members of the disability subclass have been injured by TennCare because it 'sends incomprehensible notices' and 'issues unduly burdensome requests for information that is irrelevant or already available to the state.' Notices are not uniform. As for the information requests: Plaintiffs have not shown all subclass members are subject to the same ones or even the same types (their brief does not define the requests to which it refers). The Court will not permit collective litigation concerning these matters for the same reasons it will not permit collective action concerning the NODs' reasons for termination.

(Doc. No. 234 at 21–22) (citations omitted).

Next, after trial, the Court answered "yes" to questions common to both the Plaintiff Class and Disability Subclass and central to at least one element of the Due Process Clause and ADA claims. Starting with the Due Process Clause, the Court explained that TennCare is constitutionally required to provide due process adequate notice and opportunity to be heard before terminating coverage. (Id. at 12); see also Novak v. Federspiel, 140 F.4th 815, 821 (6th Cir. 2025) (procedural due process claim requires proof of: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process") (citation and quotation marks omitted)).

After trial, the Court made findings of fact and conclusions of law on common questions on both elements of the Plaintiff Class's Due Process Clause. First, the Court asked and answered related factual questions in Certified Issues 1 and 2 that pertain to inadequate process on coverage and eligibility for TennCare benefits.

- Certified Issue 1 asked whether TennCare considers all categories of eligibility before terminating enrollees' coverage. After trial, the Court answered that question "no," finding that TennCare failed to consistently consider all eligibility categories by ignoring necessary information in TennCare's or TEDS's possession. Further, the Court found that although

15

TennCare was aware of these systemic issues, it was lethargic in its response and attempts to reprogram TEDS. (Doc. No. 412 at ¶ 533).

- Certified Issue 2 asked whether the NODs unlawfully misled recipients to think TennCare had considered all bases of eligibility. After trial, the Court answered that question with a "yes," finding that the NODs did not account for TEDS's failings, and TennCare did not amend or supplement the NODs. Thus, Plaintiffs like Mr. Hill, Ms. Vaughn, and Ms. Caudill received NODs telling them that TennCare considered them for categories of eligibility TEDS was incapable of reliably evaluating and functionally ignored. (Id. at ¶¶ 537, 541).

Next, the Court addressed the lack of notice in NOD in Certified Issue 3, which asked:

- whether the Stock Citation (to a 95-page compendium of TennCare regulations) in all NODs satisfies the Due Process Clause. The Court answered that question "no," concluding that there is no dispute that, prior to December 2022, the only legal citation in the NODs was the Stock Citation. TennCare's reliance on the Stock Citation instead of a citation to the specific regulation animating the termination decision violates its obligations under Due Process. (Id. at ¶¶ 543, 549).

Certified Issues 6 and 7 related to lack of notice during the appeal process that the Court handled together:

- Certified Issue 6 asked whether the NODs' uniform omission of information concerning the good cause exception and good cause hearings violated the Due Process Clause. The good cause exception permits untimely appeals of adverse decisions to proceed if the enrollee had "good cause" for failing to timely file his or her appeal. (Id. at ¶ 201–23). As Smith admitted at trial, TennCare does not offer good cause hearings for enrollees to present evidence of why they did not timely appeal, including evidence that they did not receive notice of the NOD (evidence of "non-receipt"). (Id. at ¶ 575).

- Certified Issue 7 asked whether the NODs' omission of the 90-day reconsideration period violates the Due Process Clause. The reconsideration period is the 90-day period after an enrollee's coverage is terminated when TennCare will reconsider the termination if the enrollee submits requested information. (Id. at ¶ 109).

- The Court answered Certified Issues 6 and 7 "yes:" TennCare violated the Due Process Clause by omitting from its NODs information regarding the Good Cause Policy and 90-day reconsideration period. While TennCare's NODs include an explanation of the appeals deadlines, the NODs and appeal forms do not include any reference to TennCare's good cause policy.

16

The delayed and incomplete notice TennCare provides of the good cause policy cannot be said to "clearly" explain "the availability of an avenue of redress," as required to satisfy due process. (Id. at ¶¶ 556, 558, 561).

Certified Issue 11 also addressed deficiencies in the appeal process:

- whether TennCare's policy of denying good cause exceptions or hearings based on "allegations of non-receipt" of an NOD violates the Due Process Clause. The Court also answered this question with a "yes," concluding that the Due Process Clause requires TennCare to grant good cause exceptions, or at least good cause hearings, to enrollees who allege without additional evidence that they are entitled to a good cause exception because they did not receive their NOD. (Id. at ¶ 581).

Finally, the Court addressed Certified Issues 9 and 12 regarding obtaining a fair hearing when TennCare benefits are terminated:

- Certified Issue 9 asked whether the VFD Policy violates the Due Process Clause and Certified Issue 12 asked whether TennCare "systematically fails to provide fair hearings at any time." The Court answered both "yes," because the VFD Policy forecloses the opportunity for enrollees to receive fair hearings to which they are entitled when they believe that the agency has taken an action erroneously. (Id. at ¶ 574).

On the second claim for violations of the ADA, "[t]o establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." Anderson v. City of Blue Ash, 798 F.3d 338, 357 (6th Cir. 2015) (citation and footnote omitted). Again, after trial, the Court made findings of fact and conclusions of law answering common questions affecting elements of the ADA claim:

- Certified Issue 15 asked whether TennCare fails to evaluate disability-related categories in terminating coverage and if so, whether that violates the ADA. The Court answered these questions "yes," concluding that TEDS wrongly screened out people eligible in disability-related categories. Then, TennCare sat on its hands for months before it fixed system-wide errors that caused data issues that resulted in wrongful terminations of disabled individuals. At bottom, TEDS's systemic errors blocked those with disabilities from accessing benefits to which they were legally entitled. Although TennCare knew that TEDS was rife with flaws and that those flaws led to erroneous eligibility terminations for

17

disabled individuals, TennCare's response was slow to address them. By doing so, TennCare violated the ADA. (Doc. No. 412 at ¶ 537).

This commonality analysis is consistent with Speerly because each of the common questions the Court identified and answered affects at least one element of the Due Process Clause and ADA claims. The Court notes that in a more recent case, the Sixth Circuit clarified that it "ha[s] yet to decide whether the question must conclusively resolve (rather than just 'affect') an element," which is certainly satisfied here. Clippinger v. State Farm Auto. Ins. Co., 173 F.4th 817, 827 (6th Cir. 2026) (citations omitted). On the Due Process Clause, each question and answer affects the material element of the sufficiency of the process afforded by TennCare. With respect to the ADA claim, the questions and answers common to the Disability Subclass directly affect the issue of whether enrollees were excluded from, denied the benefits of, or subjected to discrimination notwithstanding their disabilities.

Smith's argument that commonality is not satisfied because not all class members have been uniformly affected by TennCare's deficient policies and practices is short-sighted. It was proven at trial that class members are exposed to the threat of TennCare's future use of those deficient policies and practices, which is an appropriate consideration in injunctive relief cases like this one. See, e.g., Moms for Liberty - Wilson Cnty., Tennessee v. Wilson Cnty. Bd. of Educ., 155 F.4th 499, 509 (6th Cir. 2025) ("The Supreme Court has explained that the threat of enforcement is 'sufficiently imminent' to constitute an injury-in-fact."). Indeed, the Court certified the class of TennCare enrollees who not only have been disenrolled, but who *will be* disenrolled from their coverage, and acknowledged that "all Plaintiffs seek to prevent any future harm they might suffer at the hands of [TennCare's] allegedly unlawful policies." (Doc. No. 412 at 4) (emphasis added); (Doc. No. 234 at 18 n.10).

18

Additionally, commonality under Rule 23(a) is not defeated merely because differences exist between individual class members, as Smith urges. Bacon v. Honda of Am. Mfg., Inc., 370 F.3d 565, 570 (6th Cir. 2004) ("Variations in the circumstances of class members are acceptable, as long as they have at least *one issue* in common.") (emphasis added). This holds true whether the class is certified under Rule 23(b)(2) or 23(b)(3). For example, in Gooch, a 23(b)(2) injunctive relief class, the Sixth Circuit explained that it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." 672 F.3d at 428. Indeed, when the Court certified the classes in this case, it acknowledged that not all of the "issues may [] have impacted all class members in the past, but '[a]ll of the class members need not be aggrieved by . . . [the] defendant's conduct in order for some of them to seek relief under Rule 23(b)(2).'" (Doc. No. 234 at 18 n.10) (quoting Gooch, 672 F.3d at 428). The Court further explained, "'What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class.'" Id. (quoting Gooch, 672 F.3d at 428).

Finally, Smith asserts that TennCare has fixed some of the errors, so commonality is defeated because the class cannot contain people who were not affected by those errors. (See Doc. No. 432 at 14–15). This argument is unavailing. The Court already noted in its findings of fact and conclusions of law that "[t]hough TennCare has remedied some errors in TEDS and instituted certain processes that may catch the programs future mistakes, it has not yet remedied the core underlying deficiencies in its notices or appeals process. Thus, this Court retains jurisdiction and class-wide resolution remains appropriate." (Doc. No. 412 at ¶ 593). Smith's argument is analogous to a mootness argument. However, the Supreme Court has made clear that class actions do not become moot merely because not all members of the class continue to be affected by the

19

alleged unlawful policies.  <u>See</u> <u>United States v. Sanchez-Gomez</u>, 584 U.S. 381, 388 (2018).  Lastly, Smith's argument is ultimately relevant to the issue of remedies, because whether and to what extent TennCare has already fixed the deficiencies the Court identified will impact the remedies the Court orders going forward.  Therefore, this issue can be taken up at the remedies hearing set for July 28, 2026.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE