# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

A.M.C., by her next friend, C.D.C., et al.,

    Plaintiffs,

        v.

STEPHEN SMITH, in his official capacity as Deputy Commissioner of Finance and Administration and Director of the Division of TennCare,

    Defendant.

Civil Action No. 3:20-cv-00240

Class Action

Judge Crenshaw
Magistrate Judge Evans

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PERMANENT INJUNCTIVE AND DECLARATORY RELIEF

Michele Johnson TN BPR 16756
Gordon Bonnyman, Jr. TN BPR 2419
Brant Harrell, TN BPR 24470
TENNESSEE JUSTICE CENTER
155 Lafayette St.
Nashville, TN 37210
Phone: (615) 255-0331
Fax: (615) 255-0354
mjohnson@tnjustice.org
gbonnyman@tnjustice.org
bharrell@tnjustice.org

Jane Perkins (*pro hac vice*)
Elizabeth Edwards (*pro hac vice*)
Sarah Grusin (*pro hac vice*)
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin St., Suite 110
Chapel Hill, NC 27614
Phone: (919) 968-6308
perkins@healthlaw.org
edwards@healthlaw.org
grusin@healthlaw.org

Faith E. Gay (*pro hac vice*)
Jennifer M. Selendy (*pro hac vice*)
Andrew R. Dunlap (*pro hac vice*)
Babak Ghafarzade (*pro hac vice*)
Laura King (*pro hac vice*)
Jack Collins\* (pro hac vice pending)
Korey Boehm\* (pro hac vice pending)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Phone: (212) 390-9000
fgay@selendygay.com
jselendy@selendygay.com
adunlap@selendygay.com
bghafarzade@selendygay.com
lking@selendygay.com
jcollins@selendygay.com
kboehm@selendygay.com

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

**Pages**

I. INTRODUCTION ................................................................................................ 1

II. LEGAL STANDARD ......................................................................................... 2

III. ARGUMENT ..................................................................................................... 2

      A. TennCare Should Be Required to Amend its Notices of Decision ......................... 3

           1. Category of Eligibility Information Is Still Needed. ................................... 3

           2. TennCare's New 90-day language Is Not Sufficiently Specific about when Benefits Will Be Reinstated. ............................................................ 6

           3. TennCare's Voluntary Notice Changes Do Not Moot Relief Because the Changes are Not Genuine, Reversible, and TennCare Has Not Issued Corrected Notices to Class Members who Received Inadequate Notice. ................................................................................... 7

      B. TennCare Should Be Required to Amend Its Review of SSI, DAC, Widow/er, Pickle, and Institutional Medicaid Categories ................................... 11

      C. TennCare Should Be Required to Change Its Good Cause Implementation ........ 13

      D. The Court Should Enjoin TennCare's Valid Factual Dispute Policy ................... 14

      E. TennCare Should Be Required to Reinstate Coverage. ....................................... 15

      F. TennCare Should Be Required to Issue *Quern* Notices to the Class ................... 18

      G. Declaratory Relief Should Issue ......................................................................... 21

IV. THE BALANCE OF THE EQUITIES FAVOR THE PROPOSED INJUNCTION ........ 23

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. Philip Randolph Inst. v. Husted*,
838 F.3d 699 (6th Cir. 2016),
*rev'd on other grounds*, 584 U.S. 756 (2018) ...................................................................7

*ACLU v. McCreary Cty.*,
607 F.3d 439 (6th Cir. 2010).........................................................................................2

*Aguilar v. Garland*,
861 F. App'x 45 (6th Cir. 2021)...................................................................................14

*Ancata v. Prison Health Servs., Inc.*,
769 F.2d 700 (11th Cir. 1985).....................................................................................23

*Brown v. Plata*,
563 U.S. 493 (2011) ....................................................................................................11

*Chianne D. v. Harris*,
814 F. Supp. 3d 1261 (M.D. Fla. 2026) ...............................................................*passim*

*Chianne D. v. Harris*,
2026 WL 759154 (M.D. Fla. Mar. 18, 2026)..............................................................25

*Durham v. Eley*,
507 F. Supp. 3d 956 (M.D. Tenn. 2020) .......................................................................3

*E.E.O.C. v. Wilson Metal Casket Co.*,
24 F.3d 836 (6th Cir. 1994)...........................................................................................2

*Febus v. Gallant*,
866 F. Supp. 45 (D. Mass. 1994)................................................................................18

*Flynn v. Doyle*,
630 F. Supp. 2d 987 (E.D. Wis. 2009) ........................................................................23

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ......................................................................................................7

*Fuentes v. Shevin*,
407 U.S. 67 (1972) ......................................................................................................13

2

*M.G. ex rel. Garcia v. Scrase*,
  No. 122CV00325, 2023 WL 3686751 (D.N.M. May 26, 2023)
  *aff'd sub nom*, *M.G. through Garcia v. Armijo*, No. 23-2093, 2024 WL
  4206966
  (10th Cir. Sept. 17, 2024) ...................................................................................23

*Goldberg v. Kelly*,
  397 U.S. 254 (1970) ....................................................................................24, 25

*Granato v. Bane*,
  74 F.3d 406 (2d Cir. 1996) ................................................................................15

*Grand Trunk W.R. Co. v. Consol. Rail Corp.*,
  746 F.2d 323 (6th Cir. 1984) .............................................................................22

*Hamby v. Neel*,
  368 F.3d 549 (6th Cir. 2004) .............................................................................13

*Haskins v. Stanton*,
  794 F.2d 1273 (7th Cir. 1986) ...........................................................................23

*Howe v. City of Akron*,
  801 F.3d 718 (6th Cir. 2015) .............................................................................11

*Indiana Prot. & Advoc. Servs. Comm'n v. Indiana Fam. & Soc. Servs. Admin.*,
  149 F.4th 917 (7th Cir. 2025) .........................................................................2, 24

*Int'l Res., Inc. v. N.Y. Life Ins.*,
  950 F.2d 294 (6th Cir. 1991) ...............................................................................2

*K.W. v. Armstrong*,
  789 F.3d 962 (9th Cir. 2015) .............................................................................15

*Kallstrom v. City of Columbus*,
  136 F.3d 1055 (6th Cir. 1998) ...................................................................2, 13, 14

*Kimble v. Solomon*,
  599 F.2d 599 (4th Cir. 1979) .............................................................................15

*Ly v. Holder*,
  327 F. App'x 616 (6th Cir. 2009) .......................................................................14

*M.A. v. Norwood*,
  133 F. Supp. 3d 1093 (N.D. Ill. 2015) ................................................................15

*Markva v. Haveman*,
  168 F. Supp. 2d 695 (E.D. Mich. 2001) ................................................................2

3

*Mich. State Chamber of Commerce v. Austin*,
788 F.2d 1178 (6th Cir. 1986)...................................................................................21

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ..................................................................................................6

*N.L.R.B. v. Express Pub. Co.*,
312 U.S. 426 (1941) ................................................................................................14

*Northland Family Planning Clinic, Inc. v. Cox*,
487 F.3d 323 (6th Cir. 2007)......................................................................................7

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*,
305 F.3d 566 (6th Cir. 2002).......................................................................................2

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
551 U.S. 701 (2007) .............................................................................................8, 10

*Price v. Medicaid Dir.*,
838 F.3d 739 (6th Cir. 2016)...............................................................................15, 16

*Quern v. Jordan*,
440 U.S. 332 (1979) .............................................................................................18, 21

*Rikos v. Proctor & Gamble Co.*,
799 F.3d 497 (6th Cir. 2015).....................................................................................17

*Speech First, Inc. v. Schlissel*,
939 F.3d 756 (6th Cir. 2019)......................................................................................7

*TCI/TKR Cable v. Johnson*,
30 F. App'x 581 (6th Cir. 2002)...............................................................................21

*Tennessee v. Dep't of Educ.*,
104 F.4th 577 (6th Cir. 2024)................................................................................2, 23

*Turner v. Ledbetter*,
906 F.2d 606 (11th Cir. 1990)...................................................................................15

*Unan v. Lyon*,
853 F.3d 279 (6th Cir. 2017)......................................................................................7

*United Steel v. Kelsey-Hayes Co.*,
750 F.3d 546 (6th Cir. 2014),
*vacated on other grounds*, 795 F.3d 525 (6th Cir. 2015)..........................................2

*Watson v. Memphis*,
373 U.S. 526 (1963) ................................................................................................23

4

**Statutes and Regulations**

28 U.S.C. § 2201 ..........................................................................................................21

42 C.F.R. § 431.231 ......................................................................................................15

42 C.F.R. § 431.250 ......................................................................................................24

Tenn. Comp. R. and Regs. § 1200-13-19-.05...............................................................15

**Rules**

Fed. R. Civ. P. 65 .........................................................................................................20

**Other Authorities**

TennCare, Eligibility Reference Guide, https://www.tn.gov/tenncare/members-applicants/eligibility-reference-guide.html [last visited July 24, 2026]....................................4

U.S. Const. Amend. XI.............................................................................................. 18, 22

## I. INTRODUCTION

After a five-day bench trial on liability, the Court ruled for Plaintiffs on nine identified class issues, ECF 412 at 6-7, and held that Defendant violated the Americans with Disabilities Act, Medicaid Act,[1] and the Due Process Clause of the United States Constitution. "The Court reserved decision on whether the State can afford the cost of any injunction until after the Court reached a final determination on Defendant's liability[,]" ECF 412 at 6 n. 1, and concluded by stating "[n]ow, the Court must ensure [Plaintiffs] receive their deserved relief." ECF 412 at 116.

When mediation failed, the Court directed Plaintiffs to file their proposed Permanent Injunction and for Defendant to file a response and to highlight those aspects of Plaintiffs' proposed injunction that he did not dispute. ECF 427 at 2. Defendant submitted a Response in Opposition that disputes *each* proposed injunctive relief provision. ECF 445.

But Defendant's objections are without merit. Injunctive and declaratory relief should issue because Plaintiffs have already established the elements of irreparable injury and inadequacy of legal remedies through the liability decision; Defendant's asserted costs and burdens are wildly inflated and insufficient to tip the balance of hardships against injunctive relief; and relief to stop systemic Constitutional and statutory violations is in the public interest.

Defendant's other defenses also fail. The proposed injunctive relief is not moot because unlawful conduct is continuing, Defendant's voluntary steps are incomplete or insufficient to remedy harm to injured class members, or Defendant's changes are too late, not genuine, and capable of reversion. Further, the injunctive provisions directly relate to the class issues upon which liability was found and are narrowly tailored.

The injunction and declaratory judgment (ECF 430) constitute Plaintiffs' deserved relief.

---

[1] The Court subsequently dismissed Plaintiffs' Medicaid Act claims. *See* ECF 483.

## II. LEGAL STANDARD

The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits rather than a likelihood. *ACLU v. McCreary Cty.*, 607 F.3d 439, 445 (6th Cir. 2010). A plaintiff seeking a permanent injunction must demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) an equitable remedy is warranted considering the balance of hardships between plaintiff and defendant; and (4) the public interest would not be disserved by the injunction. *United Steel v. Kelsey-Hayes Co.*, 750 F.3d 546, 559 (6th Cir. 2014), *vacated on other grounds*, 795 F.3d 525 (6th Cir. 2015). Where, as here, the government opposes the injunction, the third and fourth factors merge. *See Tennessee v. Dep't of Educ.*, 104 F.4th 577, 613 (6th Cir. 2024). And "[w]here the plaintiff establishes a constitutional violation after a trial on the merits, the plaintiff will be entitled to permanent injunctive relief upon showing 1) a continuing irreparable injury if the court fails to issue the injunction, and 2) the lack of an adequate remedy at law." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998). The precise scope and framing of the terms of a permanent injunction or declaratory judgment are matters within the discretion of the district court. *See E.E.O.C. v. Wilson Metal Casket Co.,* 24 F.3d 836, 843 (6th Cir. 1994). Courts have enjoined States from enforcing parts of their Medicaid program that violate the Americans with Disabilities Act. *See, e.g.*, *Indiana Prot. & Advoc. Servs. Comm'n v. Indiana Fam. & Soc. Servs. Admin.*, 149 F.4th 917, 942 (7th Cir. 2025).

## III. ARGUMENT

Irreparable harm is shown by loss of Medicaid benefits, *Markva v. Haveman*, 168 F. Supp. 2d 695, 718 (E.D. Mich. 2001), foregoing necessary medical care, *Int'l Res., Inc. v. N.Y. Life Ins.,* 950 F.2d 294, 302 (6th Cir. 1991), or a violation of the plaintiff's constitutional rights," *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). In its liability decision,

2

which demonstrated Plaintiffs' actual success on the merits, the Court made findings showing all of these forms of irreparable harm[2] and framed the remaining issue as whether the State can afford the cost of any injunction (i.e., the balance of hardships). ECF 412 at 6 n. 1.

A.      **TennCare Should Be Required to Amend its Notices of Decision.**

"[T]he ordinary remedy for a due process violation would be to issue an injunction requiring the defendants to provide the requisite process." *Durham v. Eley*, 507 F. Supp. 3d 956, 970 (M.D. Tenn. 2020). Plaintiffs have requested that TennCare be required to amend its Notices of Decision to (1) add category-of-eligibility related information, (2) remove reference to checking for all categories of eligibility, (3) add language describing its Good Cause Policy, (4) add language describing the 90-day Reconsideration Period, and (5) add the specific citation on which TennCare bases its adverse decision. ECF 430 at 1-2. Defendant concedes it has not added any category-of-eligibility information to the notices but asserts that it has sufficiently updated the notices as requested in items (2) through (5). *See* ECF 445 at 6, 8-9. Injunctive relief for all provisions should still issue.

### 1.  Category of Eligibility Information Is Still Needed.

*1. The requested relief is directly tied to Certified Issues 1 and 2 and subject to class-wide resolution.* As this Court has explained, Certified Issues 1 and 2 address Defendant's failure "to consistently consider all eligibility categories when making coverage determinations, so TennCare's notices to individuals stating that it considered all bases of eligibility were misleading." ECF 483 at 10. Supplying information regarding the categories of eligibility in the termination notice helps remedy the misleading nature of those notices by providing more specific information

---

[2] Medicaid Loss– *See* ECF 412 ¶¶ 59, 77, 173, 194, 229, 296, 355, 374, 392, 529, 532, 537; Foregone Health Care –¶¶ 79, 174; Constitutional Violations –¶¶ 546-47, 549, 555, 558, 561, 572, 574.

3

about the particular eligibility rules that TennCare applied in each case. Moreover, there is no dispute that the current notice of decision template includes no placeholder for the individual's prior eligibility category or requirements for those categories. *See generally* JX45. Thus, this relief can be mandated through a single, indivisible injunction requiring additional text be added to the notice of decision template, without the need for any individualized determinations. *See, e.g.*, *Chianne D. v. Harris*, 814 F. Supp. 3d 1261, 1380 (M.D. Fla. 2026) (ordering notice changes, including "sufficient information for the enrollee to ascertain the eligibility categories in which his or her income was tested," and finding class-wide notice relief appropriate).

2. *The existing eligibility reference guide on TennCare's website is not sufficiently specific.* TennCare maintains that it already supplies a link to its eligibility reference guide on the notices. ECF 445 at 3-4. True, since the liability trial TennCare has updated the link to the main TennCare homepage to a more specific link to the eligibility reference guide, which is an improvement. *See* JX45 at 79 (p. 21 of the template notice). Yet, the eligibility reference guide itself does not supply sufficient information regarding the eligibility requirements for each category. *See* TennCare, Eligibility Reference Guide, https://www.tn.gov/tenncare/members-applicants/eligibility-reference-guide.html [last visited July 24, 2026]. For example, while it lists the income limits for each category, it does not explain the different income counting rules that apply to each category, which are critical since different income is disregarded when evaluating eligibility for different categories. *See, e.g.*, ECF 412 ¶ 68 (noting error in Mr. Hill's case related to disregarding too little income because TennCare used Pickle income-counting rules instead of DAC).

3. *Defendant's cost estimates are unfounded and inflated.* Defendant next complains that this relief is unwarranted because it would cost $550,000 to $650,000 for Deloitte to implement this change. But Defendant cites no authority to support his position that expense can excuse him from

4

complying with the constitution or federal law. *See Chianne D.*, 814 F. Supp. 3d at 1373 (rejecting "any suggestion that the State must be allowed to continue violating the constitutional rights of its citizens because compliance is too expensive."). Moreover, Ms. Hagan's testimony at the remedies phase of the trial will show that TennCare already budgets nearly $50 million annually for Deloitte to make changes to TEDS and the notices. Thus, even taking this estimate at face value, it would comfortably fit within the existing budget. Finally, the estimate—which was created by Deloitte not TennCare—rests on inaccurate assumptions that artificially inflate the costs. For example, Deloitte assumed that it would have to implement programming to trigger entirely new notices, rather than assuming that the information would be added to the existing termination notice triggers. *See* DX791 at 2. In any event, the numerous changes TennCare has made to the notices throughout this case demonstrate the feasibility of this similar change.

*4. The requested changes will enable TennCare enrollees to identify errors.* TennCare's final objection is that the notices will make the notices longer and more confusing. Yet, Plaintiffs seek only a short two to three sentence addition to the notice, which is not a substantial addition, even where it is repeated for multiple family members. Specifically, Plaintiffs seek the addition of text such as:

> "You were previously enrolled in a group called **<COE>**. To be eligible for this group, you must meet the following requirements:
> **<COE Requirements>**
>
> For more information about the eligibility requirements for this group, and others TennCare covers, please visit **<website>** or call TennCare Connect at **<phone number>**."

Plaintiffs also seek the addition of a placeholder for the category of eligibility where the notice template currently says "the kind of Medicaid you can get," for example:

> "The income limit for the kind of Medicaid you can get, which is called **<COE >**, is <income limit>."

Moreover, evidence at the liability trial already demonstrated how this additional information would benefit TennCare enrollees. As the Court found, Mr. Hill's termination notice stated "'Before we made our decision we looked at you for different kinds of coverage.' Based on this, Ms. Noe (Mr. Hill's next friend) believed TennCare had considered Mr. Hill's DAC eligibility," when it had not. ECF 412 ¶ 130. *See also id.* ¶ 251 (noting that notice regarding Mr. Guyton "did not state what 'kind' of TennCare Medicaid' he could get," and that his income was below the DAC income limit).

### 2. TennCare's New 90-day language Is Not Sufficiently Specific about when Benefits Will Be Reinstated.

Plaintiffs acknowledge that TennCare has added language regarding the 90-day reconsideration period to its notices of decision. Specifically, TennCare added the following language:

> If you don't give us the renewal information we need by <Term Date>, your coverage will end. But, if you give it to us by <90 days from last day of coverage>, we will look to see if you can get coverage again. If you are approved, the gap in your coverage *may* be filled.

JX45 at 80 (p. 22 of the notice) (emphasis added). But except for QMB, individuals who submit their renewal information and are approved *will* have the gap in coverage filled. *See* ECF 412 ¶ 561 n. 5 (citing JX43 ¶¶ 37–38). TennCare, however, declines to explain this to enrollees and, as it did before, "intentionally omits specific information," ECF 412 ¶ 561, about the reinstatement policy, resulting in ambiguity for TennCare recipients that prevents them from fully understanding their rights. Plaintiffs, therefore, request that the language be updated to communicate that specific information regarding when coverage will and will not be filled.[3] This approach reflects the means that someone "desirous of actually informing" the notice recipient would select. ECF 412 ¶ 561 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)).

---

[3] Defendant objects that there is an additional exception where payments for services will not be reimbursed for those enrolled in Institutional Medicaid. Setting aside that Defendant raised only the QMB exception at trial, this second exception could also be accounted for in modified language.

6

### 3. TennCare's Voluntary Notice Changes Do Not Moot Relief Because the Changes are Not Genuine, Reversible, and TennCare Has Not Issued Corrected Notices to Class Members who Received Inadequate Notice.

TennCare claims that injunctive relief is not necessary for four of five notice changes Plaintiffs request because TennCare has voluntarily made those changes, rendering the issues moot. *See* ECF 445 at 5 (TennCare "voluntarily" removed misleading language regarding looking at all coverage groups (Certified Issue 2)); *id.* at 9 ("voluntarily" updated statutory cites (Certified Issue 3)); *id.* at 6 ("voluntarily" added good cause language (Certified Issue 6)); *id.* at 8 ("voluntarily" added 90-day reconsideration language (Certified Issue 7)).

That defense fails. TennCare's changes came too late and only under the pressure of an adverse ruling, are expressly reversible, do nothing for the class members already harmed by the notices the Court condemned, and, as described above the 90-day language change, remains incomplete. TennCare's mootness argument should be rejected.

A "defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *accord A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 712 (6th Cir. 2016), *rev'd on other grounds*, 584 U.S. 756 (2018). Even "significant steps to correct the systemic problem … does not moot a case unless it is 'absolutely clear' that the violations could not reasonably recur." *Unan v. Lyon*, 853 F.3d 279, 288–89 (6th Cir. 2017) (citation omitted).

The Sixth Circuit has held that the "timing of [a government defendant's] change [may] raise[] suspicions that its cessation is not genuine," including where a government defendant makes "voluntary" changes only in response to litigation. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769 (6th Cir. 2019) (citations omitted); *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 342–43 (6th Cir. 2007) ("In this case, that burden [to show mootness] is increased by the fact that

7

the voluntary cessation only appears to have occurred in response to the present litigation, which shows a greater likelihood that it could be resumed."). Moreover, the Supreme Court has found that where the government continues to "vigorously defend[] the constitutionality of its . . . program," any purportedly voluntary change in policy should be thoroughly scrutinized—especially where, as here, Defendant has the power to unilaterally revise any changes made. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007).

TennCare's notice changes fail this standard at every turn. None is both complete and permanent, and each postdates the Court's liability decision:

*The misleading coverage-group language (Certified Issue 2).* The Court found that the stipulated NOD statement—"Before we made our decision we looked at you for different kinds of coverage"—was, together with TennCare's related assurances, "inherently misleading" because TEDS could not reliably evaluate the categories TennCare represented it had considered. ECF 412 ¶¶ 539-541. TennCare—besides mischaracterizing the Court's finding as only "potentially" and not "inherently" misleading—stated in October 2025 that is "in the process of revising its NODs and removing those statements." ECF 445 at 5. Its most-current NOD, JX45, continues to state, "Before we made our decision, we looked to see if you could get other kinds of coverage we offer." JX45 at 79 (21 on notice). A change that the State has not made cannot moot the proposed relief.

*The Stock Citation (Certified Issue 3).* TennCare says it "voluntarily updated its NODs to include specific legal citations before trial." ECF 445 at 9. But the record shows the fix was neither prompt nor voluntary in any meaningful sense. This Court found that "all termination NODs TennCare sent out prior to December 2022 contained a citation to a 95-page compendium of TennCare eligibility rules (the 'Stock Citation')," ECF 412 ¶ 104; "for over three years after the eligibility rules were finalized, TennCare still did not replace the illegal Stock Citation," *id.* ¶ 106;

8

Case 3:20-cv-00240    Document 500    Filed 07/27/26    Page 14 of 33 PageID #: 26886

and "TennCare deliberately decided to not replace the Stock Citation during this period," *id.* ¶ 107. More fundamentally, amending the template did nothing for those already injured, as "[o]ver 179,000 enrollees received a NOD containing the Stock Citation," *id.* ¶ 108, and none has received a corrected notice for that termination.

*The good cause language (Certified Issue 6)*. Rather than promptly update the notices following the court's ruling, TennCare slowly amended its regulations. While that process was ongoing, TennCare purposefully delayed providing notice of good cause under the still-operative prior rule. This left enrollees without the constitutionally required notice for eighteen months after the August 26, 2024 liability decision. Such purposeful delay cannot constitute the genuine voluntary cessation required to establish mootness.

*The 90-day reconsideration language (Certified Issue 7)*. TennCare represents that, "[s]ince April 14, 2025, the NOD has included . . . language" informing enrollees about the 90-day reconsideration period. ECF 445 at 8. But, that deliberate delay—eight months after the liability decision—confirms that the changes are a litigation posture rather than genuine reform. This Court found that "TennCare intentionally omits information related to its good cause exception from its NODs" and "offered no persuasive evidence to support its belief" that disclosure would harm enrollees. ECF 412 ¶¶ 209–10. As to the 90-day period, the Court found that TennCare "intentionally omits specific information—like, for instance, that there is a discrete reconsideration period, that that period is up to 90 days after their termination date, or that, if deemed eligible, their coverage *will* be backdated." *Id.* ¶ 561 (emphasis added). Ms. Hagan admitted that "TennCare does not tell its enrollees about the 90-day reconsideration period so that they do not delay returning information . . . but she provided no basis for this concern." *Id.* ¶ 114. A defendant that suppressed this information by design, and reversed course only when compelled, is not entitled to a presumption that

9

the practice will not resume.

TennCare confirms the point by refusing to commit to its own changes. It represents that, it "reserves all rights to appeal what it considers to be an incorrect liability determination by the Court." ECF 445 at 6. And it continues to defend the very notices the Court condemned, stating that "the State respectfully disagrees with the Court's findings that prior citations to the 95-page eligibility rule violated Due Process and the Medicaid Act." *Id.* at 9. A defendant that contests liability and reserves the right to undo the changes it offers as a cure cannot show the challenged conduct will not return. *E.g.*, *Parents Involved in Cmty. Schs.*, 551 U.S. at 719.

*TennCare has not issued corrected notices.* Even if TennCare's prospective template edits were complete, permanent, and genuine, they would not moot the relief Plaintiffs seek, because they do nothing for the class members who already received inadequate notices and who are still without coverage or who experienced a gap in coverage. TennCare's revisions change only the template used going forward; TennCare has issued no corrected notice to the class members terminated on the basis of the deficient notices the Court found unlawful—including the more than 179,000 enrollees who received the Stock Citation, ECF 412 ¶ 108, and the "approximately 87,986 individuals who are currently without coverage having lost coverage between March 19, 2019 and March 18, 2020," ECF 458 ¶ 4. As the Court recognized, TennCare "has not yet remedied the core underlying deficiencies in its notices or appeals process," ECF 412 ¶ 593, and class members "have not yet had their coverage reinstated and backdated," *id.* at 116. A prospective fix to a form cannot moot relief aimed at this ongoing constitutional injury to these class members. Plaintiffs therefore seek not only a corrected template going forward but corrected notices to affected class members, coupled with a renewed opportunity to appeal on the basis of constitutionally-adequate information. ECF 430 at 5 ("Issue Notices to the Class"); *see Chianne D.*, 814 F. Supp. 3d at 1380–81

("to remedy the ongoing constitutional violation, the State must also provide this notice to any Class Members whose benefits were terminated without adequate notice and who have not been reinstated.").

Finally, requiring TennCare to make and maintain these notice changes is not an impermissible "obey the law" injunction. Whether an injunction is an unenforceable "obey the law" decree turns on whether its terms are stated with sufficient specificity, not on whether the defendant claims already to be doing what the injunction requires. *See Howe v. City of Akron*, 801 F.3d 718, 755 (6th Cir. 2015) ("An injunction is not overly broad because it requires that a defendant comply with federal law."). Plaintiffs' proposed provisions identify the specific language TennCare must include in its NODs, and that specificity is necessary precisely because TennCare reserves the right to strip the language back out and to abandon the Good Cause Policy entirely. ECF 445 at 6, 10. An injunction is warranted to ensure the constitutionally-required information remains in TennCare's notices.

### B. TennCare Should Be Required to Amend Its Review of SSI, DAC, Widow/er, Pickle, and Institutional Medicaid Categories.

*1. The Court has equitable discretion to tailor relief based on findings at trial and is not bound by Plaintiffs' prior proposals.* Defendant objects that Plaintiffs' requested relief is novel and should be rejected on that basis alone. ECF 445 at 12. Defendant's novelty objection is baseless. Plaintiffs have consistently requested certification by a third-party expert review of these categories, a tailored quality control plan to address human error, and an ongoing monitoring process. *See* ECF 424 at 3. Plaintiffs later added specificity to that request to include secondary-review and monitoring of the third-party expert's findings. This type of modification is entirely foreseeable and Defendant will have ample opportunity to address these proposals at the remedies hearing, elimi-

11

nating any prejudice. Finally, courts have broad equitable discretion to craft injunctive relief, including modifying such relief, depending on the facts established at the upcoming trial. *See Brown v. Plata*, 563 U.S. 493, 542 (2011) ("The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible.") (internal citation omitted).

*2. Plaintiffs' request for expert evaluation is limited to the SSI and Institutional Medicaid categories and is not overbroad.* Defendant objects that the requested relief is overbroad because the Court did not make factual findings regarding errors regarding "the vast majority of eligibility categories." ECF 445 at 12. This is a red herring. Plaintiffs' requested relief is explicitly limited to only the "SSI, DAC, Widow/er, Pickle, and Institutional Medicaid categories," *see* ECF 430 at 3-4, which the Court found suffered from numerous errors, and thus the relief is carefully tied to the violation the Court found on Certified Issues 1 and 15, ECF 412 ¶¶ 529-32.

*3. The remedial hearing will demonstrate that SSI-related errors are ongoing and that additional quality control is necessary.* First, Defendant's characterization of the record as reflecting that all "issues with TEDS were corrected years ago," ECF 445 at 12, is inaccurate. Rather, "in relation to Certified Issues 1 and 15" the Court expressly found that "TEDS is flawed, and TennCare knows that it is flawed." ECF 412 ¶ 540. The Court made this finding notwithstanding substantial testimony regarding TennCare's existing quality control procedures, including CMS certification,[4] case reads, the quality control team, Service NOW or SNOW tickets, incident reports, external audits, and the Pickle report, *see* ECF 399 at 60:2-63:12, 196:3-205:7, 400 at 59:12-61:17, 141:17-42:11. This squarely supports the need for additional quality control measures as a remedy. Moreover, the evidence at the remedies hearing will demonstrate that, since the liability trial, TennCare

---

[4] The certification process that Defendant relies on occurred *before* TEDS "went live" and *before* the myriad flaws and errors that the Court found to be discriminatory. *Cf.* ECF 139-5 (CMS certification dated Nov. 2, 2020) and ECF 412 ¶¶ 528-535 (referencing post-2020 errors and flaws).

12

has continued to make errors in determining eligibility for the SSI-related categories, yet TennCare has stopped one of those monitoring measures—the Pickle report—and has not added any targeted quality control for the SSI-related populations, underscoring TennCare's continued failure to "prioritize[]" the steps "to ensure that it reliably consider[s] these SSI-related categories of eligibility," ECF 412 ¶ 534, and the need for an injunction mandating additional quality control measures.

### C. TennCare Should Be Required to Change Its Good Cause Implementation.

After the Court's liability decision, TennCare did change its Good Cause Policy for accepting untimely appeals. The Agency took its time, but eventually made it worse. Instead of providing access to good cause hearings, faithfully implementing its existing Rule, or revamping its Notices of Decision to reference the existing Good Cause Rule, TennCare marshalled its resources to narrow its Rule dramatically. The Agency expressly disclaimed hearings and any further Due Process review, reduced the express justifications for acceptance of an otherwise untimely appeal to an error by TennCare, hospitalization, or disability, and stated that unsupported allegations of non-receipt of a notice is not sufficient justification for acceptance of an otherwise untimely appeal. ECF 458-1 at 3. As amended, even if someone misses an appeal deadline because he, through no fault of his own, simply did not receive the Notice of Decision, the individual will be denied a fair hearing. Thus, whenever someone cannot explain why they did not receive a notice, even after investigating, TennCare will not provide a hearing.

In so doing, the Agency created a Policy that is incompatible with Due Process's fundamental guarantee to provide adequate pre-deprivation notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *See Kallstrom*, 136 F.3d at 1068 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). Beyond the Rule itself, enrollees maintain an underlying property interest in Medicaid benefits to which Due Process attaches. *Hamby v. Neel*, 368 F.3d 549, 559–60 (6th Cir. 2004).

13

As amended, TennCare's Good Cause Rule violates Due Process because it authorizes deprivation of that property interest without the provision of adequate advanced notice and an opportunity to be heard. *Kallstrom*, 136 F.3d at 1068. And it ignores established Due Process case law from the Sixth Circuit holding that a sworn statement that a mailing was not received is enough to rebut the presumption of delivery of first-class mail. *Ly v. Holder*, 327 F. App'x 616, 622 (6th Cir. 2009) (affidavit enough to rebut presumption of delivery of notice of immigration hearing); *Aguilar v. Garland*, 861 F. App'x 45, 49 (6th Cir. 2021) (same).

**D.      The Court Should Enjoin TennCare's Valid Factual Dispute Policy.**

The Court declared that TennCare's valid factual dispute (VFD) policy is unconstitutional as applied to eligibility appeals—rather than the narrow context approved in *Rosen* where the State was eliminating a non-mandatory Medicaid program. ECF 412 ¶ 570. The straightforward remedy to that constitutional violation is an injunction barring TennCare from applying the policy to those eligibility appeals. Defendant objects that this injunction does no more than broadly order TennCare to obey the law, while failing to identify the specific acts that are prohibited. ECF 445 at 15. Not so. The record establishes that TennCare currently screens all eligibility appeals to determine whether they present a valid factual dispute and sends additional information notices when the appeals staff do not readily identify one. ECF 399 at 43:23-44:5. An injunction would prohibit that conduct and, instead, send all timely appeals (or those granted good cause) directly to the Scheduling Unit to be set for a hearing. In line with *Rosen*, the injunction would continue to permit the screening of hearings where an entire coverage group or program is eliminated. Thus, far from placing "restraints upon the commission of unlawful acts which are … dissociated from those which a defendant has committed," *N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 436 (1941), the injunction squarely addresses the Due Process violation the Court identified and that has been contested from the beginning, ECF 1 ¶¶ 118-120. The injunction leaves no doubt as to what conduct is proscribed.

14

Next, Defendant twists the Court's decision to assert that it never resolved whether the VFD Policy is itself unlawful, and only addressed its application in a single case. ECF 445 at 17. That ignores the Court's explicit ruling that, because of the VFD Policy, "TennCare *systematically* fails to provide fair hearings." ECF 412 at ¶ 574 (emphasis added); *see also id*. at 7 ("the Court concludes that TennCare's Valid Factual Dispute Policy violates . . . Due Process . . ."); ECF 483 at 17. TennCare subjects *every* eligibility appeal to the VFD Policy. Tenn. Comp. R. and Regs. § 1200-13-19-.05(3). JX43 ¶ 78. Nor has Defendant ever before contended that the denial of hearings to Plaintiffs' witnesses like the Turner children and Ms. Caudill resulted from a misapplication of the VFD Policy. Instead, Ms. Hagan squarely defended the Policy as a whole and as applied in both cases, claiming that the Turners "did not respond and give us the facts to substantiate" their claim of eligibility, ECF 400 at 137:1-2, and that Ms. Caudill was properly denied a hearing because there was "no indication that she was still receiving SSI." ECF 399 at 45:15-21. The denial of hearings to eligible members who have meritorious appeals is not a bug in the VFD Policy's application. Rather it is the inevitable effect of a Policy that the Defendant asserts is necessary to minimize the expense of hearings. ECF 399 at 207:11-209:2. The injunction is necessary and appropriate.

**E.      TennCare Should Be Required to Reinstate Coverage.**

Prospective reinstatement is an appropriate remedy because "in suits concerning a state's payment of public benefits under federal law, a federal court may enjoin the state's officers to comply with federal law by awarding those benefits in a certain way going forward[.]" *Price v. Medicaid Dir.*, 838 F.3d 739, 747 (6th Cir. 2016).[5] For those currently enrolled, this can be accom-

---

[5] Injunctions have been upheld that "restor[e] class members to the" Medicaid services "they had prior to the Department's defective . . . Notice." *K.W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir.

plished by preventing terminations until an adequate notice and opportunity for a hearing are provided. For those without coverage currently, reinstatement is the mechanism to "award[] those benefits in a certain way going forward." *Id.*

TennCare admits that it relies on members to "raise their hand" to identify errors, *see* ECF 399 at 13:1-23, 206:4-207:5, but its notices and appeals policies have not allowed them to effectively raise their hands and be heard. TennCare admits that many individuals have been terminated without receiving the notice that this Court has concluded is constitutionally required.

All individuals terminated between March 19, 2019 and March 18, 2020 received an NOD containing a "Stock Citation" to TennCare's 95-page document containing rules and regulations, Tenn. Comp. R. and Regs. 1200-13-20. *See* ECF 398 at 297:3-12; 301:14-303:8; ECF 234 at 12. None of these individuals received a NOD with a particularized regulatory citation. *See* ECF 398 at 302:16-303:8. Similarly, the individuals who lost coverage between March 19, 2019 and March 18, 2020 were told that TennCare considered them for all categories of eligibility. But none of them received a notice that actually identified the category of eligibility that they were previously enrolled in. *See* JX45. Those individuals also did not receive an NOD with reference to the 90-day reconsideration option. Nor did those individuals receive notice of good cause. And at all times, TennCare enrollees' hearing rights have been burdened by the application of TennCare's valid factual dispute policy. TennCare has not reinstated any individual who received inadequate notice or whose hearings were denied under the valid factual dispute policy. *See* ECF 398 at 297:14-298:11.

Defendant asserts that the notice defects did not cause harm. But the Sixth Circuit has rec-

---

2015) (citing *Turner v. Ledbetter*, 906 F.2d 606, 609-10 (11th Cir. 1990) and *Kimble v. Solomon*, 599 F.2d 599, 605 (4th Cir. 1979)); *see also Granato v. Bane*, 74 F.3d 406 (2d Cir. 1996); *M.A. v. Norwood*, 133 F. Supp. 3d 1093 (N.D. Ill. 2015); 42 C.F.R. § 431.231(c).

16

ognized in circumstances far less consequential than obtaining potentially life-saving health coverage that causation of harm can be established on a classwide basis through proof of material, uniform representations or omissions. *See, e.g.*, *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 512 (6th Cir. 2015) ((b)(3) class in a consumer protection case). Regardless, until TennCare provides adequate notice and enrollees are given a full and fair opportunity to identify mistakes, through a constitutionally adequate hearing process, there is no way to know whether a given termination decision was accurate or not.

Nor should TennCare's claims about the cost burdens preclude injunctive relief. *First*, TennCare incorrectly assumes that everyone who will be reinstated is ineligible for coverage. *See* ECF 686. But TennCare cannot claim as a burden the costs associated with reinstating individuals who are, in fact, eligible for Medicaid coverage. Notably, this Court found that 84% of those who do appeal have their appeal resolved in favor of the appellant. ECF 412 ¶ 406. Thus, individuals who are provided a new, constitutionally adequate opportunity to appeal, may very well be able to demonstrate their eligibility. *Second*, Defendant's cost assumptions incorrectly assume that reinstated individuals would have to remain enrolled for extended periods of time. Defendant's cost projections assume delays of up to 18 months before the State would be in a position to start redetermining the eligibility of those who had been reinstated. PX686 at 3. But Plaintiffs' requested changes to the notices and hearings could be accomplished on shorter timelines.

In any event, as another court has concluded, lesser remedies—such as providing revised notice absent reinstatement—are inadequate to remedy the violation:

> The court has carefully considered defendant's suggestion that persons already terminated as a result of the defective notice simply be re-noticed, without reinstatement, and has rejected the proposal for several reasons. First, re-notification may not be sufficient to insure that eligible persons find their way back onto the rolls. Their confusion may only be worse compounded. Second, . . . [the] state will not

17

be prevented from promptly initiating proper termination procedures against ineligible persons. Third, it may not be assumed that persons terminated to date via the improper notice have, by not objecting, impliedly conceded their ineligibility. The defendant's notice was so misleading that any inferences of this sort would be pure speculation.

*Febus v. Gallant*, 866 F. Supp. 45, 47 (D. Mass. 1994).

Thus, TennCare must reinstate those who are currently without coverage until it provides corrected notice that includes all of the required elements: particularized statutory cites, notice of the 90-day reconsideration, notice of good cause, identification of the individual's category of eligibility and its requirements, and provides them an opportunity to appeal unburdened by the VFD Policy. Individuals who have died, are out-of-state, and who previously appealed and obtained a hearing should not be reinstated.

**F.      TennCare Should Be Required to Issue Notices to the Class.**

*1. The requested notice is prospective relief because it seeks only to notify the class members of TennCare's pre-existing administrative procedures.* At the heart of Defendant's objection to Plaintiffs' requested relief is the mistaken assumption that Plaintiffs are asking TennCare to create a novel administrative process. That is not so. As Defendant acknowledges, there is no Eleventh Amendment bar to relief that apprises class members of pre-existing administrative remedies, which may themselves permit retroactive benefits. *See* ECF 445 at 23-24. *See also Quern v. Jordan*, 440 U.S. 332, 347 (1979). That is what Plaintiffs seek.

Here there are at least two existing state administrative procedures that can offer retroactive benefits to class members. *First*, TennCare can rely on its existing appeal process. Indeed, Plaintiffs' requested relief could be accomplished simply by including with any amended notice to class members a copy of TennCare's existing appeal form, JX47, which could then be completed by class members to register an appeal of a prior termination for which they experienced an unresolved gap

18

in coverage. TennCare insists that this appeal process is unavailable to the class because the deadlines "have long since expired," and thus individuals "are no longer entitled to a hearing under state law." ECF 445 at 24-25. But this flatly ignores the Court's liability finding that these individuals did not receive constitutionally adequate notice of their termination and hearing rights and that their hearing rights were impermissibly burdened by TennCare's unlawful valid factual dispute practice. Thus, class members have not yet been properly notified of their termination in a manner sufficient to trigger the appeal deadlines. To hold that the appeals process was no longer available to enrollees who received inadequate notice "would reward the State for failing to provide the required notice" in the first place. *Chianne D.*, 814 F. Supp. 3d at 1379. In other words, once TennCare supplies adequate notice of the termination to class members, that notice would trigger the existing administrative deadlines for filing an appeal (i.e., 40 days), which could follow their usual course (with any additional modifications from the injunction, *e.g.*, eliminating VFD review).

*Second*, separate and apart from the hearing process, the record shows, and the remedies phase of the trial will confirm, that TennCare has in place pre-existing "standard practice" of addressing past gaps in coverage whenever an error is discovered. This can include correcting erroneous gaps in coverage that are discovered well beyond the typical appeal deadlines and outside of the typical appeal process.[6] For example, at the liability trial, Ms. Hagan explained that TennCare's "typical practice" when it discovers an error is to "query the system to find anyone else similarly impacted. If anyone has lost eligibility or maybe transitioned to a lower category, then we will ask [Deloitte] to either reinstate or to move the person back to – to their previous category." ECF 399

---

[6] TennCare has closed gaps in coverage for multiple individuals in this case including Ms. Davis (*see* JX44 ¶ 182; ECF 399, at 128); Skai Anders (JX44 ¶¶ 142-143), Ms. Caudill (JX44 ¶¶ 153, 169-70), Mr. Hill (JX44 ¶ 206), the King family (JX44 ¶ 222), the Turner family (JX44 ¶¶ 329-330), and Mr. Walker (JX44 ¶ 357).

at 69:24-70:15. Specifically, at the remedies phase of the trial, Ms. Hagan will testify that TennCare has a process for correcting gaps in coverage that are more than 12 months old, which involves submitting tickets to Deloitte and that this process can also be used outside of the typical appeals process. Indeed, at the liability trial, Ms. Hagan repeatedly affirmed that TennCare works to correct errors regardless of how they are identified. ECF 399 at 207:5-8; 400 at 144:7-9. Having repeatedly testified to the existence of this practice, TennCare cannot now disavow it for its own convenience.

The existence of these two sets of procedures also nullifies Defendant's Rule 65(d) specificity complaints. *See* ECF 445 at 25. As described above, appeals submitted by class members to challenge past terminations would be treated like any appeal that was granted good cause for being untimely. There is nothing on the existing appeal form (JX47) that precludes its use in this manner. Moreover, because these would be usual appeals, they would be subject to the same 90-day requirement, unless the court ordered otherwise. As for its practice of closing erroneous gaps in coverage, TennCare would continue to submit tickets to Deloitte for those individuals as it has in the past.

Thus, each class member should receive notice that: (1) explains that they received inadequate notice previously when their benefits were terminated and were, thus, unlawfully denied the opportunity to pursue a fair hearing, (2) supplies the missing information, and (3) explains that, if they believe the initial termination was wrong, the State has existing administrative procedures— including the fair hearing process and TennCare's separate "standard practice"—that permit retroactive restoration of coverage which enables past medical bills to be reimbursed.

Indeed, a federal court recently ordered the State of Florida to provide corrective notices to class members whose Medicaid benefits were terminated without adequate notice and required that the notice advise class members of available administrative remedies. *See Chianne D.*, 814 F.Supp.3d at 1380-81 (citing *Quern*, 440 U.S. at 347-49). There, the Court ordered the State to

provide a notice telling class members that "1) the Court found the [notices] that they received prior to the termination of their [Medicaid] benefits were constitutionally inadequate, 2) the Court has ordered the State to provide a corrective notice detailing the reasons for the termination of bene-fit[s,] 3) they may request a fair hearing following receipt of notice, and 4) they may request rein-statement of benefits pending the outcome of the hearing." *Id*. The same relief is warranted here. *See* Ex. A to Mem., Sample Class Notice from *Chianne D.*

*2. TennCare's cost estimates are grossly exaggerated; they misconstrue the relief sought.* Defendant's cost estimates for amended class notice are premised almost entirely on the creation of a brand new appeals process, which may indeed be costly and time consuming. However, that is simply not necessary to effectuate Plaintiffs' requested relief and the Court should disregard those estimates.

The only other category of costs Defendant cites relate to the need to increase the number of staff who handle appeals. But this concern disregards Defendant's legal obligations. The record suggests TennCare's inadequate notice and application of the VFD policy has artificially sup-pressed the number of hearings requested and sent to hearing impacting the number of appeals staff employed. Being ordered to employ enough staff to adequately handle appeals—their constitutional and statutory obligation—is necessary to remedy the harm and is part of the public interest.

**G.      Declaratory Relief Should Issue.**

The Judgment Act gives Courts the power to grant relief for cases of actual controversy, 28 U.S.C. § 2201, which parallels the analysis under Article III. *TCI/TKR Cable v. Johnson*, 30 F. App'x 581, 583 (6th Cir. 2002) (citations omitted). Here, the Court has already found the Article III controversy requirement met, *see* ECF 178, and mootness does not apply. *See* III.A.3.

Courts have found an actual controversy to exist for declaratory judgment purposes when a defendant intends to enforce the challenged law or policy and plaintiffs intend to engage in conduct

21

that will invoke application of the law or policy. *See Mich. State Chamber of Commerce v. Austin*, 788 F.2d 1178, 1184 (6th Cir. 1986). Those facts exist here. For example, TennCare has not changed its Valid Factual Dispute policy since the case was filed despite the Court's adverse ruling and he continues to enforce it. Because of this policy, without action, class members will continue to have to file appeals and show a Valid Factual Dispute to TennCare's satisfaction in order to receive a hearing. This is enough to constitute a controversy. Additionally, Defendant has not issued corrective notices to individuals who received deficient notices and has continued to have problems reliably screening individuals for all categories of eligibility.

The case satisfies the Sixth Circuit's factors for assessing declaratory judgments. *See Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). *First*, declaratory and injunctive relief would settle the controversy. Plaintiffs do not seek monetary damages and do not have satellite litigation. *Second*, declaratory relief would clarify TennCare's responsibilities under the Due Process Clause, Medicaid Act, and the ADA. *Third*, there is no satellite litigation; the remedy is not being used for "procedural fencing" or to provide an arena for a race for *res judicata*. *Fourth*, declaratory relief is based primarily on the application of federal law and would not increase friction between state and federal courts. *Fifth*, there is no alternative remedy that is better or more effective. Because of the Eleventh Amendment prohibiting monetary damage claims against the State, Plaintiffs are limited to injunctive and declaratory relief.

While Defendant argues that declaratory relief cannot be based on past conduct, ECF 445 at 27, TennCare's conduct, like its implementation of its valid factual dispute policy, its failure to reliably screen individuals for all categories of eligibility, and its failure to issue corrective notices, continues. A declaration that Defendant's conduct is unlawful is needed to clarify TennCare's legal obligations.

22

## IV. THE BALANCE OF THE EQUITIES FAVORS THE PROPOSED INJUNCTION

When the government is the opposing party in a case seeking an injunction, the balancing of the equities and the public interest merge. *Tennessee v. Dep't of Educ.*, 104 F.4th at 613. The balance of the equities favors Plaintiffs here.

Even if Defendant's cost estimates were accurate—and as described below they are not—those costs would not tip the scales in the Defendant's favor in this case. At the outset, any costs stem from the Constitution itself—not this Court's injunction. As the Seventh Circuit stated in enforcing the Food Stamp Act, "[b]ecause the defendants are required to comply with the [ ] Act . . . we do not see how enforcing compliance imposes any burden on them. The Act itself imposes the burden; this injunction merely seeks to prevent the defendants from shirking their responsibilities under it." *Haskins v. Stanton*, 794 F.2d 1273, 1277 (7th Cir. 1986); *M.G. ex rel. Garcia v. Scrase*, No. 122CV00325, 2023 WL 3686751, at *9 (D.N.M. May 26, 2023), *aff'd sub nom*, *M.G. through Garcia v. Armijo*, No. 23-2093, 2024 WL 4206966, at *11 (10th Cir. Sept. 17, 2024) ("Because the state has opted into the federal Medicaid program, it is required to comply with this obligation—in other words, providing these services is no additional burden on top of what Defendants have already promised to do," thus "the threatened injury to Plaintiffs greatly outweighs any possible injury to Defendants.").

Moreover, courts have consistently rejected administrative or financial burdens as barriers to injunctive relief when important constitutional rights are at stake. *See Watson v. Memphis*, 373 U.S. 526, 537 (1963) ("[I]t is obvious that vindication of conceded constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them"); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) ("Lack of funds for facilities cannot justify an unconstitutional lack of competent medical care and treatment for inmates."); *Flynn v. Doyle*, 630 F. Supp. 2d 987, 993 (E.D. Wis. 2009) ("matters of administrative convenience must

ultimately give way when constitutional rights are in jeopardy.")

With respect to ensuring due process rights, the Supreme Court, for its part, long ago held that the financial burden to comply with Due Process yields to the competing interests of a public benefit recipient, given the importance of those benefits:

> [T]he interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens. As the District Court correctly concluded, '(t)he stakes are simply too high for the welfare recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal.'

*Goldberg v. Kelly*, 397 U.S. 254, 266-67 (1970). In short, the Court should "reject[] any suggestion that the State must be allowed to continue violating the constitutional rights of its citizens because compliance is too expensive." *Chianne D.*, 814 F. Supp. 3d at 1373. Similarly, in ADA injunction cases, courts have held that the receipt of medically-necessary healthcare by disabled individuals on terms equal to non-disabled persons outweighs the State's budget concerns. *Indiana Prot. & Advoc. Servs. Comm'n*, 149 F.4th at 942.

In any event, TennCare's cost projections are wildly overstated. *First*, TennCare receives federal matching between 50 and 90% depending on the expense. This matching rate is known as the Federal Medical Assistance Percentage (FMAP). TennCare receives approximately 65% of the cost of medical services from the federal government and 90% reimbursement for the costs of computer changes. However, TennCare did not include any federal matching in its cost projections and assumes *all* costs incurred would be borne by the State. *See* PX686; ECF 486-1. But federal matching funds are available to pay for the costs of compliance with court orders. 42 C.F.R. § 431.250.

*Second*, TennCare's assertions about the costs to change TEDS—ranging between $8,730,000 on the low end to $11,780,000 at the high end—are rank hearsay. ECF 446 ¶ 2. Those

24

estimates were created by Deloitte, not Ms. Hagan. And Ms. Hagan is not personally involved in reviewing Deloitte's estimate for the hours or total cost of its changes as a routine matter. Moreover, Deloitte and TennCare did not follow their usual process for estimating costs, which often leads to discussing meaningful alternatives that can reduce the estimated costs. Furthermore, testimony at the remedies hearing will show that TennCare already budgets close to $50 million annually to cover changes to TEDS and notices, which means that even the highest cost estimates would fit within the existing budget. *Third*, the ultimate costs to Defendant are largely within his control. As the Supreme Court noted in *Goldberg* in weighing the equities:

> [T]he State is not without weapons to minimize these increased costs. Much of the drain on fiscal and administrative resources can be reduced by developing procedures for prompt pre-termination hearings and by skillful use of personnel and facilities.

397 U.S. at 266. The court should not credit Defendant's worst-case scenarios when he controls the extent of the harm. *See Chianne D. v. Harris*, 2026 WL 759154 at *4 (M.D. Fla. Mar. 18, 2026) ("while the State will undoubtedly incur some unrecoverable costs to comply with the [Order], the State has the power to mitigate those harms by revising the [notices] as expeditiously as possible.").

Finally, even taking Defendant's cost estimates at face value, TennCare has access to adequate funds, including through Shared Savings, the TennCare Reserve, and the State's Rainy Day Fund, which collectively amount to nearly $4 billion. *See* PX690 at 11-12, 14 (showing for 2026 $323 million in Shared Savings, $1.4 billion for the TennCare Reserve, and $2.1 billion for the Rainy Day Fund). Thus, payment of any increased administrative burden, which would be nowhere near this cost, is available and feasible.

**CONCLUSION**

As set forth above and as will be shown at the remedies evidentiary hearing, Plaintiffs' proposed injunction and declaratory judgment should issue.

25

Dated: July 27, 2026                          By:      _*/s/ Brant Harrell*_____

Michele Johnson TN BPR 16756
Gordon Bonnyman, Jr. TN BPR 2419
Brant Harrell, TN BPR 24470
TENNESSEE JUSTICE CENTER
155 Lafayette St.
Nashville, TN 37210
Phone: (615) 255-0331
mjohnson@tnjustice.org
gbonnyman@tnjustice.org
bharrell@tnjustice.org

Jane Perkins (*pro hac vice*)
Elizabeth Edwards (*pro hac vice*)
Sarah Grusin (*pro hac vice*)
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin St., Suite 110
Chapel Hill, NC 27614
Phone: (919) 968-6308
perkins@healthlaw.org
edwards@healthlaw.org
grusin@healthlaw.org

Faith E. Gay (*pro hac vice*)
Jennifer M. Selendy (*pro hac vice*)
Andrew R. Dunlap (*pro hac vice*)
Babak Ghafarzade (*pro hac vice*)
Laura King (*pro hac vice*)
Jack Collins* (pro hac vice pending)
Korey Boehm* (pro hac vice pending)
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Phone: (212) 390-9000
fgay@selendygay.com
jselendy@selendygay.com
adunlap@selendygay.com
bghafarzade@selendygay.com
lking@selendygay.com
jcollins@selendygay.com
kboehm@selendygay.com

*Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document is being served via the Court's electronic filing system on this the 27th day of July 2026.

Meredith Bowen
Matthew Dykstra
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202
meredith.bowen@ag.tn.gov
matthew.dykstra@ag.tn.gov

Michael Kirk
Nicole Moss
William Bergstrom
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036
mkirk@cooperkirk.com
nmoss@cooperkirk.com
wbergstrom@cooperkirk.com
alivas@cooperkirk.com

*/s/ Brant Harrell*
Brant Harrell
